UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

Nov 10  3 25 PH '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>43.47 ACRES OF LAND, MORE OR LESS,<br>SITUATED IN THE COUNTY OF<br>LITCHFIELD, TOWN OF KENT, ET AL.,<br>Defendants. | CIVIL ACTION NO.<br>H-85-1078 (PCD) |
| SCHAGHTICOKE TRIBAL NATION<br>Plaintiff,<br><br>v.<br><br>KENT SCHOOL CORPORATION, INC., ET<br>AL.,<br>Defendants. | CIVIL ACTION NO.<br>3-98-CV-01113 (PCD) |
| SCHAGHTICOKE TRIBAL NATION<br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA AND THE<br>CONNECTICUT LIGHT AND POWER<br>COMPANY,<br>Defendants. | CIVIL ACTION NO.<br>3-00-CV-00820 (PCD)<br><br>November 7, 2003 |

MOTION TO AMEND THE SCHEDULING ORDER TO
ALLOW THE SUBMISSION OF NEW EVIDENCE

Defendants, Kent School Corporation, Inc. (Kent School), the Town of Kent, The

Connecticut Light and Power Company, and the *amicus* State of Connecticut, respectfully

ORAL ARGUMENT NOT REQUESTED

move, for good cause shown, to amend the Scheduling Order of May 8, 2001, as amended, to allow the submission of new evidence relating to an important, but limited issue of incorrect membership lists submitted to the Bureau of Indian Affairs (BIA) by the Schaghticoke Tribal Nation (STN) at the close of its reply period. The new evidence is necessary to ensure that the BIA has the information required to make a fully-informed and objective analysis of the STN tribal acknowledgment petition. Amendment of the scheduling order is necessary because the erroneous membership lists were not submitted by the STN until after the close of the comment period for the defendants, and so the new evidence demonstrating the falsity of the lists was not available until after that date as well. Because the time for filing comments under the Scheduling Order has passed, the BIA has declined to accept the information absent a modification of the order by the Court. This information is essential because it concerns actions taken by the STN that have resulted in an inaccurate representation of the facts. Without the new information, BIA will not be able to conduct a proper evaluation of the STN petition.

      1.      One of the key issues associated with BIA's negative proposed finding was the inability of the STN to prove that it consists today of a sufficiently large portion of the families that may have at one time composed a historic Schaghticoke Tribe so as to represent a continuation of that tribal community. In its proposed finding and subsequent meetings with the STN, BIA advised the petitioner that it would need to reconstitute its membership to more closely correspond to the historic tribe. In an effort to cure this deficiency, the STN represented to BIA in its September 29 reply comments that it had purportedly recruited 11 members of the rival Schaghticoke faction, the Schaghticoke Indian Tribe petitioner group, to become members of the STN. This was apparently the result of discussions occurring between the STN and these individuals near the end of the extended reply comment period. The STN represented to BIA in its reply comments that these individuals had joined as

-2-

members, and submitted to the BIA an STN membership list containing their names.
Exhibit 1.

     2.     On the same day as the close of the reply comment period, nine of these
alleged new members rescinded their decision to join the STN, asserting that they had been
misled by the STN. Specifically, they stated that they had signed letters to join the STN on
September 27, 2003 "under mis-guided" information from the STN. They further stated that
the STN attempted to "trick" them and had obtained their signatures "by fraud." Exhibit 2.
As a result, these individuals withdrew immediately from the STN, and requested that their
names be removed from the STN membership list.

     3.     The STN also made erroneous representations in their August 8, 2003
comments that Mr. Irving Harris, a former chief of the Schaghticoke Tribe, was considering
joining the STN. Exhibit 1. Those statements by the STN were not correct, as Mr. Harris
confirmed in a subsequent interview. Exhibit 2.

     4.     By letter of October 14, 2003, *amicus* State of Connecticut and the defendants
represented by this motion submitted a letter to BIA presenting this important factual
information. Exhibit 2. Attached to that letter was the following information:[1]

> 1)     A letter from Schaghticoke Indian Tribe members disavowing
> their intent to join the STN, as claimed by the STN in its
> evidentiary submission of September 29. These individuals
> assert that they were misled by the STN as part of that group's
> recruitment effort.

---

[1] Also included in the October 14, 2003 submission were an affidavit of Marge
McElvoy, the director of the Kent Historical Society, a letter to the editor of the Kent
Tribune from Dr. Steven Austin, an STN researcher, and an e-mail communication from Dr.
Austin to Ms. McElvoy. In its motion for an extension of its reply comment period, the STN
submitted an affidavit from one of its researchers alleging improper actions of the Historical
Society. These documents refuted the STN's allegations. The defendants do not seek by
this motion permission to submit those documents to the BIA.

2)    A transcript of an interview with Irving Harris. The STN
      makes claims in its August 8 evidentiary submission regarding
      Mr. Harris and his possible interest in joining the STN, an
      assertion which if true, could carry weight with the BIA since
      Mr. Harris is a former chief of the Schaghticoke Tribe. Mr.
      Harris refutes that assertion.

The letter was strictly limited to factual issues arising from the STN comments. The letter

did not present argument or analysis.

5.    By letter of October 21, 2003, Ms. Barbara Coen of the Office of the Solicitor

of the Department of the Interior rejected the submission of this new evidence as untimely

under the scheduling order.[2] She also gave notice that the submission would be retained in

the Office of the Solicitor and would be reviewed by the Office of Federal Acknowledgment

if the court amended the scheduling order for this purpose. Exhibit 3.

6.    Pursuant to paragraph (f) of the Scheduling Order, parties and *amici* may

request an extension of the comment period for good cause shown. The evidence offered

under the October 14 letter is critically important to the full and fair disposition of the STN

petition. The evidence regarding the rescinded STN memberships goes to the heart of one of

the key issues in the petition review. This new evidence emerged after the close of the reply

comment period and therefore constitutes new documentation that should be considered in

fulfillment of BIA's fact-finding duties. Defendants/amicus had no opportunity to submit

this evidence because it did not exist until after the close of the comment period.

7.    Failure to allow consideration of this evidence would produce the bizarre

result of allowing the petitioner to benefit from its own misrepresentations. The STN used

---

[2] The STN have publicly stated that this new information cannot be considered by
the BIA because the comment period had closed on September 29, the very same day as the
membership rescission letter. STN counsel Thomas Van Lenten was quoted in the Hartford
Courant as stating "As far as we are concerned, on Sept. 29 the door [was] closed." *Tribe's
Tactics Called 'Fraud,'* Hartford Courant, Oct. 12, 2003, at A1.

the extended comment period to attempt to "persuade" members of the opposing faction to join, apparently under false pretenses. The STN submitted a revised membership list including these names to BIA at the last possible moment. That new list did not last for more than a day before the misled individuals recognized the deception, reversed their actions and withdrew their names from the list. As a result, a concocted membership list, rather than the true STN membership list, is now before BIA. Allowing such an obviously false and incorrect record to stand will prevent BIA from making a decision based upon a proper and complete record. In addition, the Irving Harris interview transcript corrects the misleading representation in the record that this former Schaghticoke chief is considering joining the STN.

Therefore, defendants and the *amicus* State respectfully request that the Court revise the scheduling order of May 8, 2001, as amended, to allow the submission of the new evidence, described above, relating to the misrepresentations of the STN and changed circumstances associated with the membership list.

Respectfully Submitted,
DEFENDANT,
KENT SCHOOL CORPORATION

*David J. Elliott*

David J. Elliott (ct04301)
Eric L. Sussman (ct19723)
Day, Berry & Howard LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103
(860)275-0196
djelliott@dbh.com

AMICUS,
STATE OF CONNECTICUT
RICHARD BLUMENTHAL
ATTORNEY GENERAL

*Mark F. Kohler*

Mark F. Kohler (ct02272)
Susan Q. Cobb (ct03850)
Assistant Attorneys General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
(860)808-5020
(860)808-5389(fax)
mark.kohler@po.state.ct.us

DEFENDANT,
THE CONNECTICUT LIGHT AND POWER
COMPANY

*Richard L. Street*

Richard L. Street (ct13658)
Carmody & Torrance
50 Leavenworth Street
P.O. Box 110
Waterbury, CT 06721
(203)573-1200

-6-

DEFENDANT,
TOWN OF KENT

by _Jeffrey B. Sienkiewicz_

Jeffrey B. Sienkiewicz (# CT 06371)
Sienkiewicz & McKenna PC
9 South Main Street, P.O. Box 786
New Milford, CT 06776
(860)354-1583

<u>CERTIFICATION</u>

This certifies that the foregoing was served by first-class mail on all counsel and pro se parties of record this 7th day of November, 2003, as follows:

Thomas W. Van Lenten
Pinney, Payne, Van Lenten,
Burrell, Wolfe, & Dillman, PC
83 Wooster Heights
P.O. Box 3499
Danbury, CT 06810-3499

Judith Shapiro
Hobbs, Strauss, Dean & Walker
2120 L Street, NW
Washington, D.C. 20037

Eric Weichmann
Charles D. Ray
Vanessa D. Roberts
Cummings & Lockwood
CityPlace I
185 Asylum Street
Hartford, CT 06103-3495

Michael J. Burns
57 Pratt Street
Hartford, CT 06103

Jerry C. Strauss
Hobbs, Straus, Dean & Walker
2120 L Street, NW
Washington, D.C. 20037

James Fogarty
Leland C. Selby
Fogarty, Cohen, Selby & Nemiroff
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06386-2508

Robert A. Slavitt
Slavitt, Connery & Vardamis
618 West Avenue
Norwalk, CT 06850

Loretta E. Bonos
594 Bend View Drive
Charleston, West Virginia 25314

Thomas Gugliotti
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123

John B. Hughes
Unites States Attorney's Office
157 Church Street
P.O. Box 1824
New Haven, CT 06510

Barbara N. Coen
Division of Indian Affairs
Office of the Solicitor
U.S. Department of Interior
1849 C Street, NW
Washington, D.C. 20240

Mark F. Kohler
Assistant Attorney General

# SCHAGHTICOKE TRIBAL NATION'S ANALYSIS OF THE SCHAGHTICOKE INDIAN TRIBE'S MEMBERSHIP LIST (DATED SEPTEMBER 28, 2003)

Submitted as Part of the Schaghticoke Tribal Nation's
Response to Third Party Comments

by

Steven L. Austin, Ph.D.
Dean Markham
Submitted:  September 29, 2003

In the Schaghticoke Tribal Nation's Proposed Finding, the Assistant Secretary –
Indian Affairs (AS – IA) concluded that there is only one historical Schaghticoke Tribal
Nation (hereinafter, "STN," or "the Tribe"). The AS – IA also concluded that the STN,
as it is currently configured, appeared to be missing some key individuals from its
membership list. Some of the missing individuals in question are on the membership list
of a petitioner calling itself the Schaghticoke Indian Tribe (SIT), led by Alan Russell. In
addition to those represented by Alan Russell, there are a few other significant
individuals whom the AS – IA concluded were missing from STN's membership list.
The two sets of third party comments on the Proposed Finding that were submitted
criticized the Tribe's petition under criteria 83.7(b) and (c) of the Federal
acknowledgment regulations for failing to demonstrate that the Tribe had a sufficiently
unified community, for failing to demonstrate political unity, and for not representing all
potential tribal members. Some of these criticisms have already been responded to in
other submissions by the Tribe, during the comment and response periods. The analysis
presented in this paper supercedes the analysis in Austin's <u>Response to Several
Anthropological and Legal Issues Raised in Third Party Comments</u> because it takes into
consideration the addition of fifteen individuals to STN membership on September 28,
2003.

During the comment period, STN's genealogists identified 42 individuals who
had always been part of the Tribe's historical community, but were currently unenrolled.
As the response period comes to a close, there are still 26 individuals who have always

been part of the Schaghticoke tribal community but are not currently enrolled in STN (See Appendix B). This includes some but not all of the 59 individuals who are still on the SIT's membership list. The SIT member list provided by the OAR in the FAIR database had 73 names (dated October 5, 2002; see Appendix A). During the comment and response period, one of SIT's members died (Russ Kilson), two dually enrolled individuals reaffirmed their relationship with the STN, and eleven of them resigned from SIT,[1] leaving only 59 members. This leaves only 17 SIT members who might qualify for membership in STN, if they were to make application. As will be discussed, the vast majority of SIT's remaining members (71 percent) are not likely to be able to meet STN's membership criteria (42/59=.711). There are eight other individuals who are part of the STN's community but are not currently affiliated with either Schaghticoke petitioner; that is, they are not on the membership list of STN or SIT. The 26 individuals who are part of STN's community but not on the STN tribal membership roll represent only eight percent of the Tribe's overall community, enrolled and unenrolled (26/312=.833).

This paper also briefly discusses the efforts the STN has made during the response period to invite these individuals, plus those not represented by SIT, to apply for membership in STN. During the comment period the STN's Chief, Tribal Council, and tribal members made a number of attempts to contact unenrolled tribal community members, but only one of these forty-two individuals made application. However, the STN redoubled its efforts during the response period. As a result an additional fifteen

---

[1] Effective August 5, 2003, one of SIT's members was accepted onto the STN's tribal roll and effective September 28, 2003, another ten SIT members were accepted into membership with the STN.

individuals, five unaffiliated and ten SIT affiliated individuals, applied for membership and were added to the tribal rolls.

This paper was prepared by Steven L. Austin, an anthropologist working for the STN, and Dean Markham, with assistance from Tribal Genealogist Linda Gray.

### Analysis of SIT Members

In the following analysis, SIT members have been divided into two broad categories: those who are not likely to qualify as members of STN and those who are. Those SIT members who are likely to qualify have been subdivided into: 1. those who resigned; 2. those who started but did not complete their applications to STN membership; and, 3. those who are dually enrolled in STN and SIT.

### SIT Members Who **Would Not Likely** Qualify as Members of STN

The Schaghticoke Tribal Nation (STN, petitioner #79) has serious reservations about two groups of Schaghticoke Indian Tribe members (See Table 1). The first group includes forty-two individuals who are of questionable Schaghticoke Indian ancestry, or are otherwise not likely to be able to demonstrate they meet the STN's membership criteria, which include living in tribal relations on a substantially continuous basis (marked by shading in Appendix A). There is no reliable evidence available to the STN that demonstrates most of these forty-two individuals descend from the Schaghticoke Indians whom they claim as their ancestors. For those of unknown descent, the STN also has no evidence that these individuals or their ancestors have participated in Schaghticoke tribal affairs.

3

TABLE 1
SIT Members Who Will not Likely Qualify for Membership in STN

| | |
|---|---|
| Claimed descendants of Ellen Cogswell (Trueheart family) with pending applications in SIT | 15 |
| Other Claimed descendants of Ellen Cogswell (Trueheart family), not pending | 8 |
| Claimed, unconfirmed descendants of William Russell | 7 |
| Claimed, unconfirmed descendants of Nancy Cogswell and Nancy Chickens | 4 |
| Individuals whose families have not lived in tribal relations | 8 |
| TOTAL | 42 |

STN has no information on the 23 individuals claiming descent through Ellen

Cogswell (b. 1846; m. Elias Seely, a non-Indian; the Trueheart family), aside from what

was provided to the Office of Acknowledgment and Research, Bureau of Indian Affairs

(OAR) by the SIT and included in the FAIR database. There are fifteen individuals on

the SIT membership list marked as "pending." All of them are Trueheart family

members. This would seem to imply that these fifteen individuals were not officially

members of SIT as of October 22, 2002, the date of SIT's membership list. There are

eight individuals who claim descent from Ellen Cogswell who have been accepted by the

SIT as members of their group.

The STN will not accept the claimed Ellen Cogswell descendants as members of

the Schaghticoke Tribal Nation simply because they are included on the SIT list. They

would first need to provide acceptable documentary evidence that they meet the Tribe's

membership criteria. This includes the criteria as stated in the Constitution, and the

unwritten requirement by tribal custom that they and their ancestors have always been

part of the STN community without any significant interruptions.

We understand and agree that Jabez Cogswell had a daughter named Ellen

Cogswell. We do not have any evidence to support the SIT's claim that their members in

4

the Trueheart family are, in fact, her descendants. In addition to the lack of evidence for genealogical descent from the historical Schaghticoke Tribe, there is no evidence that Ellen Cogswell ever participated in social or political tribal matters since she became an adult in her own right (about 1864). There is no evidence to demonstrate that Ellen Cogswell's children lived in tribal relations during their lifetimes. The evidence indicates that only one of Jabez' children continued to maintain tribal relations after 1900, and that is George Cogswell. Most of George Cogswell's descendants who have continued to be associated with Schaghticoke tribal affairs are already members of the STN (some of his descendants are members of the Narragansett Indian Tribe in Rhode Island by virtue of two inter-tribal marriages; a few of them have recently[2] chosen to resign their membership in STN (See section below).

There are four individuals claiming descent from Nancy Cogswell on the paternal side (abt. 1853-1934; married Bland Moody, non-Indian) and from Nancy Chickens on the maternal side. There is no evidence that they or their ancestors participated in the social and/or political life of the Schaghticoke Tribal Nation. They would not, therefore, likely qualify for membership in the STN.

There are seven persons on the SIT membership list who have claimed descent from William Russell through an alleged extra-marital relationship between Mr. Russell and their mother. STN has no evidence that these individuals are, in fact, descendants of William Russell. Given what STN knows about these seven individuals at the time of writing, they would not qualify for membership in STN.

---

[2] The Coggswell descendants who resigned their STN membership did so after 1997. Before 1997, they and/or their ancestors had participated in STN tribal meetings and events.

5

SIT Members Who **Might** Qualify for Membership in STN

There are three Schaghticoke descendants who are claimed as members by the SIT, but who have stated to family members who belong to the STN that they neither requested nor consented to such membership. They have also stated that they are moving out of state and do not care to belong to either Schaghticoke petitioning group. It is herein pointed out that it is contrary to the BIA's tribal acknowledgment related policies for petitioning groups to list individuals as members without their consent. The OAR should investigate whether or not there are individuals who have been placed on SIT's membership list without their knowledge and consent. These three people are still considered part of the STN's unenrolled tribal community as defined in the constitutional amendment passed September 28, 2003.

At this writing, there are nine individuals who were once members of STN, resigned their membership, and subsequently joined the SIT. Table 2, below, provides a summary of these nine individuals by family group. The STN does not have the power to coerce individuals to be members of STN against their will. However, by letter dated March 25, 2003, STN offered to reopen its membership application process to these individuals pursuant to conclusions in the AS - IA's proposed finding and technical assistance advice provided by the OAR (See letter of this date submitted to the OAR with the STN's comments on the Proposed Finding). Subsequent follow-up letters were written and mailed to Alan Russell and his attorney, Michael Burns. These letters, dated April 7, 2003, and April 22, 2003, were also submitted to the OAR at the end of the comment period. The STN has offered these individuals the opportunity to apply for membership in STN, the assistance of tribal researchers and staff members to complete

6

the required application documentation, and has stated STN's willingness to hire a mediator to help resolve political differences. For the most part, these individuals have not responded to the outreach efforts of the STN.

TABLE 2
Number of SIT Members Who have Resigned from STN
(by family group)

| | |
|---|---|
| Harris family | 0 |
| Coggswell family | 4 |
| Kilson family | 5 |
| Total SIT members who resigned from STN | 9 |

At the time of writing, there are seven individuals on the SIT membership list who started but did not finish the application process before the tribal rolls closed in 2000. These persons might qualify for membership in the STN (see Table 3). Another person applied to STN, but by the time her application file was complete with the necessary information, the rolls had been closed. Afterwards she requested her application to be returned. Five individuals who still remain on the SIT member list have never applied to STN for membership. Some of them are descendants of the historical Schaghticoke Tribal Nation; some of them are undocumented as of this writing.

TABLE 3
SIT Members Who Might Qualify for STN Membership

| | |
|---|---|
| Started requested membership, but did not complete process | 7 |
| Application completed after roll was closed | 1 |
| Never applied to STN | 5 |
| TOTAL | 13 |

During the comment and response periods, there were 24 of these individuals. One of the 24, Russell Kilson, died earlier this year. The remainder was contacted directly by the

7

STN's Chief, the Tribal Council, and other tribal members. These contacts included letters, phone calls, private face-to-face meetings, and larger tribal socials. The response of these individuals to the STN's outreach efforts has been mixed. Ten of these individuals (all from the category of those who had never applied for membership in STN) decided to put the interests of the Tribe first. They applied for membership and subsequently were added to the STN Tribal Roll, effective September 28, 2003. Among their number was the half-sister of Alan Russell.

The few very obstinate SIT members who are still in this group have expressed their opposition to the current Tribal Council and some of its policies and practices as a reason for not enrolling in STN at this time. This includes Alan Russell, Gail Russell Harrison, and their immediate family members and some members of the Ritchie family. Tribal members who have been communicating with Alan Russell, Gail Russell Harrison, and Gary Ritchie have said that these individuals are making demands that are impossible to meet because of tribal constitutional restrictions governing the Tribe's political process. For example, they have stated that they would not apply for membership in STN unless the current Chief and several Tribal Council members resign from office (personal communications with Chief Richard Velky and Vice-Chairman Michael Pane). Alan Russell and Gary Ritchie, through the SIT's attorney, also made demands as preconditions to holding mediation sessions. These demands were completely unreasonable and were a pretext for not holding any discussions with STN leaders. It appears that no reasonable offer of dialogue or mediation is acceptable to them. They have not responded positively to appeals to join efforts to create political change through the Tribe's established political process. They have also stated to tribal members who

8

have spoken with them that they do not care if the Tribe gets federally recognized because they do not want to do anything that will benefit the current leadership.

There are two elderly STN members who are also currently enrolled with SIT: Olivia Pennywell and Shirley Johnson. It is unknown at this time how these two women came to be members of the SIT. STN does not know if they ever consented to have their names added to the SIT membership list. STN does know that they have never resigned from the STN. Steven Austin conducted interviews with both of these women and each stated that they never intended to leave STN, and voiced considerable frustration with Gary Ritchie. They each stated that they had been pressured and berated by Mr. Ritchie on a number of occasions, including when he twice forced them to cancel interview appointments which they had initially made during the comment period (one appointment with Angelito Palma and one with me).[3] It should be noted that none of their family members are members of SIT; rather, their family members are tribal members of STN. The STN still considers these two individuals to be members in good standing of their Tribe. The STN encourages the OAR researchers to contact these two women, if need be, to confirm that they are still affiliated with STN.

Significant Individuals Who are not on Either Membership List

The AS – IA noted that, in his opinion, there were a few individuals who had been significant in what he referred to as the historical Schaghticoke Tribe. These include Irving Harris, and Truman and Theodore Coggswell (representing only themselves and two of their children, **not** the entire Coggswell family, as they sometimes seem to assert).

---

[3] In July 2003, Gary Ritchie moved his family to the Maryland area and has had no contact with any STN members. STN Vice-Chairman Michael Pane, who has met several times with Alan Russell (Chairman of SIT), reports that Gary Ritchie (Secretary of SIT) has not had contact with him, either.

The AS – IA, through his staff in the OAR, suggested that the STN leadership offer these individuals the opportunity to apply for membership in STN.  During a phone interview with Steven Austin (March 5, 2003), he explained the Tribe's position to Irving Harris. Mr. Austin encouraged Mr. Harris to apply for membership in STN.  Mr. Harris rejected this suggestion, saying that he did not have to send in documentation of his ancestry (as required under the STN Constitution and By-laws) because "everyone already knows who I am," and because he did not want to lend legitimacy to some of the provisions in the Tribe's current Constitution and By-laws.  At a recent gathering of some tribal members in Danbury (on September 21, 2003), Mr. Harris sent a statement which reaffirmed this position.  The STN leadership has requested Mr. Harris' application on other previous occasions and has always gotten a similar response.  The STN agrees with the AS – IA, that Irving Harris has been an important member of the Tribe, and has reserved the first number on the tribal roll for him, if he were to ever apply.  This is intended as a sign of the honor and respect the STN has for Mr. Harris.

With regard to Theodore and Truman Coggswell, along with his two daughters, the STN responded to the technical assistance advice of the OAR by writing to them and offering them the opportunity to apply for membership in the STN.  The Coggswell brothers phoned the STN office to say that they would be responding through their attorney.  Their personal attorney stated that they did not intend to apply for membership at this time.  Since the initial exchange of letters there have been many phone calls between the Coggswell brothers and Chief Velky, as well as several face-to-face meetings between them.[4]  The Coggswell brothers have also had phone conversations and

---

[4] Chief Velky provided the following account of his activities in contacting the Coggswell brothers: "As previously reported, I continued telephone conversations with Truman Coggswell throughout August. On

10

met in person with Tribal Council Vice-Chairman Michael Pane, with Tribal Elder

Trudie Lamb-Richmond, and with other tribal members. Some of these discussions

seemed to create measure of good will. But always in the end, the Coggswell brothers

made unreasonable demands about the need for immediate changes in leadership and

vague assertions about their desire to be "compensated" prior to applying for membership

in the STN. As of this writing, neither the Coggswell brothers nor Truman Coggswell's

daughters have applied for tribal membership.

## Conclusions

Forty-two of the individuals who remain on SIT's membership list are not likely

to qualify for membership (over 70 percent of the remaining SIT membership;

42/59=.711). These are individuals who have not established their genealogical descent

---

August 27th, Truman and Theodore Coggswell, Jr. traveled from their homes in Missouri and New Jersey, respectively, to Danbury, Connecticut, holding a four-hour meeting to air mutual concerns and discuss the importance of their affiliation with STN. The Coggswell's and their children Donna Rymer and Robin Coggswell had previously been enrolled members of STN but withdrew their membership in 2000 and 2001. Truman and Theodore Coggswell brought documentation in the form of personal letters of their father, Theodore Coggswell, Sr. to and from Franklin Bearce, (a.k.a. Swimming Eel) to augment issues of political leadership from the 1940s to 1960s but chose not to release them to STN for purposes of this submission."

"After much discussion, Truman indicated that it was the intention of the brothers to eventually affiliate back with STN. A week later, Truman Coggswell called the Tribe's General Counsel, Thomas Van Lenten, and informed him that it was his brother and his intention to wait to affiliate or enroll with STN until after Federal Recognition. He also stated that any information they had would be made available in the event a decision on Federal Recognition is appealed. It was pointed out that new documentation could not be submitted in an appeal forum and if they had information important for the recognition process, it should be presented with this submission. They declined. If their enrollment had occurred at this time, there would be no known members of the Coggswell family not affiliated with STN."

"Neither of the Coggswell brothers has been particularly active in the Tribe since their childhood in the early 1950s. Truman Coggswell attended the April 13, 1997 and October 5, 1997 tribal meetings. Theodore Coggswell attended the April 13, 1997, May 17, 1998, May 16, 1999 and May 21, 2000 tribal meetings. In their interviews submitted in April 2002 to BAR, they admit that they attended a tribal meeting in the early 1950s, one in the mid 1970s and then not again until 1997. Certainly, their significance or importance to the Tribal community reverts to their father, Theodore Coggswell, Sr. who was a member of the "Legal and Schaghticoke Claims Committee" relating to Docket No. 112 in the 1940s and 1950s. Both brothers and their families have resided outside Connecticut for most of their adult lives and apparently do not feel comfortable enrolling with STN."

11

from the historical Schaghticoke Indian Tribe or are otherwise not likely to meet the STN's criteria for membership. They also have provided no known evidence of continuous social or political participation on the part of their ancestors or themselves. Two people on the SIT membership list are already enrolled with STN. They have never resigned from STN, so no action is necessary on STN's part. The remaining 17 individuals (59-42=17) would likely qualify for membership in STN, if they were to apply. There are also eight unaffiliated individuals (not members of SIT or STN) who would likely qualify for membership if they were to apply. Thus, the number of tribal community members who are not currently enrolled with STN but are likely to meet its membership criteria is 26. As of this writing, there are 286 enrolled STN tribal members and 26 unenrolled community members, making a total of 312 enrolled and unenrolled community members. Thus, only eight percent of community members are still unenrolled (26/312=.083).

During the comment and response periods there have been extensive follow-up contacts, both formal and informal with the unenrolled tribal community members. The STN Tribal Council has sent multiple letters to the SIT leaders and to its individual members. Council members have also made phone calls and personal visits to the homes of unenrolled community members. In addition to the outreach by Chief Velky and the Tribal Council, a number of other tribal members, including Tribal Elders[5] and "ordinary" tribal members have been working diligently to encourage qualifying unenrolled tribal community members (those in SIT and those unaffiliated with either Schaghticoke petitioner) to reunify with the STN. In addition to letters, phone calls, and

---

[5] Elders involved in the outreach effort include: Earl Kilson, Jr.; Charles Kilson; and Trudie Lamb-Richmond.

12

personal visits, at least two large community meetings have been called[6] for the purpose

of encouraging the unenrolled community members to set aside their personal and

political differences and reunite as one tribe.

Initially, the STN's effort to bring these community members onto the tribal roll

was cooly received. Many of the individuals cited their political and personal differences

with the Tribe's current leadership and their dissatisfaction with the way in which they

perceive the Tribe is currently governed. These individuals have indicated that these are

obstacles to their applying for membership at this time.

On August 5, 2003, the Schaghticoke Tribal Nation's Tribal Council passed a

resolution indicating its support for a Tribal Constitutional amendment which would

allow 42 individuals to apply for membership in the future and, pending the submission

of the required documentation, are reasonably certain they would be granted the same

(See Table 4). On September 28, 2003, the constitution amendment was passed by

unanimous vote (See Appendix C). The open-ended offer applies to these individuals

and their children, but not to subsequent generations. As of the time of writing, 16 of the

original 42 unenrolled community members (38 percent) have now enrolled in STN (See

Table 4, shaded individuals). These include, Brett Harrison (grandson of Gail Harrison);

Shelly Nadeau, and four of her children; and, ten additional SIT members. This leaves 26

tribal community members who are still not enrolled in STN. These 26 individuals are

still covered by the provisions of the constitutional amendment (passed unanimously

---

[6] One meeting was a social in New Milford that was officially sponsored by the Tribal Council (June 29, 2003), at which I was personally present. The other meeting was not an official meeting called by the entire Tribal Council, but was called by Tribal Council Vice-Chairman Michael Pane, who had been delegated the responsibility of contacting unenrolled community members to get them enrolled. The second meeting was held in Danbury (September 21, 2003).

13

September 28, 2003), which will allow them and their children special privileges with regard to applying for membership in the STN.

TABLE 4
List of 42 Individuals in Tribal Council Resolution,
Indicating Their Likely Acceptance for Membership
(Resolution passed August 5, 2003)

| No. | Name | No. | Name | No. | Name |
|-----|------|-----|------|-----|------|
| 1 | Frank Anderson | 17 | Gail Harrison | 33 | Stacy Overend |
| 2 | Margaret Anderson | 18 | Ronald Harrison | 34 | Deborah Richards |
| 3 | Mark Beaty | 19 | Bonnie Johnson | 35 | Cheri Ridgeway |
| 4 | Robert Beaty | 20 | George Johnson | 36 | Brenda Ritchie |
| 5 | Robin Coggswell | 21 | Phillip Johnson | 37 | Carrie Ritchie |
| 6 | Theodore Coggswell, Jr. | 22 | David Kilson | 38 | Gary Ritchie |
| 7 | Truman Coggswell | 23 | Joshua Kilson | 39 | Gordon Ritchie |
| 8 | Michele Cole | 24 | Justin Kilson | 40 | Alan Russell |
| 9 | Barbara Etter | 25 | Travis Kilson | 41 | Crystal Russell |
| 10 | Irving Harris | 26 | Tracey Kurjaka | 42 | Donna Rymer |
| 11 | Kateri Harris | 27 | Daniel Mayo | | |
| 12 | Paul Harris | 28 | Danielle Mayo | | |
| 13 | Rachel Harris | 29 | Kimberly Nadeau | | |
| 14 | Brett Harrison | 30 | Shelley Nadeau | | |
| 15 | Edward Harrison | 31 | Herbert Overend | | |
| 16 | Edward Harrison, Jr. | 32 | Marjorie Overend | | |

Shaded individuals joined STN during the response and comment periods

Finally, it should be noted that the process of reaching out to the unenrolled tribal members generated significant tension and conflict among Tribal Council members and between the Tribal Council and tribal members.[7] Nevertheless, the process has also

---

[7] A case in point the series of special elections which were called for the consideration of two constitutional amendments. An amendment to the STN constitution requires the presence a quorum of 55 percent of the voting membership. The first meeting (July 27, 2003) was boycotted by one part of the Tribe in order to express their dissatisfaction on an unrelated political issue. This resulted in a low voter turnout (18 percent) and the inability to consider the two amendments. A second meeting (September 7, 2003) called for this purpose, which was not boycotted, also failed to turn out the quorum (32 percent). Finally, on September 28, 2003, the quorum was assembled due to the efforts of all tribal members to "get out the vote" and the two amendments were passed. The fact that the Tribe marshaled a quorum on short notice, and only one week before the annual meeting, is especially noteworthy. This means that these same

14

provided additional evidence of both modern community and political leadership. Enrolled tribal members have called upon their own unenrolled relatives, as well as contacting unenrolled people who are from other families. Individuals from all three of the Tribe's families have worked together, across family lines, to promote this effort. They have sacrificed significant amounts of time, energy, and money to address what they felt was an important issue for the Tribe. Tribal members have been communicating their interests to the Chief and Tribal Council, and the latter have been responding. At the same time, when the Chief or Tribal Council have called upon tribal members for their assistance, members have done their best to comply. This is very clear evidence of a bilateral political relationship between the Tribe's leadership and its members.

---

individuals will have to make time once again to conduct tribal business, several of them coming from out of state. Tribal members have shown a significant degree of dedication throughout this process.

15

APPENDIX A
LIST OF SIT MEMBERS
AS REPORTED IN THE FAIR DATABASE
(Shading indicates individuals who would not likely qualify for tribal membership)

| No. | Name | Schaghticoke Ancestor? | STN's Evaluation |
|---|---|---|---|
| 1. | **Olivia Pennywell** | **yes** | **currently dually-enrolled** |
| 2. | **Shirley Johnson** | **yes** | **currently dually-enrolled** |
| 3. | George H. Johnson | yes | resigned from STN |
| 4. | Paul Eades | yes | resigned from STN |
| 5. | Lawrence Eades | yes | resigned from STN |
| 6. | P. Mike Eades | yes | resigned from STN |
| 7. | Gordon Ritchie | yes | did not complete documentation |
| 8. | Gary Ritchie | yes | resigned from STN |
| 9. | Carrie Ritchie | yes, Gary's dau. | resigned from STN (6 y.o.) |
| 10. | Brenda Ritchie | yes | resigned from STN |
| 11. | Danny Mayo | yes, Brenda's son | never applied to STN |
| 12. | Danielle Mayo | yes, Brenda's dau | never applied to STN |
| 13. | Regina Cornish | yes | resigned from STN |
| 14. | Bonnie Johnson | yes | resigned from STN |
| 15. | **Philip Johnson** | **yes** | **resigned SIT and joined STN effective September 28, 2003** |
| 16. | Ruth Ritchie | yes, Fieldon's dau | never applied to STN |
| 17. | Cathy Carter | yes | STN roll closed before docs. were complete |
| 18. | Kenneth Ritchie [Sr.] | yes | did not complete documentation |
| 19. | Russell Kilson | yes | deceased in 2003 |
| 20. | David Kilson | yes | never applied to STN |
| 21. | Travis Kilson | yes | The names of 21, 22, and 23 are on one SIT petition. They stated they are moving and do not care about either group. |
| 22. | Joshua Kilson | yes | |
| 23. | Justin Kilson | yes | |
| 24. | Nancy Offutt | unknown | 24, 25, 26, and 27 claim descent from Riley Cogswell through his daughter Nancy Cogswell and from Nancy Chickens through her daughter Mary Ann Phillips. STN has no documentation regarding their claim. Therefore, we cannot evaluate it. See below. |
| 25. | Wells Offutt | | |
| 26. | Gerald Offutt | | |
| 27. | Horace Stewart | | |
| 28. | **Marjorie Overend** | **yes; William Russell's sister** | **resigned SIT and joined STN effective September 28, 2003** |
| 29. | Alan Russell | yes | did not complete documentation |

16

| No. | Name | Schaghticoke Ancestor? | STN's Evaluation |
|---|---|---|---|
| 30. | Gail Harrison | yes | did not complete documentation |
| **31.** | **Barbara Etter** | **yes** | **resigned SIT and joined STN** |
| **32.** | **Margaret Anderson** | | **effective September 28, 2003** |
| **33.** | **Herbert Overend** | | |
| 34. | Mary MacDonald | unknown | 34, 35, 36 claim descent through a extramarital union of William Russell. STN has no documentation to support their claim. See also 39, 41, 42, and 43. |
| 35. | John MacDonald | unknown | |
| 36. | Norman MacDonald | unknown | |
| 37. | Edward Harrison | yes; Gayle Harrison's son | did not complete documentation |
| 38. | Ron Harrison | yes; Gayle Harrison's son | |
| 39. | Glenna McDonald | unknown | see evaluation at 34, 35, and 36 |
| 40. | Crystal Russell | yes; Alan Russell's daughter | did not complete documentation |
| 41. | Dylan Porter | unknown | see evaluation at 34, 35, and 36 |
| 42. | Norman Porter | unknown | see evaluation at 34, 35, and 36 |
| 43. | Ian Porter | unknown | see evaluation at 34, 35, and 36 |
| 44. | Edward Harrison, Jr. | yes; Gayle Harrison's grson | never applied to STN |
| 45. | Brett Harrison | yes; Gayle Harrison's grson | **Applied to STN, accepted for membership effective August 5, 2003** |
| 46. | Grace Trueheart, b. 1919 | unknown | Claims descent from Jabez Cogswell through Ellen Cogswell. STN does not have the evidence to evaluate the claim of this family to be Schaghticoke. |
| 47. | *Mark Jenkins*[8] | unknown | *RE: 47, 48, and 49, are Trueheart family; see 46, above.* |
| 48. | *Todd Jenkins* | unknown | |
| 49. | *Scott Jenkins* | unknown | |
| 50. | Lorrain Collins | unknown | 50, 51, 52, and 53 are Trueheart family; see 46, above. |
| 51. | Elton Jenkins | unknown | |
| 52. | Beverly White | unknown | |
| 53. | Charles Jenkins | unknown | |
| 54. | *Cynthia Whitaker* | unknown | *Trueheart family; see 46, above.* |
| 55. | Rose Miller | unknown | *not located in FAIR database* |
| 56. | *Katherine Bryant* | unknown | *not located in FAIR database* |
| 57. | *Charles Jones* | unknown | *Trueheart family; see 46 above.* |
| 58. | *Michael Jones* | unknown | *in FAIR database, but no info.* |

[8] Those individuals marked by italic font are noted as "pending" members in the SIT.

17

| No. | Name | Schaghticoke Ancestor? | STN's Evaluation |
|---|---|---|---|
| 59. | *Diane Gooden* | *unknown* | *not in FAIR; may be Diane Jones; if so, Trueheart family.* |
| 60. | *Alvin Jones* | *unknown* | *in FAIR database, but no info.* |
| 61. | *James Jones* | *unknown* | *Trueheart family; see 46, above.* |
| 62. | *Norman Jones* | *unknown* | *Trueheart family; see 46 above.* |
| 63. | Robert Meldrum | unknown | 63, 64, and 65 are Trueheart family; see 46, above. |
| 64. | Fostina DiVito | unknown | |
| 65. | Catherine Brito | unknown | |
| 66. | *Denise Trueheart* | *unknown* | *Trueheart family; see 46 above.* |
| 67. | **Robert Beaty** | yes | **resigned SIT and joined STN effective September 28, 2003** |
| 68. | **Mark Beaty** | yes | |
| 69. | **Deborah Richards** | yes | |
| 70. | **Frank Anderson** | yes | |
| 71. | **Stacy Overend** | yes | |
| 72. | *Ronald Augustine* | *unknown* | *Trueheart family; see 46 above.* |
| 73. | *Earl Whitaker* | *unknown* | *Trueheart family; see 46 above.* |

18

APPENDIX B
Remaining Unenrolled Tribal Community Members
(By Family Group)
**Bold italic** indicates formerly enrolled members of STN who withdrew their membership

| Harris Family | | | | | |
|---|---|---|---|---|---|
| On SIT Membership List | | | Unaffiliated Community Members | | |
| 1. | Harrison | Edward | 19. | Harris | Irving |
| 2. | Harrison | Gail | 20. | Harris | Paul |
| 3. | Harrison | Ronald | 21. | Harris | Kateri |
| 4. | Russell | Alan | 22. | Harris | Rachel |
| 5. | Russell | Crystal | | | |
| 6. | Harrison, Jr. | Edward | | | |
| **Kilson Family** | | | | | |
| On SIT Membership List | | | Unaffiliated Community Members | | |
| 7. | Kilson | David | | | |
| 8. | Kilson | Joshua[9] | | | |
| 9. | Kilson | Justin | | | |
| 10. | Kilson | Travis | | | |
| 11. | *Johnson* | *Bonnie* | | | |
| 12. | *Johnson* | *George* | | | |
| 13. | *Ritchie* | *Brenda* | | | |
| 14. | *Ritchie* | *Carrie* | | | |
| 15. | *Ritchie* | *Gary* | | | |
| 16. | Ritchie | Gordon | | | |
| 17. | Mayo | Daniel | | | |
| 18. | Mayo | Danielle | | | |
| **Coggswell Family** | | | | | |
| On SIT Membership List | | | Unaffiliated Community Members | | |
| | | | 23. | *Coggswell, Jr.* | *Theodore* |
| | | | 24. | *Coggswell* | *Truman H.* |
| | | | 25. | *Rymer* | *Donna* |
| | | | 26. | *Coggswell* | *Robin* |

:

---

[9] Joshua, Justin, and Travis Kilson may not be enrolled in SIT with their knowledge and consent.

19

APPENDIX C
Constitutional Amendment on Unenrolled Community Members
(Passed September 28, 2003)

20

## PROPOSED AMENDMENT 1

Section 2 (a) and Section 2 (b) of Article III of the Constitution of the
Schaghticoke Tribal Nation are hereby amended to read as follows:

"(a)     establish, through submission of certified copies, with raised
          seal thereon, of long form birth certificates and other legal
          documents, that they have direct matrilineal or patrilineal
          descendancy (or any combination of either) from the first
          recorded Chief of the Tribe, Gideon Mauwee or direct
          matrilineal or patrilineal descendancy from those persons
          identified as an Indian on the Thirteenth Census of the
          United States 1910 Indian Population of the Schaghticoke
          Reservation, Enumerated on the 16th of April, 1910.
          Adoption will not be sufficient to establish any link in the
          chain of descendancy; and"

"(b)     establish by sufficient evidence that they and their lineal
          ancestors have lived in tribal relations with the Schaghticoke
          Tribal Nation on a substantially continuous basis throughout
          history."

## PROPOSED AMENDMENT 2

Article III of the Constitution of the Schaghticoke Tribal Nation is hereby further
amended by the addition of the following:

**SECTION 5: <u>MEMBERS OF THE HISTORICAL SCHAGHTICOKE COMMUNITY</u>**
"The Tribe has identified 42 individuals who were part of the Schaghticoke Tribal
Community in their own lifetimes, but are not now members or have not applied for
enrollment in the Schaghticoke Tribal Nation as of the date of the Tribe's submission of
its Certified Roll in support of its Documented Petition for Federal Acknowledgment.
Those individuals are listed on Appendix A: "Unenrolled Schaghticoke Community
Members", attached hereto and made a part hereof. To protect its interest in preserving
unity and continuing community, the Tribe has determined that, notwithstanding any
general closure of Tribal Rolls, such adult individuals over 16 years of age as of the
Effective Date of Federal Recognition shall be permitted to apply for membership in the
Schaghticoke Tribal Nation for a period of 4 years after that date. Similarly, children of
such listed members, upon reaching the age of 16 years, the voting age set forth in this
Constitution, shall have a period of 6 years to apply for membership in the Schaghticoke
Tribal Nation. Action on such applications shall be subject to satisfaction of the
requirements of Section 1 of this Article III (relating to required documentation), and to
Section 2 of this Article III (relating to membership criteria). After these periods of
eligibility expire, all affected individuals shall have the opportunity to seek enrollment
equal to that of any other prospective member."