UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. H-85-1078(PCD) |
| v. | ) | |
| | ) | |
| 43.47 ACRES OF LAND, MORE OR LESS, | ) | |
| SITUATED IN THE COUNTY OF | ) | |
| LITCHFIELD, TOWN OF KENT, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-98-CV 01113 (PCD) |
| v. | ) | |
| | ) | |
| KENT SCHOOL CORPORATION, INC., et | ) | |
| al | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-00-CV 0820 (PCD) |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA AND | ) | |
| THE CONNECTICUT LIGHT AND | ) | |
| POWER COMPANY, et al | ) | |
| Defendants. | ) | November 26, 2003 |

**SCHAGHTICOKE TRIBAL NATION'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' AND *AMICUS*' MOTION TO AMEND THE
SCHEDULING ORDER TO ALLOW THE SUBMISSION OF NEW EVIDENCE**

## INTRODUCTION

The Schaghticoke Tribal Nation ("Tribe") objects to the Motion to Amend the

Scheduling Order to Allow the Submission of New Evidence filed in the above-captioned case

by the Defendants, Kent School Corporation, Inc., the Town of Kent, the Connecticut Light and

Power Company (collectively, "Defendants") and the *Amicus* State of Connecticut ("*Amicus*"), on November 7, 2003. The motion should be denied for three reasons.

First, the Defendants and *Amicus* impermissibly seek to have the last word by offering sur-reply evidence and argument in opposition to the Tribe's petition for acknowledgement ("Petition") now pending before the Bureau of Indian Affairs ("BIA"). The Defendants and *Amicus* disguise their motion as one seeking a simple amendment of the Scheduling Order in this case. In point of fact, however, they do not seek a simple extension of time to exercise a right afforded them under the terms of that Order or the relevant regulations, codified in 25 C.F.R. Part 83. Rather, their motion seeks the creation of a new right not contemplated by either and, in fact, prohibited by the applicable regulations, namely, the right to submit sur-reply evidence and argument in further opposition to the Tribe's petition.

Second, the Defendants and *Amicus* do not even argue that the BIA's decision to reject their sur-reply submission of evidence and argument was wrong and should be set aside by the Court. Rather, the Defendants and *Amicus* seek the same result by coyly asking the Court to simply amend the Scheduling Order and direct the BIA to accept their improper filing. The Defendants and *Amicus* ignore, however, that such a measure is not permitted under the relevant regulations. They do not even contest the BIA's application of those regulations.

Finally, the purported justification for Defendants' and *Amicus'* attempt to improperly make their sur-reply submission of evidence and argument - - that the Tribe submitted an inaccurate membership list to the BIA - - is simply untrue. Their false allegation, however, provides an example of how the Defendants and *Amicus* are prepared to levy unfounded charges against the Tribe in an attempt to pervert the BIA acknowledgement process to obtain a result in their favor. Intent on labeling the Tribe "liars", Defendants and *Amicus* completely ignore significant facts underlying the present dispute. Specifically, they ignore the fact that (1) for months the Tribe has attempted to gather sufficient information to establish an accurate membership count pursuant to advice provided by the BIA; (2) the Tribe's September 29th BIA filing was not thrown together haphazardly at the last moment, but was the product of a long

-2-

investigation and an Amendment to the Tribe's Constitution proposed by the Tribal Council and approved and adopted by a majority vote of the Tribe members; (3) the purported memorandum in which nine Tribe members renounced their membership bears a date of September 29th - - the very day upon which the Tribe submitted its final filing with the BIA; and, (4) it is not at all clear that the September 29th Memorandum was actually delivered to any of the Tribe leaders at any time, let alone prior to the submission of the Tribe's September 29th BIA filing. These facts make it apparent that the Tribe did not intentionally misrepresent facts to the BIA. These facts do, however, make it apparent that the Defendants and *Amicus* are prepared to ignore concrete facts and rely upon trumped-up "evidence" in an attempt to derail the Tribe's petition. Such gamesmanship only underscores the propriety of a conclusion by the Court that the administrative record must close now.

## ARGUMENT

**A.    Under the terms of the Scheduling Order and the Applicable Regulations, the Defendants and *Amicus* Are Not Entitled to Offer Sur-Reply Evidence.**

As the Court is well-aware, on May 28, 2001, it approved a Scheduling Order in this case. The Scheduling Order was the product of months of negotiations between the BIA, the parties and *amici*. Its terms were closely scrutinized and extensively debated by the lawyers for all involved. Eventually, an agreement was reached and that agreement was memorialized in the Scheduling Order. While a few of individual deadlines set forth in the Scheduling Order have been extended for all the parties, the procedural "framework" which it established remains unchanged and is essentially that provided for in the BIA's regulations, codified in 25 C.F. R. Part 83. Under the Scheduling Order, as amended, and consistent with the BIA's regulations, the Defendants and *Amicus* had until August 8, 2003, to submit all comments and evidence with respect to the Tribe's petition. Thus, that filing was their only opportunity to comment on and offer evidence with respect to the Tribe's petition.

It is important to note that the Scheduling Order is not intended to replace the BIA's regulations. Rather, it "is meant to serve the rights and interests of all parties to the captioned

litigation, and allow the DOI [Department of the Interior] to determine the merits of the petition *on a schedule other than that set forth in the applicable regulations, 25 C.F.R. Part 83*, except as otherwise provided herein." *See* May 8, 2001 Stipulated Scheduling Order at 2 (emphasis added). While the Scheduling Order does permit for extension of its deadlines, upon a showing of good cause, *id.* at 10, ¶ n, it specifically provides "[e]xcept as otherwise provided in this Order the regulations set forth in 25 C.F.R. Part 83 are applicable to the BIA's consideration of the Schaghticoke Tribal Nation's petition," *id.* at 10-11, ¶ n. Thus, except as to matters relating to timing and scheduling, the Scheduling Order does not change the substance of what may be submitted to (or considered by) the BIA in ruling upon a petition for acknowledgement.

Therefore, by its very terms, the Scheduling Order does not change the basic framework for submission of evidence and argument by the petitioner and interested parties that is established in 25 C.F.R. Part 83. In this regard, under both the Scheduling Order and 25 C.F.R. Part 83, the Tribe and all interested parties are permitted to submit argument and evidence in support of or against the petition, and the Tribe thereafter is permitted to submit additional evidence and argument in reply to the submission of the interested parties. *Compare* Scheduling Order at 5, ¶ (providing for the submission of comments, argument and evidence by all parties, and a reply by the Tribe) *with* 25 C.F.R. §§ 83.10(i) and (k) (same). This is precisely the framework established by the district court in a similar situation in *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 51 (D.D.C. 2001).

Put differently, neither the Scheduling Order nor 25 C.F.R. Part 83 allow for the submission of the type of sur-reply evidence and argument that the Defendants and *Amicus* now ask the Court to order the BIA to accept. In fact, 25 C.F.R. Part 83 prohibits the submission of such evidence and argument. In addition to providing that the petitioner is to have the last word on its petition, 25 C.F.R. § 83.10(k) specifically provides, "[n]o further comments from interested or informed parties will be accepted after the end of the regular response period." Moreover, 25 C.F.R. § 83.10(l)(1) provides, in relevant part, "[u]nsolicited comments submitted

-4-

after the close of the response period established in § 83.10(i) and (k), will not be considered in preparation of a final determination. . . ."

In their motion, the Defendants and *Amicus* do not seek an extension of time to exercise any existing right under the Scheduling Order or 25 C.F.R. Part 83.[1]  Rather, their motion seeks the creation of a new right not contemplated by either:  the right to submit sur-reply evidence and argument in further opposition to the Tribe's petition.  There is no authority for the Court to create such a right, in direct contravention of the BIA's regulations.  Indeed, given the nature of the BIA proceedings, this makes sense.

In this regard, implicit in both the Scheduling Order and 25 C.F.R. Part 83 is the recognition of two significant aspects of the BIA tribal acknowledgment proceedings that cut against the propriety of the Court creating this new right for these proceedings.  First, it is undeniable that the administrative record must close at some point in time, to allow for the BIA to formulate and render its final decision - - otherwise, there never could be a "final decision."  Second, there is no disputing that the Tribe bears the burden of proof on its petition for tribal acknowledgement.

The BIA's regulations establish a framework by which the petitioner and interested parties can exercise their right to comment on a petition before the administrative record closes and final agency action is taken.  *See* 25 C.F.R. Part 83.  The Scheduling Order in this case does not alter that framework.  It is that framework which allows the petitioner - - here, the Tribe - - to have the last word in support of its petition before the record closes and a final decision is rendered.  Given the interests at stake for the Tribe, *see Muwekma*, 133 F. Supp. 2d at 43-44; *see*

---

[1]    Aside from not being permitted under the Scheduling Order or the BIA regulations, the nearly two-month, *nunc pro tunc*, extension of time to file additional comments and evidence with the BIA is completely unreasonable.  Indeed, it is one which, had it been requested by the Tribe, would have been vigorously opposed by the Defendants and *Amicus*.  As the Court will certainly recall, in April 2002, the Tribe missed the deadline for filing its comments and evidence with the BIA by just one day.  The Defendants and *Amicus* strenuously argued before the BIA and this Court that the Tribe's comments and evidence should be rejected altogether because of this one-day oversight.  Thus, the instant Motion in which they seek not only additional time - - nearly two months after their final opportunity to comment - - but also a new right to comment not recognized under either the BIA regulations or the Scheduling Order is the model of hypocrisy.

*also* 25 C.F.R. §83.2, and the fact that the ultimate burden of proof rests with the Tribe, this is only fair.

**B.      The Defendants and *Amicus* Do Not Even Argue that The BIA's Decision to Reject Their Attempt to Submit Sur-Reply Evidence and Argument in Further Opposition to the Tribe's Petition Was Wrong.**

The Defendants and *Amicus* do not argue that the BIA's decision to reject their sur-reply submission of evidence and argument was wrong and should be set aside by the Court. Rather, the Defendants and *Amicus* seek the same result by coyly asking the Court to simply amend the Scheduling Order and direct the BIA to accept their improper filing. The Defendants and *Amicus* ignore, however, that such a measure is not permitted under the relevant regulations. They do not even contest the BIA's application of those regulations. Accordingly, their Motion should not be granted.

The Scheduling Order specifically provides that the BIA regulations codified in 25 C.F.R. Part 83 remain applicable. The BIA regulations, 25 C.F.R. §§ 83.10(k) and (l)(1) in particular, provide the Tribe with the right to have the last word on its petition and preclude the submission or consideration of the very type of sur-reply evidence and argument that the Defendants and *Amicus* attempted to submit.[2] In rejecting the submission of the Defendants' and *Amicus'* sur-reply evidence and argument, the BIA did exactly what it routinely does in reviewing petitions for tribal acknowledgement: applied its own regulations. Its decision as to how to apply those regulations in this case is presumptively valid. *See, e.g., City of Lincoln City v. United States Dep't of Interior,* 229 F. Supp. 2d 1109, 1122 (D. Or. 2002) (citing *EPA v. National Crushed Stone Ass'n,* 449 U.S. 64, 83 L.Ed.2d 268 (1980)).

Absent any convincing argument that the BIA's decision was wrong under the appropriate standard of review, the Court should not effectively reverse that decision by

---

[2]    25 C.F.R. § 83.10(k) provides, "No further comments from interested or informed parties will be accepted after the end of the regular response period." 25 C.F.R. § 83.10(l)(1) provides, in relevant part, "Unsolicited comments submitted after the close of the response period established in § 83.10(i) and (k), will not be considered in preparation of a final determination. . . ."

amending the Scheduling Order and directing the BIA to accept the Defendants' and *Amicus'*
improper submission.

**C.    The Tribe Did Not Submit Erroneous Membership Lists to the BIA.  Therefore, There Is No Justification to Order the BIA to Accept Defendants' and Amicus' Sur-reply Submission of Evidence and Arguments.**

The Defendants and *Amicus* accuse the Tribe of making "an inaccurate representation of the facts" by submitting "erroneous membership lists" to the BIA for its consideration.  While there has been an "inaccurate representation of the facts," it has been made not by the Tribe, but by the Defendants and *Amicu*s.  Defendants' and *Amicus'* motion by itself demonstrates the precise reason why the Court should not allow the modification of the procedural framework described above: doing so would allow the introduction of misleading sur-reply evidence and argument, requiring a further detailed response by the Tribe and, thus, protracting these proceedings.

What is known about the questionable circumstances surrounding the Defendants' and *Amicus'* submission raises more questions than it resolves and casts doubt on the veracity of the information that they provided.  Indeed, the attached affidavit of Richard L. Velky, Chief of the Tribe, makes this clear.  *See* Exhibit A.  In this regard, Chief Velky explains that, for approximately ten months after the BIA's December 5, 2002 proposed negative finding with respect to the Tribe's petition, he, various members of the Tribal Council, and other Tribal Members, met and communicated with individuals believed to be Schaghticoke in an attempt to identify additional Tribal Members who qualified to be added to the Tribe's membership rolls. *See* Velky Affidavit at ¶ 7.  The Tribe's efforts in this regard were prompted by advice provided by the BIA during several technical assistance meetings with the Tribe.  *Id.* at ¶ 6.  Thus, the Tribe investigated the existence of other Schaghticoke, pursuant to advice it received from the BIA.

During the discussions with the individuals believed to be Schaghticoke, the Tribe addressed the following matters:  (a) the import of, and procedure set forth in, the May 8, 2001

Stipulated Scheduling Order issued by Senior U.S. District Judge Peter C. Dorsey in the above-captioned case; (b) the Tribe's opinion as to the benefits of federal recognition to all Schaghticoke people; and (c) how, in the Tribe's opinion, the strength of its petition and prospects for becoming federally recognized could be significantly enhanced if they made application for membership in the Tribe. *Id.* at ¶ 8. Contrary to the insinuations and false accusations of the Defendants and *Amicus* in their Motion, at no time during any of these meetings were any false promises or misrepresentations made or deceitful information conveyed for any reasons, including for the purpose of inducing those individuals believed to be Schaghticoke to apply for membership in Tribe. *Id.* at ¶ 9. As a result of these meetings various individuals, including those referenced in the Defendants' and *Amicus'* Motion, submitted written Tribal membership applications. *Id.* at ¶ 10.

Chief Velky also explains that, as a result of the Tribe's investigation, in July 2003, the Tribal Council proposed an Amendment to the Tribe's Constitution authorizing all individuals believed to be Schaghticoke - - including those referenced in the Motion - - to apply for and become members of the Tribe, if each applicant provided the requisite documentation establishing his or her Tribal lineage. *Id.* at ¶ 11. On September 28, 2003, the proposed Amendment was approved and adopted by a majority vote of the Tribal members. *Id.* at ¶ 12. Pursuant to this Constitutional Amendment, and subject to them providing the requisite documentation establishing their Tribal lineage, the new members of the Tribe were admitted on September 28, 2003. *Id.* at ¶ 13.

The next day, September 29, 2003, the Tribe submitted final comments and evidence to the BIA in rebuttal to the comments and evidence submitted by the interested parties, including Defendants and *Amici* in the above-captioned case, and in further support of its petition ("the Tribe's September 29th BIA filing"). The submission included the "Schaghticoke Tribal Nation's Analysis of the Schaghticoke Indian Tribe's Membership List" ("the Analysis") prepared by Steven L. Austin, PhD. The reference to the new Tribal Members was added to the Analysis by Dr. Austin and the Tribe's September 29th BIA filing only after the September 28th

Tribal Council meeting referenced above. *Id.* at ¶ 14. The resulting revisions to the Analysis were made by Dr. Austin over several hours during the evening of September 28th and early morning hours September 29th. *Id.*

Before it was filed as part of the Tribe's September 29th BIA filing, and again in connection with preparing his Affidavit, Chief Velky reviewed the Analysis for accuracy and truthfulness. *Id.* at ¶ 15. It was his opinion then, and remains his opinion now, that the Analysis was, at the time of the Tribe's September 29th BIA filing, completely accurate and truthful based on what was known to the Tribe and Dr. Austin at the time. *Id.*

On November 7, 2003, Defendants and *Amicus* filed their Motion in which they claimed that nine of the new members renounced their membership in the Tribe. In support of this claim, the Defendants and *Amicus* attached to their Motion a one-page unattested, un-sworn memorandum purportedly signed by the nine members and dated September 29, 2003 ("the September 29th Memorandum"). At no time prior to the filing of the submission of the Tribe's September 29th BIA filing (or even after) did Chief Velky or anyone within the Tribal administrative offices receive the September 29th Memorandum or otherwise receive a membership withdrawal request from any of the nine members identified therein. *Id.* at ¶ 17. The concerns that the Court and the BIA justifiably should have as a result of the questionable timing and circumstances surrounding the submission of the September 29th Memorandum, are underscored by those expressed by Chief Velky in his memorandum.

In this regard, Chief Velky states, based on his sixteen years of experience as Chief and his involvement in the Tribe's efforts to obtain federal recognition, that assuming the September 29th Memorandum was, in fact, executed by the nine named individuals, he has grave concerns that their signatures may not have been the product of either knowing or voluntary decisions on their parts. *Id.* at ¶ 18. As the Chief points out, federal recognition of the Tribe has been hotly contested by various individuals and entities, including members of the SIT Tribal faction, the Defendants in the above-captioned case and now, apparently, *Amicus* in the above-captioned case, the State of Connecticut, as represented by Attorney General Blumenthal. *Id.* at ¶ 19.

–9–

Given the history of the Tribe's attempts to obtain federal recognition and the various issues involved in that process, and lawsuits against the Tribe by members of the SIT over the use of the state reservation, it is entirely possible that the nine members identified in the September 29th Memorandum were coerced into making their alleged decision to withdraw their membership in the Tribe or provided misinformation as a means of inducing that decision. *Id.*

Moreover, the fact that the September 29th Memorandum was allegedly submitted to the Tribe at the last hour and contains no averment that each of the nine members signed the document knowingly and voluntarily, and the fact that none of the nine individuals contacted Chief Velky directly to notify him that they had signed the document (or to provide a copy of the document itself), the possibility that the memorandum was the product of coercion or misinformation is distinct. *Id.* at ¶ 20. Indeed, as Chief Velky points out, neither the Court nor the BIA can be sure that the nine members identified in the document actually signed the document, as it contains no attestation by a notary or a Commissioner of the Superior Court. *Id.* at 19.

Based on the sworn statements of Chief Velky, questions abound concerning the reliability of the September 29th Memorandum, the circumstances surrounding its creation, and the propriety of the Defendants and *Amicus* reliance on it in pressing the instant Motion. For example, why would Defendants and *Amicus* argue that the Tribe misrepresented the accurate count of its members based upon a September 29th Memorandum which, by itself, raises the question of whether the Tribe even had the Memorandum before its submission of its September 29th BIA filing? Assuming the Tribe members identified in the September 29th Memorandum did, in fact, renounce their membership, why did they wait until September 29th to do so? Why did Defendants and *Amicus* not submit any proof that the September 29th Memorandum was actually delivered to the Tribal leaders? Was the September 29th Memorandum actually delivered to the Tribal leaders and, if so, was it delivered before the Tribe filed its last submission with the BIA? Was the September 29th Memorandum actually signed by the nine individuals? If so, was it signed knowingly and voluntarily? Were the Tribe members identified

in the Memorandum coerced into renouncing their membership by members of the faction?  Did representatives of Defendants and *Amicus* exert undue influence on the Tribe members identified in the Memorandum?

If the Court orders the BIA to accept the improper sur-reply submission of argument and evidence of the Defendants and *Amicus*, these questions will remain.  Absent further investigation and comment by the Tribe, it is impossible for the Court or the BIA to ensure that the information offered by the Defendants and *Amicus* is accurate.  Such investigation and comment would further protract these proceedings and undermine the very purpose of the BIA regulations and the Scheduling Order.

If forced to respond further to the Defendants' and *Amicus'* last-ditch attack on its petition, the Tribe would submit additional evidence and argument in defense of the accurate count of their number and the circumstances surrounding the submission of the Defendants' and *Amicus'* sur-reply argument and evidence.  Predictably, the Defendants and *Amicus* would attempt to further attack the Tribe's efforts in this regard, to which the Tribe would have to respond further, and so on and so forth.  The Defendants and *Amicus* will not be content unless they are permitted to have the last word.  The applicable BIA regulations, however, do not provide for this.  If the Court orders the BIA to accept the last-minute filing, a chain of events will be triggered that will frustrate the very purpose of the Scheduling Order:  the expeditious resolution of the Tribe's petition.  This should not be permitted, particularly in light of the fact that Defendants and *Amicus* have demonstrated a propensity to include highly questionable statements in their submissions.

## CONCLUSION

Based on the foregoing the Defendants' and *Amicus'* Motion to Amend the Scheduling Order to Allow the Submission of New Evidence should be denied.

THE PLAINTIFF,
SCHAGHTICOKE TRIBAL NATION
BY MCCARTER & ENGLISH, LLC
ITS ATTORNEYS

By_____
Eric Watt Wiechmann (CT 04331)
CityPlace I
Hartford, CT  06103
(860) 275-6700

and

Thomas Van Lenten, Esq. (CT 10199)
Pinney, Payne, Van Lenten,
Burrell, Wolfe & Dillman, P.C.
Lee Farm Corporate Park
83 Wooster Heights
Danbury, CT  06813-3499
(203) 830-6335

Of Counsel:
Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

and

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC  20037

-12-

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Schaghticoke Tribal Nation's Memorandum in Opposition to Defendants' Motion to Amend the Scheduling Order to Allow the Submission of New Evidence has been mailed, postage prepaid this 26th day of November, 2003 to:

John B. Hughes, Esq.
Chief of Civil Division
United States Attorneys Office
157 Church Street, Floor 23
New Haven, CT 06510

Thomas Van Lenten, Esq.
Pinney, Payne, Van Lenten,
Burrell, Wolfe & Dillman, P.C.
Lee Farm Corporate Park
83 Wooster Heights
Danbury, CT 06813-3499

Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

David J. Elliot, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT 06776-0786

Michael J. Burns, Esq.
Law Offices of Attorney Michael J. Burns
57 Pratt Street
Hartford, CT 06103

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

Giovanna Tiberii Weller, Esq.
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Robert A. Slavitt, Esq.
Slavitt, Connery, & Vardamis
618 West Avenue
Norwalk, CT 06850

James R. Fogarty, Esq.
Fogarty Cohen Selby & Nemiroff
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.
Asst. Attorney General
55 Elm Street
Hartford, CT 06141

Thomas A. Gugliotti, Esq.
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123

Renita Ford, Esq.
General Litigation Section
Environmental & Natural Resources Division
United States Department of Justice
Post Office Box 663
Washington, DC 20004-0663

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, D.C. 20240

Eric Watt Wiechmann (CT 04331)

HARTFORD: 602665.01

- 13 -