UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CIVIL NO. H-85-1078(PCD) |
| | : | |
| 43.47 ACRES OF LAND, MORE OR LESS, SITUATED IN THE COUNTY OF LITCHFIELD, TOWN OF KENT, ET AL. | : | |
| ----------------------------------------------- | : | |
| SCHAGHTICOKE TRIBAL NATION | : | |
| | : | |
| V. | : | CIVIL NO.3:98CV1113(PCD) |
| | : | |
| KENT SCHOOL CORPORATION, INC., ET AL. | : | |
| ----------------------------------------------- | : | |
| SCHAGHTICOKE TRIBAL NATION | : | |
| | : | |
| V. | : | CIVIL NO. 3:00CV820(PCD) |
| | : | |
| THE UNITED STATES OF AMERICA, CONNECTICUT LIGHT AND POWER COMPANY, ET AL. | : | |
| ----------------------------------------------- | : | APRIL 27, 2004 |

**AMICUS STATE OF CONNECTICUT'S MEMORANDUM
IN OPPOSITION TO THE SCHAGHTICOKE TRIBAL NATION'S
<u>MOTION TO AMEND SCHEDULING ORDER</u>**

The amicus curiae, State of Connecticut ("State"), submits this memorandum of law in opposition to the plaintiff Schaghticoke Tribal Nation's ("STN") motion to amend scheduling order dated April 6, 2004. The State objects to the motion to amend as lacking good cause.

_____

ORAL ARGUMENT REQUESTED

In particular, the State objects to the other relief the STN requests at the end of its motion – specifically, a finding by the Court that Attorney General Richard Blumenthal violated the existing paragraph (l) and that he be placed on notice that future violations may result in sanctions, contempt or other discipline. Because the Attorney General and the State fully complied with the requirements of paragraph (l), there are no grounds for such relief.

I.      **BACKGROUND**

On March 17, 2004, Attorney General Blumenthal attended a meeting sponsored by the Conference of Western Attorneys General ("CWAG"), of which he is an associate member, with Secretary of the Interior Gale Norton and members of her staff. The purpose of the meeting was for the attorneys general from a variety of states to meet with Secretary Norton to discuss a range of issues of concern for states. Meetings of the CWAG members with the Secretary of the Interior have been held annually, and the Attorney General Blumenthal genuinely attended these meetings on a number of prior occasions. In attendance at the March 17, 2004 meeting were attorneys generals or their representatives from several states as well as the executive director and deputy director of CWAG. From the Department of the Interior were Secretary Norton and several assistant secretaries and members of the Solicitor's Office. Included as one of many items on the agenda for the meeting was the question of what reforms might be under consideration to improve the consistency and reliability of the federal tribal acknowledgment process. Ex. A.

At the meeting, Attorney General Blumenthal delivered to Secretary Norton a letter expressing serious concerns about the process that resulted in the STN Final Determination, which had been issued on January 29, 2004, by Principal Deputy Assistant Secretary Aurene

Martin, and in which the STN was granted federal tribal acknowledgment. A copy of the letter is attached as Ex. B hereto. In full compliance with paragraph (l), the letter was simultaneously mailed to counsel for all parties and was faxed to counsel the following morning.

The reason for the letter was the discovery of a memorandum from staff of the Office of Federal Acknowledgment ("OFA") to Principal Deputy Assistant Secretary Martin included in the administrative record which revealed a deliberate decision to award federal acknowledgment to the STN despite the lack of requisite evidence under the acknowledgment criteria and despite the existence of contrary prior precedent. A copy of the OFA "Briefing Paper" is attached as Ex. C hereto. Although the OFA Briefing Paper was included in the administrative record for the STN Final Determination, it was not previously made available to the interested parties to the acknowledgment proceedings.

The OFA Briefing Paper purported to seek guidance from Principal Deputy Assistant Secretary Martin – the decision maker for the STN petition – as to two critical questions for the Final Determination: (1) whether state recognition could be used to make up for the lack of any evidence of political authority for two significant periods; and (2) whether the STN should be recognized even though a substantial portion of the Schaghticoke community are not included in the STN membership as a result of continuing conflicts between factions. Both of these were critical issues that had to be resolved if the STN were to be granted federal recognition.

As to the question of the gaps in evidence of political authority, OFA expressly advised that there was no evidence of political authority or influence to satisfy the acknowledgment criteria for the periods of over 60 years. OFA Briefing Paper, at 1 (Ex. C). Moreover, it admitted that, if prior precedent as to the use of state recognition were followed, state recognition

would not provide additional evidence sufficient to overcome the absence of political evidence. *Id.* at 1, 3.  Thus, if then-controlling interpretations of the regulations and precedent were followed, the petitioner would have to be denied recognition.  *Id.* at 3.  To grant recognition, directly applicable precedent and prior interpretations of the regulations would have to be ignored.  Despite this startlingly candid observation, OFA recommended acknowledgment.

As to the membership question, OFA similarly departed from prior views.  The STN Proposed Finding issued in December, 2002, had concluded that the petitioner did not satisfy the acknowledgment criteria because its membership did not include key members of the Schaghticoke community.  Despite apparent repeated efforts by the STN petitioner to obtain the voluntary enrollment of those remaining outside its membership, the membership situation remained largely unchanged.  OFA nevertheless advised that the STN should be acknowledged with a membership that would include "individuals who have not specifically assented to or been accepted as members. . . ."  *Id.* at 5.  The Final Determination followed OFA's recommendations on both issues.

The March 17, 2004 letter expressed the Attorney General's deep concerns about the content of the OFA Briefing Paper.  Specifically, he stated that it "provides yet another example that the tribal acknowledgment process is seriously flawed and requires immediate and comprehensive reform to restore its credibility."  Ex. B, at 1.  After discussing the substance of the OFA Briefing Paper, which in its own words recommended applying a new and "lesser standard," OFA Briefing Paper, at 3 (Ex. C), the Attorney General stated that he was

> greatly disturbed by the OFA's lack of concern for the rights of the State of Connecticut, its citizens and the interested parties who participated in these proceedings under the apparent mistaken view that their input would be heard and considered fairly.

Ex. B, at 2. The letter concluded:

> Until a full and fair investigation can be conducted and completed, I urge you to take any available action to impose an immediate moratorium on all pending recognition decisions including any proceedings before the Interior Board of Indian Appeals. The magnitude and severity of the illegal and improper actions described in the memorandum cut to the core of all Interior Department decisions relating to the Schaghticoke and other petitioners involving state recognition as a compensating factor for lack of evidence.

*Id.*

The letter was delivered to Secretary Norton at the meeting in the presence of the other attendees, including lawyers from the Interior Department's Solicitor's Office. In delivering the letter, Blumenthal generally described its subject matter, but he engaged in no discussion of substance outside the contents of the letter on this matter.

Copies of the letter were mailed on March 17, 2004, to all counsel representing parties subject to the amended scheduling order. In addition, copies of the letter were faxed to all counsel on the morning of March 18, 2004.[1] Ex. D.

The startling revelations in the OFA Briefing Paper about the STN final determination have resulted in calls for heightened scrutiny by numerous public officials. In response to demands by Connecticut's congressional delegation, the Secretary of the Interior has directed that an investigation be initiated by the Inspector General's Office of the Interior Department. In addition, the House of Representatives Committee of Governmental Reform will be holding hearings on the tribal recognition process.

---

[1] Copies were intended to be faxed to counsel on March 17, 2004. Due to an inadvertent error, the copies were not faxed until March 18, 2004.

**II.    THE ATTORNEY GENERAL'S MEETING AND COMMUNICATIONS WITH SECRETARY NORTON FULLY COMPLIED WITH PARAGRAPH (l)'S REQUIREMENTS.**

In attending the March 17, 2004 meeting and delivering the letter to Secretary Norton, the Attorney General fully complied with the requirements of the amended scheduling order. Neither the meeting nor the delivery of the letter violated either the letter or the spirit of the amended scheduling order.

Paragraph (l) of the amended scheduling order provides, in relevant part:

> No non-federal party or *amici* shall communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary – Indian Affairs or the Deputy Commissioner of Indian Affairs with respect to this petition, without notification to the other parties.

Paragraph (l) does not preclude meetings or communications with the listed Interior Department officials. It does not give the other parties the right to attend or participate in such meetings or communications. It does not give the other parties the right to object to such meetings or communications. It does not require ***prior*** notification of such meetings. It simply requires that the non-federal parties having such meetings or communications provide notification to the other parties. Thus, rather than creating a bar on communications made without the presence of the other parties – a prohibition that the State had sought in negotiating the scheduling order but that was rejected by other parties – it creates a requirement that the other parties be notified of the meeting or communication.

By its terms, paragraph (l) does not require that the notification be made prior to the meeting or communication. What the STN seeks is a ***change*** in the notification provision. Despite the STN's protests that the clear and unambiguous intent was that notification be prior, that is neither reflected in the language of paragraph (l) nor is it the State's understanding of

6

what was intended by this provision.  The purpose of the provision, as evidenced by its own language, was to give notice of the communication or meeting – a requirement that does not otherwise exist under the Interior Department's regulations.

The other parties were notified of the meeting and communication by service on them of the March 17, 2004 letter.  The content of the meeting and communication was fully disclosed.  Paragraph (l) requires no more.

Moreover, contrary to the STN's sundry aspersions as to the Attorney General's motives, there was no secretly orchestrated "private" meeting with Secretary Norton.  The letter was delivered at the previously scheduled CWAG meeting, in the presence of numerous other public officials including other state attorneys general and members of the Interior Department Solicitor's Office. The letter expressed deep concerns about the decision making process that led to the STN Final Determination that appears to affect the entire acknowledgment process, a matter of grave importance to the State.  Identical concerns have been raised with Secretary Norton by Connecticut's congressional delegation.

In sum, no violation of the amended scheduling order has occurred.  The Attorney General's contact and communications with Secretary Norton on March 27, 2004, were in full compliance with the requirements of the amended scheduling order.

**III.   CONCLUSION**

For the foregoing reasons, the motion should be denied.

AMICUS CURIAE,
STATE OF CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

_____

Susan Q. Cobb (ct#03850)
Assistant Attorney General
Mark F. Kohler (ct#02272)
Assistant Attorney General
55 Elm St.
P.O. Box 120
Hartford, CT 06141-0120
(860)808-5020
(860)808-5389(fax)
mark.kohler@po.state.ct.us
susan.cobb@po.state.ct.us

<u>CERTIFICATE OF SERVICE</u>

This certifies that the foregoing was served by first-class mail on this 27th day of April, 2004, on all counsel and pro se parties of record, as follows:

Eric W. Weichmann
Peter W. Hull
McCarter & English, LLC
CityPlace I
Hartford, CT 06103

Thomas Van Lenten
Pinney, Payne, Van Lenten,
Burrell, Wolfe & Dillman
Lee Farm Corporate Park
83 Wooster Heights
Danbury, CT 06813-3499

John B. Hughes
U.S. Attorney's Office
157 Church Street
New Haven, CT 06510

Barbara N. Coen
Division of Indian Affairs
Office of the Solicitor
U.S. Department of Interior
1849 C Street, N.W.
Washington, D.C. 20240

Renita Ford
General Litigation Section
Environmental & Natural Resources
Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20004-0663

Judith A Shapiro
6856 Eastern Avenue, NW
Suite 206
Washington, DC 20012

Jerry C. Strauss
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

David J. Elliott
Eric L. Sussman
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

James R. Fogarty
Fogarty, Cohen, Selby & Nemiroff
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06836-2508

Richard L. Street
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey Sienkiewicz
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT 96776-0786

Michael J. Burns
Law Offices of Michael J. Burns
57 Pratt Street
Hartford, CT 06103

9

Robert A. Slavitt  
Slavitt, Connery & Vardamis  
618 West Avenue  
Norwalk, CT 06850

Thomas A. Gulgliotti  
Updike, Kelly & Spellacy  
One State Street  
Hartford, CT 06123

_____  
Mark F. Kohler  
Assistant Attorney General