Schaghticoke Briefing Paper 1/12/2004

## Schaghticoke Tribal Nation: Final Determination Issues

### Introduction

The Office of Federal Acknowledgment (OFA) requests guidance from the ASIA concerning two issues that must be resolved in order to complete the final determination on the Schaghticoke Tribal Nation (STN) (Petitioner #79).

One issue concerns a lack of evidence for political authority for one substantial historical time period and insufficient evidence for a second, longer period. The other issue concerns the refusal of one faction to re-enroll because of opposition to the current STN leadership.

### Background: Proposed Finding versus Final Determination

- Criterion 83.7(b) (community)

  The STN PF found that community had not been demonstrated between 1940 and 1967. With the additional data for the final determination, the STN now meets community for all periods up until 1996 (see *Issue 2* concerning 1996-2001).

- Criterion 83.7(c) (political influence)

  The STN PF found that the group had not demonstrated political influence between 1800 and 1875 and between 1885 and 1967. With the additional data for the final determination, there remains a lack of evidence for criterion 83.7(c) between 1820 and 1840 and insufficient evidence between 1892 and 1936. (see *Issue 2* concerning 1996-2001)

- Criteria 83.7(b) and (c) between 1996 and 2001

  These criteria were not met for the PF because the current STN membership list did not include a substantial portion of the actual social and political community. This faction continues to refuse to re-enroll.

### Issue 1

*Should the petitioner be acknowledged even though evidence of political influence and authority is absent or insufficient for two substantial historical periods, and, if so, on what grounds?*

### Discussion

The petitioner has little or no direct evidence to demonstrate that criterion 83.7(c) has been met between 1820 and 1840 and between approximately 1892 and 1936. The evidence for community during the 1820 to 1840 period, based on a high rate of intermarriage within the group, falls just short of the 50 percent necessary, under the regulations, to demonstrate political influence without further, direct evidence (83.7(b)(2)(ii)).

If applied as it was in the Schaghticoke PF, the weight of continuous state recognition with a reservation would not provide additional evidence to demonstrate that criterion 83.7(c) (political influence) has been met for this time period.

### State Relationship:

The Schaghticoke have been a continuously state-recognized tribe with a state reservation throughout their history. They have had a special status in Connecticut as a distinct political

Schaghticoke Briefing Paper 1/12/2004

community, although there was not evidence of a government-to-government relationship with Connecticut throughout the entire historical span. The state relationship with them has been an active one, and was active during both of the time periods with little direct evidence of political influence. That activity (overseers, reservation maintenance, legislation and appropriations) did not extend to direct dealings with Schaghticoke leaders or consultation with the group on group matters during the time periods in question.

*Unique Circumstances for Evaluation.*
- There is no previous case where there is little or no direct evidence of political influence within the group for extended periods even though the existence of community is well established throughout the petitioner's entire history, including the two periods when evidence of political processes is very limited.

- There is no previous case where a petitioner meets all of the criteria from earliest sustained contact for over 100 years, does not meet one of the criteria during two separate, substantial historical periods and then meets all of the criteria for a substantial period up to the present (subject to *Issue 2*).

*General Requirements of the Regulations*
The regulations require demonstration of a "substantially continuous tribal existence" (83.3(a)). Under 83.1, "Continuously or continuous means extending from first sustained contact with non-Indians throughout the group's history to the present substantially without interruption."

The regulations provide that a petitioner shall be denied if there is insufficient evidence that it meets one or more of the criteria (83.6(d)).

*Additional Background Information*
Acknowledgment of the Schaghticoke would give them standing in the current litigation to procede with their Non-Intercourse Act land claim.

The deficiencies found in the petitioner's case are similar to, though less extensive, than found by researchers for the petitioner in earlier stages of preparation of the petition. Their reports are included in the record reviewed.

*Options*
1. Acknowledge the Schaghticoke under the regulations despite the two historical periods with little or no direct political evidence, based on the continual state relationship with a reservation and the continuity of a well defined community throughout its history.

2. Decline to acknowledge the Schaghticoke, based on the regulations and existing precedent.

3. Acknowledge the STN outside of the regulations.

2

Schaghticoke Briefing Paper 1/12/2004

4. Decline to acknowledge the STN, but support or not object to legislative recognition.

*Discussion of Options*

o  Option 1 would require a change in how continuous state recognition with a reservation was treated as evidence in the STN PF and in the Historical Eastern Pequot (HEP) decisions. The STN PF stated that state recognition in the Schaghticoke case did not provide additional evidence for political influence in the periods in question in part because there were no known State dealings with Schaghticoke leaders. In addition, the position in the HEP decisions and the STN PF was that the state relationship was not a substitute for direct evidence of political processes, and can add evidence only where there is some, though insufficient, direct evidence of political processes.

The revised view, under Option 1, would be that the overall historically continuous existence of a community recognized as a political community by the State (a conclusion denied by the State) and occupying a distinct territory set aside by the state (the reservation), together with strong evidence of continuous community, provides sufficient evidence for political influence even though direct evidence of political influence is absent for some periods.

Recognition of STN under Option 1 would not affect past negative decisions because the clear continuity as a community together with the continuous historical state relationship and reservation are not duplicated in petitioners that have been rejected in the past. There are no more than six other historically state recognized tribes with a continuously existing state reservation which have not yet been considered for acknowledgment.

Option 1 may be interpreted by petitioners as establishing a lesser standard which would be cited in some future cases, if the STN decision is interpreted as allowing substantial periods during which evidence is insufficient on one criterion. Its impact on future cases would be limited by the weight given the state relationship and the continuity in community.

o  Option 2 maintains the current interpretations of the regulations and established precedents concerning how continuous tribal existence is demonstrated.

o  Option 3, acknowledgment outside the regulations, would require an explicit waiver of at least part of the regulations, based on a finding that this was in the best interests of the Indians. A waiver could be narrowly defined to distinguish this case from other potentially similar future cases.

o  Option 4 would probably be strongly opposed by the Connecticut delegation.

*Recommendation*
The OFA recommends Option 1 on the grounds that it is the most consonant with the overall intent of the regulations.

3

Schaghticoke Briefing Paper 1/12/2004

*Issue 2*
*Should the STN be acknowledged (subject to decision on Issue 1) even though a substantial and important part of its present-day social and political community are not on the current membership list because of political conflicts within the group?*

*If STN is acknowledged, who should be defined by the Department as included within the tribe acknowledged?*

*Discussion*
The STN membership list does not include a substantial portion of the actual social and political community. The activities of these individuals were an essential part of the evidence for the PF's conclusion that the STN met criterion 83.7(b) and 83.7(c) between 1967 and 1996 and their absence was one of the reasons the PF concluded these criteria were not met from 1996 to the present. After 1996, these individuals either declined to reenroll as the leadership required of all members, or subsequently relinquished membership, because of strong political differences with the current STN administration.

STN negotiations with these individuals during the comment period did not resolve this issue. They have refused offers of the STN to consider them for membership. The STN has created a list of 43 individuals, not currently enrolled, who it considers to be part of their community. The OFA concludes there are 54, based on different estimates of family size but comprising the same group as identified by the STN. The current STN membership is 273.

The OFA's concern is that the current status of a long-term pattern of factional conflict may either have the undesirable consequence of negatively determining Schaghticoke's tribal status, or of disenfranchising part of its actual membership if acknowledged.

*Authority to Acknowledge*
The PF stated that "The Secretary does not have the authority to recognize part of a group" (citing HEP final determination which acknowledged two petitioners as together forming the historical tribe).

*Options:*
   1. Acknowledge the STN as defined by its current membership list (assumes *Issue 1* is decided in favor of acknowledgment).

   2. Acknowledge the STN but define the base roll membership of the tribe acknowledged as those on the current membership list and the specific body of 54 additional individuals. This body is defined in the determination based on past enrollment and past and continuing social and political involvement (assumes *Issue 1* is decided in favor of acknowledgment).

   3. Decline to acknowledge the STN as not the complete group.

4

Schaghticoke Briefing Paper 1/12/2004

*Discussion of Options*

○ Option 1: If the current STN membership is acknowledged, the additional 54 individuals, who meet the petitioner's own membership criteria, would qualify to be added to the base roll under 83.12(b). This section defines the membership list of a tribe as acknowledged as becoming the base roll and states that additional individuals maintaining tribal relations may be added to that base roll. This option leaves some authority with the existing leadership to accept or reject these individuals.

○ Option 2: Past decisions, before the HEP FD, treated a petitioner's membership list as the definition of the community to be acknowledged or denied acknowledgment. The HEP FD combined two membership lists into one. This option would go farther, including in the group's membership individuals who have not specifically assented to or been accepted as members, albeit appearing on past membership lists. The PF stated "The purpose of the regulations is to provide for the acknowledgment of tribes, not of petitioners per se."

○ Option 3: Depending on the resolution of *Issue 1*, this would disqualify an otherwise eligible petitioner because of its factional conflicts. Potentially, the STN and the faction could remedy this deficiency by combining and appealing to IBIA on the grounds of new evidence which would change the decision (83.11(d)(1)).

*Recommendation*
The OFA recommends Option 2, as consistent with the intent of the acknowledgment regulations.

Prepared by Office of Federal Acknowledgment, 1/12/2004

K:\BAR\Schagticoke-FD\SchagFDBrief

5