UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. H-85-1078(PCD) |
| v. | ) | |
| | ) | |
| 43.47 ACRES OF LAND, MORE OR LESS, | ) | |
| SITUATED IN THE COUNTY OF | ) | |
| LITCHFIELD, TOWN OF KENT, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-98-CV 01113 (PCD) |
| v. | ) | |
| | ) | |
| KENT SCHOOL CORPORATION, INC., et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-00-CV 0820 (PCD) |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA AND | ) | |
| THE CONNECTICUT LIGHT AND | ) | |
| POWER COMPANY, et al | ) | |
| Defendants. | ) | February 17, 2005 |

## SCHAGHTICOKE TRIBAL NATION'S
## MOTION FOR PERMISSION TO CONDUCT LIMITED DISCOVERY

### Introduction

The Schaghticoke Tribal Nation ("Tribe") moves the Court to lift the stay declared and

allow limited discovery under the amended May 8, 2001 Scheduling Order (the "Scheduling

Order") in these consolidated cases. The motion is necessitated by the Tribe's desire to inquire

whether any of the parties or *amici* may have violated the Scheduling Order which prohibits

**ORAL ARGUMENT REQUESTED**

them from contacting or meeting with officials of the Department of Interior. The Tribe has learned that recently an organization run by Town of Kent officials and landowners in Kent, Connecticut has hired a prominent Washington D.C. lobbying firm to influence the process under which the Tribe has sought acknowledgment.

Pursuant to Paragraph (l) of the Scheduling Order, neither non-federal parties nor *amici* may communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary-Indian Affairs, or the Deputy Commissioner of Indian Affairs with respect to the Tribe's petition for acknowledgment without two business days prior notification to all other parties. Kent School Corporation, Inc., Preston Mountain Club, Town of Kent and *amici* agreed to the terms of a Scheduling Order governing these consolidated cases that were ultimately entered by the Court after months of negotiations. Parties include Schaghticoke Tribe of Indians, New Milford Savings Bank, Frank H. Turkington and Heirs, Tax Collector, (Town of Kent), unknown owners, Kent School Corporation, Inc., Preston Mountain Club, CL&P Co., Town of Kent, Loretta E. Bonos, as Administratrix c.t.a. of the Estate of Florence E.M. Baker Bonos, Appalachian Trail Conference, Inc., Barbara G. Bush, Estate of Eugene L. Phelps, United States of America and *amici*, the Attorney General of the State of Connecticut who under Conn. Gen. Stat. § 47-7b became involved in these actions to protect the interests of Connecticut landowners.

As for the provision at issue, it is crucial to ensuring a fair recognition process and was specifically raised with this Court during the long negotiations. The provision had to be subsequently amended due to questions being raised about one *amici's* attempt to circumvent its terms. See Court's Ruling on Motion to Amend Scheduling Order dated June 14, 2004. Now, evidence suggests that certain parties or *amici* may have surreptitiously violated the provision at one of the most crucial times in the recognition process through an alias group known as Town Action to Save Kent ("TASK") that, among other actions, hired a prominent Washington D.C. lobbying firm. That firm may have contacted several officials in Washington D.C., including possibly officials from the Department of Interior with whom communications are prohibited

under the Scheduling Order absent advance notice.  To illuminate these potential violations, the Tribe needs to conduct limited, focused discovery.

## Discussion

The Scheduling Order issued by the Court in these consolidated cases concerns the Tribe's petition for tribal acknowledgment pending before the Bureau of Indian Affairs.  In sum, it is a case management order under which the Tribe's recognition process is monitored and controlled by the Court.  The Scheduling Order was the product of months of intensive negotiations between Attorney General Blumenthal and representatives of his Office, the Office of the U.S. Attorney for the District of Connecticut, counsel for the Tribe, all other parties and this Court.

The final draft of the Scheduling Order included the following directive in Paragraph (1):

> No non-federal party or *amici* shall communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary-Indian Affairs or the Deputy Commissioner of Indian Affairs with respect to this petition, without notification to the other parties.

See Scheduling Order at page 9, ¶ (1).  It was clearly and unambiguously understood by all parties to the negotiations that "notification" meant prior notification.  Since the issuance of the Scheduling Order, most of the parties have conducted themselves accordingly.

Due to one exception, however, the Tribe sought to amend and clarify the provision.  On June 14, 2004, the Court ordered that the last sentence of the provision be amended to read as follows:

> No non-federal party or *amici* shall communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary of the Interior or the Deputy Commissioner of Indian Affairs with respect to this petition, without two business days prior notification to the other parties.

-3-

A review of recent news articles reveals that certain of the parties and/or *amici* may be surreptitiously - - under the guise and use of an alleged citizens organization - - violating this order. According to an Associated Press release dated January 23, 2005, a group called Town Action to Save Kent ("TASK") has hired a prominent Washington D.C. lobbyist firm, Barbour, Griffith & Rogers, to assist in its efforts to overturn the Tribe's federal recognition. (Exhibit A). The press release further notes that TASK members met with, among others, a representative of the firm, a Selectwoman of the Town of Kent and representatives from the State of Connecticut - - the latter two entities being parties to this action.

In addition to these news reports, Barbour, Griffith & Rogers registered with the U.S. Congress as lobbyist for TASK in December 2004 to "provide guidance and counsel on issues involving Indian gaming and federal tribal recognition." (Exhibit B). Perkins Coie has also previously registered on behalf of the Housatonic Valley Coalition.[1] Its February 2004 lobbying report discloses contacts during 2003 with the Department of Interior and the Bureau of Indian Affairs. (Exhibit C).

Further, it has been reported in a subsequent news article that another Selectwoman of the Town of Kent was actually a founding member of TASK. (Exhibit D). Although she ultimately

---

[1] The membership of the "Housatonic Valley Coalition" is made up of several Connecticut Municipalities and a consortium of municipal officials, including the City of Danbury, the Towns of Bethel, Brookfield, New Fairfield, Newtown, and Ridgefield, and the Housatonic Valley Council of Elected Officials. See Housatonic Valley Coalition, Comments on the Proposed Finding Against Acknowledgment of the Schaghticoke Tribal Nation, submitted August 8, 2003. The request for reconsideration of the STN Final Determination filed before the Interior Board of Indian Appeals (IBIA) by the Connecticut Attorney General on May 3, 2004, was submitted on behalf of each of these members of the Housatonic Valley Coalition, with exception of the Town of Brookfield. See In re Federal Acknowledgment of the Schaghticoke Tribal Nation, Request for Reconsideration, May 3, 2004 at 1 (identifying the following as among the interested parties joining the request for reconsideration: the City of Danbury; the Towns of Bethel, New Fairfield, Newtown, and Ridgefield; and the Housatonic Valley Council of Elected Officials).

resigned her membership, the extent to which she was involved in the hiring of the lobbying firm and the planning of strategy is unknown. Also unknown is what efforts the lobbying firm has undertaken to date. While the lobbying firm lists TASK as a client on its website, (Exhibit E), it does not indicate the extent of its efforts on behalf of TASK to date. If the lobbying firm has already acted without notice to the Tribe, it deprives the Tribe the opportunity to be present during, and participate in, the meeting with officials or even know what transpired. Overall, serious questions are raised concerning the parties' and/or *amici*'s efforts to undermine the very recognition process that they had negotiated for and agreed to years ago and that is a central focus of these consolidated cases.

It seems obvious that the result of the lobbying includes the extra-ordinary letter sent by U.S. Reps. Nancy Johnson, Christopher Shays and Rob Simmons to the IBIA urging action overturning the favorable final determination made by the BIA. (Attachment F). In essence, at least in this regard, some of the parties to the stipulated Scheduling Order may have done indirectly, through lobbying efforts, what the order forbade them to do directly – making an ex parte communication to the Interior Department. If this was done it would be highly prejudicial to the Tribe, which has no way to respond to the unfair and inaccurate statements made in the letter or in any unknown oral communications that may have been made to the Department.

At this point, the Tribe is only left to speculate as to the extent of certain parties' violations of the Court's order by using the lobbying firm under the guise of an alleged "citizens" group. Not only are the circumstances concerning the hiring of this firm suspicious, but the timing is also suspicious. Its hiring occurred around the time that only days after the Tribe's final submission the Office of Federal Acknowledgment filed an inexplicable Technical Assistance memorandum calling into question its own finding without any explanation as to the

details underlying its change in position. (Exhibit G).   Therefore, based on these circumstances, the Tribe needs to conduct limited discovery in order to determine if any of the parties and/or *amici* have violated the Scheduling Order.[2]

The Tribe's discovery would be focused on the following: (1) the extent of the parties' or *amici's* involvement in TASK, including formation of its policies, its decision to hire a lobbying firm and any donations of money or other support; and (2) the extent of TASK's conduct in contacting employees and/or officials of the Department of Interior through lobbying firms or otherwise.   To explore these areas, the Tribe would only need a limited amount of depositions and requests for production of documents.

## Conclusion

Based on the foregoing, the Tribe respectfully requests that the Court allow it to conduct limited discovery concerning (1) the extent of the parties' or *amici's* involvement in TASK, including formation of its policies, its decision to hire a lobbying firm and any donations of money or other support; and (2) the extent of TASK's conduct in contacting employees and/or officials of the Department of Interior through lobbying firms or otherwise.

---

[2]   Although the Tribe has hired representatives in the past to protect their interests in Washington D.C., the Tribe has discontinued their services with regard to the Department of Interior once the Scheduling Order was in place.  The Tribe expected that the parties would similarly honor the Scheduling Order.

Wherefore, the Tribe respectfully requests that the Court grant its Motion to Conduct Discovery and order the requested relief.

> THE PLAINTIFF,
> SCHAGHTICOKE TRIBAL NATION
> BY MCCARTER & ENGLISH, LLC
> ITS ATTORNEYS
>
> By _____
> Eric Watt Wiechmann (CT 04331)
> Salvatore N. Fornaciari (CT 22684)
> CityPlace I
> Hartford, CT  06103
> (860) 275-6700

Of Counsel:
Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

and

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC  20037

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Schaghticoke Tribal Nation's Motion to Amend the Scheduling Order has been mailed, postage prepaid this 17th of February, 2005 to:

John B. Hughes, Esq.
Chief of Civil Division
United States Attorneys Office
157 Church Street, Floor 23
New Haven, CT 06510

Judith A. Shapiro, Esq.
6856 Eastern Avenue NW, Suite 206
Washington, DC 20012

David J. Elliot, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT 06776-0786

Michael J. Burns, Esq.
Law Offices of Attorney Michael J. Burns
57 Pratt Street
Hartford, CT 06103

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

Giovanna Tiberii Weller, Esq.
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Robert A. Slavitt, Esq.
Slavitt, Connery, & Vardamis
618 West Avenue
Norwalk, CT 06850

James R. Fogarty, Esq.
Fogarty Cohen Selby & Nemiroff
88 Field Point Road, P.O. Box 2508
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.
Asst. Attorney General
55 Elm Street
Hartford, CT 06141

Thomas A. Gugliotti, Esq.
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123

Renita Ford, Esq.
General Litigation Section
Environmental & Natural Resources Division
United States Department of Justice
Post Office Box 663
Washington, DC 20004-0663

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, D.C. 20240

Salvatore N. Fornaciari (CT 22684)

HARTFORD: 632710.02

# EXHIBIT

# A

The ADVOCATE

http://www.stamfordadvocate.com/news/local/state/hc-23211606.apds.m0295.bc-ct--schajan23,0,6865108.story?coll=hc-headlines-local-wire

Sponsored by

careerbuilder
THE SMARTER WAY
TO FIND A BETTER JOB

# Group hires lobbyist in efforts to overturn Schaghticokes' recognition

Associated Press

January 23, 2005



KENT, Conn. -- A group of area residents has hired a prominent Washington, D.C., lobbyist in its effort to overturn the federal recognition of the Schaghticoke Tribal Nation and prevent a possible third casino in Connecticut.

Town Action to Save Kent, or TASK, is employing Bradley Blakeman to "provide guidance and counsel on issues involving Indian gaming and tribal recognition," according to the Web site of Blakeman's firm, Barbour, Griffith & Rogers.

Blakeman is vice president of the firm, which was called the nation's top lobbying firm by Fortune magazine last year.

TASK met with Blakeman Friday. Kent First Selectwoman Delores Schiesel, state Sen. Andrew Roraback, R-Goshen, state Rep. Mary Ann Carson, R-New Fairfield, TASK members and other invited guests attended the private meeting, the Sunday Republican of Waterbury reported.

During the meeting, Roraback discussed a bill that he and Carson have introduced in the legislature that would reimburse Kent $500,000 for the costs the town has incurred fighting the federal recognition. Kent has appropriated $300,000 over the past few years to oppose the tribe.

Blakeman joined Barbour, Griffith & Rogers in January 2003 as a vice president, following his tenure as deputy assistant to the president for appointments and scheduling.

Calls to Barbour, Griffith & Rogers were not returned.

Schaghticoke Tribal Nation Chief Richard Velky has said the tribe hopes to open a casino in Bridgeport or another welcoming host community. Velky declined comment about Blakeman.

TASK founders Jim Perkins, Susi Williams and Ken Cooper did not return several phone calls seeking comment.

The state is appealing the tribe's recognition.

*Copyright © 2005, The Associated Press*

# EXHIBIT

# B

00000901240

| Clerk of the House of Representatives | Secretary of the Senate |
|---|---|
| Legislative Resource Center | Office of Public Records |
| B-106 Cannon Building | 232 Hart Building |
| Washington, DC 20515 | Washington, DC 20510 |

SECRETARY OF THE SENATE
04 DEC 22 AM 11:44

# LOBBYING REGISTRATION
Lobbying Disclosure Act of 1995 (Section 4)

Check if this is an Amended Registration ☐    1. Effective Date of Registration    12/1/2004

2. House Identification Number _____    Senate Identification Number _____

## REGISTRANT

3. Registrant Name    **Barbour Griffith & Rogers, LLC**

| Address | (form. Barbour Griffith & Rogers, Inc) | 1275 Pennsylvania Ave., NW - 10th FL |
|---|---|---|
| City | Washington | State DC  Zip 20004 |

4. Principal place of business (if different from line 3)
City _____    State/Zip (or Country) _____

5. Telephone number and contact name    Contact    E-Mail (optional)
(202) 333-4936    Andrew Asher    andrewa@bgrdc.com

6. General description of registrant's business or activities
**Lobbying Firm**

## CLIENT
*A lobbying firm is required to file a separate registration for each client. Organizations employing in-house lobbyists should check the box labeled "Self" and proceed to line 10.* ☐ **Self**

7. Client Name    **Town Action to Save Kent (TASK)**

| Address | 91 Flat Rock Road | |
|---|---|---|
| City | South Kent | State CT  Zip 06785 |

8. Principal place of business (if different from line 7)
City _____    State/Zip (or Country) _____

9. General description of client's business or activities
**Public interest advocacy organization.**

## LOBBYISTS

10. Name of each individual who has acted or is expected to act as a lobbyist for the client identified on line 7. If any person listed in this section has served as a "covered executive branch official" or "covered legislative branch official" within two years of first acting as a lobbyist for this client, state the executive and/or legislative position(s) in which the person served.

| Name | Covered Official Position (if applicable) |
|---|---|
| Bradley Blakeman | Deputy Assistant to the President |
| G.O. Griffith, Jr. | |
| Brant Imperatore | |
| Loren Monroe | |

00000901241

**Registrant Name:**    Barbour Griffith & Rogers, LLC

**Client Name:**    Town Actives to Save Kent (TASK)

## LOBBYING ISSUES

11.  General lobbying issue areas. Select all applicable codes listed in instructions and on the reverse side of Form LD-1, page 1).

IND

12.  Specific lobbying issues (current and anticipated)
Provide guidance and counsel on issues involving Indian gaming and federal tribal recognition.

## AFFILIATED ORGANIZATIONS

13.  Is there an entity other than the client that contributes more than $10,000 to the lobbying activities of the registrant in a semiannual period and in whole or major part plans, supervises, or controls the registrant's lobbying activities?

☒ No.  Go to line 14.        ☐ Yes.    Complete the rest of this section for each entity matching the criteria above, then proceed to line 14.

| Name | Address | Principal Place of Business (city and state or country) |
|------|---------|--------------------------------------------------------|
|      |         |                                                        |
|      |         |                                                        |

## FOREIGN ENTITIES

14.  Is there any foreign entity that:

a)  holds at least 20% equitable ownership in the client or any organization identified on line 13; or
b)  directly or indirectly, in whole or in major part, plans, supervises, controls, directs, finances, or subsidizes activities of the client or any organization identified on line 13; or
c)  is an affiliate of the client or any organization identified on line 13 and has a direct interest in the outcome of the lobbying activity?

☒ No.  Sign and date the registration.        ☐ Yes.    Complete the rest of this section for each entity matching the criteria above, the sign and date the registration.

| Name | Address | Principal Place of Business (city and state or country) | Amount of contribution for lobbying activities | Owe perce in c |
|------|---------|--------------------------------------------------------|------------------------------------------------|----------------|
|      |         |                                                        |                                                |                |
|      |         |                                                        |                                                |                |

Signature _____    Date _____ 12/6/2004

Printed Name and Title _____ G.O. Griffith, Jr. - Chief Executive Officer

# EXHIBIT

# C

00000471052

Registrant Name   Perkins Coie LLP                    Client Name   Housatonic Coalition

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registra engaged in lobbying on behalf of the client during the reporting period.  Using a separate page for each code, provi information as requested.  Attach additional pages(s) as needed.

15.  General issue area code  IND          (one per page)

16.  Specific lobbying issues

Federal decisions which may result in the location of a tribal casino in the Housatonic Valley, Connecticut.

17.  House(s) of Congress and Federal agencies contacted         ☐ Check if None

Department of the Interior                          U.S. House of Representatives
Bureau of Indian Affairs                           U.S. Senate
Department of Justice

18.  Name of each individual who acted as a lobbyist in this issue area

| Name | Covered Official Position (if applicable) |
|------|------------------------------------------|
| Guy R. Martin | N/A |

19.  Interest of each foreign entity in the specific issues listed on line 16 above         ☒ Check if None

Signature _____         Date  2/14/04

Printed Name and Title  Guy R. Martin, Attorney

00000471051

| Clerk of the House of Representatives | Secretary of the Senate |
|---|---|
| Legislative Resource Center | Office of Public Records |
| B-106 Cannon Building | 232 Hart Building |
| Washington, DC 20515 | Washington, DC 20510 |

SECRETARY OF THE SENATE
04 FEB 13 PM 4: 51

# LOBBYING REPORT

**Lobbying Disclosure Act of 1995 (Section 5) - All Filers Are Required To Complete This Page**

1. Registrant Name

    **Perkins Coie LLP**

2. Address ☐ Check if different than previously reported

    **607 14th Street, N.W., Suite 800, Washington, DC 20005-2011**

3. Principal Place of Business (if different from line 2)

    City:                                    State/Zip (or Country)

4. Contact Name                 Telephone            E-mail (optional)          5. Senate ID#

    **Guy Martin**            **202-628-6600**

7. Client Name ☐ Self                                                         6. House ID#

    **Housatonic Coalition (City of Danbury, CT Coordinator)**               **32533-040**

**TYPE OF REPORT**  8. Year __2003__  Midyear (January 1-June 30) ☐  OR  Year End (July 1-December 31

9. Check if this filing amends a previously filed version of this report ☐

10. Check if this is a Termination Report ☐ ⇨ Termination Date_____     11. No Lobbying Activity

---

**INCOME OR EXPENSES - Complete Either Line 12 OR Line 13**

| 12. Lobbying Firms | 13. Organizations |
|---|---|
| **INCOME** relating to lobbying activities for this reporting period was: | **EXPENSES** relating to lobbying activities for this reporting period were: |
| Less than $10,000 ☒ | Less than $10,000 ☐ |
| $10,000 or more ☐ ⇨ $_____ <br> Income (nearest $20,000) | $10,000 or more ☐ ⇨ $_____ <br> Expenses (nearest $20,000) |
| Provide a good faith estimate, rounded to the nearest $20,000, of all lobbying related income from the client (including all payments to the registrant by any other entity for lobbying activities on behalf of the client). | **14. REPORTING METHOD.** Check box to indicate expense accounting method. See instructions for description of options. |
| | ☐ Method A. Reporting amounts using LDA definitions only |
| | ☐ Method B. Reporting amounts under section 6033(b)(8) of Internal Revenue Code |
| | ☐ Method C. Reporting amounts under section 162(e) of the Internal Revenue Code |

Signature_____

# EXHIBIT

# D

# KENT Tribune .COM

**Wednesday, February 16 2005**

## NEWS ON KENT

1/28/2005 9:18:00 AM

Email this article • Print this article

## COVER STORY: TASK Gets Down to Business

*Private Citizens Group Takes on the Schaghticoke Issue*

**By Sharon Hartwick**

Ken Cooper

**Litchfield County News**
**Reports on Kent**
News on Kent
Schaghticokes
Chamber of Commerce
Children's Center
GO FIGURE
Historical Society
Resident Trooper's Report
Volunteer Fire Department
Kent Library
Park & Recreation
Affordable Housing
Kent Land Trust
Kent Art Association
Kent Cultural Arts Committee
Kent Garden Club
Kent Lions Club
Rotary Club
St. Luke's (Masons)
United Way
HVA
Sacred Heart Church
First Congregational
St. Andrew's Church
Restaurant Reviews
Town Democrats
Town Republicans

**Cover Stories**
**Town Government**
**Cultural Forecast**
**Litchfield County Business**
**Op/Ed**

A private citizen's group fighting federal recognition of the Schaghticoke Indians had a coming out party for their new lobbyists at the Fife and Drum restaurant in Kent in late January. About 40 people attended the closed door event.

In addition to members of the Town Action to Save Kent (TASK), guests included the town's selectmen and town attorney, as well as Rep. Mary Ann Carson (R-New Fairfield) and Sen. Andrew Roraback (R-Goshen).

TASK is an ad hoc citizens group formed soon after the Bureau of Indian Affairs announced a year ago that it was reversing an earlier decision and granting the Schaghticoke Tribal Nation federal recognition.

The tribe, headed by Chief Richard Velky, has stated its intentions of opening a casino in the area, which would be the third in the state. (Velky refused to comment for this story and, in fact, criticized the KentTribune.com as having a bias against Indians. See his comments below).

### The Right to Petition the Government

"Every citizen has a right to petition the government," said Ken Cooper, TASK president. "We're not professionals in dealing in

Washington, D.C., and if we're to petition the government to hear what we have to say, we have to hire people who are knowledgeable and have the skills necessary in presenting our case to the government."

Those contesting the tribe's recognition claim that the BIA, an agency within the Department of Interior, doesn't abide by its own rules and gave the Kent-based Schaghticokes sovereign nation status despite not meeting all the seven mandatory criteria needed for federal recognition.

Last month State Attorney General Richard Blumenthal, who is spearheading the appeal process, called for an immediate reversal of the BIA decision after receiving a letter from Barbara Coen, an attorney with the agency.

In the document, submitted to the Interior Board of Indian Appeals, Coen acknowledged the agency had made serious errors in calculating marriage rates for most of the 19th century, specifically counting a marriage of two partners as two marriages.

The DOI rejected Blumenthal's call for immediate action but pledged to expedite the appeal process.

Calculation of the marriage rates was the second discrepancy to surface in the Schaghticoke case. Shortly after the BIA gave the STN federal recognition, an internal memorandum was disclosed which said that the BIA itself believed the Schaghticokes had failed to meet at least two of the seven criteria needed to gain recognition. The memorandum, written only two weeks before the final decision was announced, suggested that the BIA substitute state recognition of the Schaghticokes for the more rigorous historical data needed to establish the Schaghticokes as a continuous political and social tribal entity.

Such anomalies were the basis for the state and town's appeal of the BIA decision and the development of TASK, the private citizen's group that is trying to get the BIA to abide by its own rules and regulations.

**TASK Hires Lobbying Groups**

Following a $1.5 million fund-raising effort, TASK hired Barbour Griffith & Rogers LLC six weeks ago.   BGR, a well-connected, nationally known lobbyists' firm based in Washington, D.C., is helping the group in their quest to overturn the decision by reaching out to policy-makers in the executive and legislative branches of the federal government.

"TASK is not an anti-Indian organization," said Cooper. "We're against an unfair, un-transparent recognition process not applied consistently by the agency. And we're going to petition people in Washington for the agency to follow its own rules."

Cooper said BGR is a registered lobbying group in Washington

(its web site identifies TASK as one of its clients). Cooper said that despite published reports another lobbying firm representing TASK's interests in Hartford is also registered.

Haley Barbour, one of the founders of GBR, was a top advisor to the Reagan White House in the mid-80s and chairman of the Republican National Committee in the mid-90s. He also chaired then Gov. G.W. Bush's Washington Campaign Advisory Committee in 2000.

After selling his interest in the firm, Barbour ran for governor in Mississippi and was elected in 2003.

BGR's client list includes Pfizer Inc., Lorillard Tobacco Co., UnitedHealth Group, the Southern Co. and the Kurdish Democratic Party.

Three BGR associates came to Kent and spoke to the gathering, including V.P. Bradley Blakeman, who, according to the firm's Web site, joined the firm in 2003. Blakeman most recently worked for the Bush administration as a Deputy Assistant to the President for Appointments and Scheduling.

**Senator Roraback Backs TASK's Efforts**

"I thought it was heartening to learn that we'd have a group in Washington advocating to protect Kent from the consequences of recognition," said Sen. Roraback, who added that they "seem to know their way around Washington."

Roraback believes the decision will be overturned because the process hasn't been faithful to the requirements of the law.

"I think the marriage miscalculations are a serious flaw in recognition so I'm more optimistic than ever that recognition will be reversed – that's just my gut," he said.

Cooper was quick to give credit to all the local officials and Congressional delegations for their ongoing efforts to overturn the decision and emphasized how fortunate the community is to get so much backing from a diverse group of supporters.

"This is a truly nonpartisan issue about good government," said Cooper. "It's not about Native Americans. It's not about Republicans or Democrats. It's about good government."

**Is Help on the Way for Kent?**

Roraback announced last week that he and Rep. Carson are co-sponsoring a bill to provide state reimbursement to help Kent cover costs related to the recognition proceedings.

"What prompted us to introduce the bill is that last year the Legislature gave an additional $500,000 to each of five southeastern Conn. towns," said Roraback.

The Mashantucket Pequot-Mohegan Fund program provides the state with 25 percent of its casino slot machine revenues annually. Last year the state collected over $400 million in casino revenues and handed out $85 million to the 169 municipalities in Conn.

Typically the spoils are shared equally, but the towns that host the casinos--Ledyard, North Stonington, Montvale, Preston and Norwich—have long complained of being shortchanged.

While their local taxpayers have had to shoulder the increased burdens on their schools, infrastructure and city services, the state has been unresponsive. Last year the legislature voted to right the wrong and give an additional $2.5 million to the five towns.

Roraback said he and Carson would be "remiss" not to make their colleagues aware of the financial strain the drawn out proceedings have put on the small town in northwest Conn. they represent.

Roraback doesn't yet know what response the bill will get, acknowledging that there is a group of legislators in Hartford who strongly support STN's bid for recognition.

"I advised the First Selectman not to spend the money yet," he said.

In 2001 Kent taxpayers voted to appropriate $300,000 to fight recognition. About $120,000 remains in the fund.

**State Lobbying Firm**

TASK also hired a Connecticut law firm to represent their interests in Hartford. Francis Collins and Thomas Beecher of Collins, Hannafin in Danbury also attended the private meeting in late January

Collins practices primarily in areas of real estate, workers' compensation and land use and serves as counsel to Brookfield Planning and Zoning Commission and Zoning Board of Appeals. He served in the Conn. legislature for eight years and was Minority Leader and Speaker of the House.

Beecher is currently the town attorney for Brookfield. He specializes in the areas of criminal and civil litigation, land use, municipal law and appellate practice.

Roraback said Collins, Hannafin, as lobbyists, are "new to the scene" in Hartford.

TASK's core group of 25 to 30 members includes founders Cooper, Susi Williams and Jim Perkins. Selectman Nancy O'Dea-Wyrick was also instrumental in starting the group.

In a phone conversation,  O'Dea-Wyrick said she'd decided to

resign from TASK as her job as selectman and her other obligations, including chairing the school building committee, were taking most of her time. But she's "100% supportive of TASK," she said.

**Conflict of Interest?**

First Selectman Lorry Schiesel said TASK's mission runs parallel to the Board of Selectmen, but their approaches are different. She said she has been concerned about a possible conflict of interest with O'Dea-Wyrick serving with both groups.

"It was clear from the beginning that conflicts could arise," said Schiesel. "While we all share the same goals, the potential was there."

Schiesel added:

"The town attorney said there was no obvious conflict or illegality.  But it was clear from the beginning that they (TASK) were a special interest group and not an organization of government."

Cooper thinks a united show of support for the town is important.

"We owe a debt of gratitude to all our selectmen," said Cooper. "All have contributed in a special way....She [O'Dea-Wyrick] helped form the group and brought us together. We're happy she did."

Cooper added:

"TASK is not leading the effort.  It's being led by the Selectmen in town and the Attorney General. And they've been very well supported by the Congressional delegation....And others like us are there to make sure every avenue is looked at and every stone overturned."

Asked for his reaction to TASK and its lobbying activities, Chief Velky declined comment, saying:

"Because the Tribe believes KentTribune.com has a history of biased coverage, we do not believe it serves any productive purpose to comment on these issues."

Ted Marks, editor and publisher of the KentTribune.com rejected Velky's assertion that the on-line newspaper was biased.

"The KentTribune.com is trying its best to cover this story in an impartial manner," Marks said in a message to Velky's spokesman. "It is a very complex story, with lots of emotions on all sides, and we do our best to report events as they happen in a straightforward manner."

# EXHIBIT

# E



# BARBOUR GRIFFITH & ROGERS

## Clients

A - H

Intelsat
International Building Systems, LLC
JohnsonDiversey
JRL Enterprises, Inc.
Kurdistan Democratic Party
Lakeworth Drainage District
Lorillard Tobacco Company
Lutheran Medical Center
MassMutual Financial Group
MedCath
Miami-Dade County, Florida
Mortgage Insurance Companies of America
Mortgage Investors Corporation
Orlando Regional Healthcare
Peninsula Gaming
Pfizer, Inc.
PhRMA

PINK Communications
Raytheon Company
Reynolds America
SAP Public Services, Inc.
SEI Enterprises, Inc.
Select Medical Corporation
Southern Company
State Insurance DZI, PLC
STG, Inc.
TIJID, Inc.
Town Action to Save Kent
Triad
UnitedHealth Group
U.S. Oncology
Village of Johnsburg, Illinois
Virgin America
We Energies
XL Health

Barbour Griffith & Rogers, LLC | Tenth Floor | 1275 Pennsylvania Avenue NW | Washington, DC 20004 | Tel (202)333.4936 | Fax (20

# EXHIBIT

# F

# Congress of the United States
## Washington, DC 20515

February 10, 2005

The Hon. Steven K. Linscheid
Chief Administrative Judge
Office of Hearings and Appeals
Interior Board of Indian Appeals
801 North Quincy Street, Suite 300
Arlington, VA 22203

Re: *In Re Federal Acknowledgment of the Schaghticoke Tribal Nation*

Dear Judge Linscheid:

We are writing to inquire on the status of the Request for Reconsideration of the federal acknowledgment of the Schaghticoke Tribal Nation (STN), the administrative appeal presently pending before the Interior Board of Indian Appeals (IBIA).

Because of the tremendous interest our constituents have in the appeal proceedings, we would appreciate a detailed account of the actions IBIA has taken to date and its expected future schedule, including when you anticipate rendering a decision.

We are hopeful that the IBIA will adjudicate this matter according to federal regulations, based on a thorough and impartial review of the evidence in the record. We believe this review will reveal ample grounds for reconsideration under the regulations. These grounds include material errors in analyzing STN marriage rates and the January 12, 2004, internal "briefing paper" in which Bureau of Indian Affairs staff outlined an explicit strategy to disregard both regulations and precedent in recognizing the STN. This unlawful action was subsequently approved by the Assistant Secretary-Indian Affairs.

We believe a leadership vacuum at the Bureau of Indian Affairs has contributed to the unlawful and erroneous decision to recognize the STN. Our constituents are relying on the IBIA, after an objective and thorough review of the evidence in the record, to correct this breach of the public trust and provide necessary leadership on this important matter.

Sincerely,

Nancy L. Johnson
Member of Congress

Christopher Shays
Member of Congress

Rob Simmons
Member of Congress

PRINTED ON RECYCLED PAPER

# EXHIBIT

# G

UNITED STATES DEPARTMENT OF THE INTERIOR

OFFICE OF HEARINGS AND APPEALS

| | | |
|---|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT OF THE SCHAGHTICOKE TRIBAL NATION | : : : | Supplemental Transmittal under 25 C.F.R. § 83.11(e)(8) |

IN RE FEDERAL ACKNOWLEDGMENT          :     Supplemental Transmittal
    OF THE SCHAGHTICOKE          :     under 25 C.F.R. § 83.11(e)(8)
    TRIBAL NATION          :
                             :     Docket Nos.   IBIA 04-83-A
                             :                    IBIA 04-94-A
**RECEIVED**          :                    IBIA 04-95-A
DEC 0 6 2004          :                    IBIA 04-96-A
                       :                    IBIA 04-97-A
*McCarter & English*          :     Date: December 2, 2004

By Order dated May 21, 2004, this Board requested that the Assistant Secretary - Indian Affairs "designate and transmit to the Board copies of critical documents central to the determination under [the State's and SIT's] request[s] for reconsideration" and provide a list of these documents to the Board and parties on the distribution list. The Department did so on July 21, 2004, including the Acknowledgment Decisions Compilation (ADC)(version 1.2) containing decisions and other documents issued in acknowledgment cases prior to the final determination on STN.

As part of the technical assistance provided in that filing, the Department identified where various topics raised in the requests for reconsideration are discussed in the final determination and proposed finding on STN. In light of issues raised in the requests for reconsideration concerning precedent, the OFA now supplements that transmittal to identify those acknowledgment decisions in the ADC that relied on or discussed 83.7(b)(2)(ii)[1] and the

---

[1] Section 83.7(b)(2) provides "A petitioner shall be considered to have provided sufficient evidence of community at a given point in time if . . . (ii) At least 50 percent of the marriages in the group are between members of the group. . . ."

carryover provision 83.7(c)(3).[2]  Rates of marriage within the group or culturally patterned marriages outside the group are calculated under 83.7(b)(1) as evidence supporting a finding of community.  If the rates of marriage within the group rises to 50%, it becomes sufficient evidence to demonstrate community under 83.7(b)(2) *and* sufficient evidence to demonstrate political under 83.7(c)(3).  This additional technical assistance is provided because there is no finding aid to the previous acknowledgment decisions and one cannot search by topic easily within the decisions on the ADC.

The results of this review indicate that the Summary under the Criteria for the final determination in STN is not consistent with prior precedent in calculating the rates of marriages under 83.7(b)(2)(ii) and provides no explanation for the inconsistency.[3]  Further, there is no

---

[2]  Section 83.7(c)(3) provides: "A group that has met the requirements in paragraph 83.7(b)(2) at a given point in time shall be considered to have provided sufficient evidence to meet this criterion [political influence or authority] at that point in time."

[3]  Previous acknowledgment decisions interpret 83.7(b)(2)(ii) to require that 50% of the *marriages* are between members of the group.  In contrast, the Summary on STN inadvertently relied on the number of *members* of the group who married other members, which results in a higher count.  The following acknowledgment cases and pertinent pages specifically evaluate 83.7(b)(2)(ii) and 83.7(c)(3), using *marriages.*

> Jena Band of Choctaw (1994) PF Summary 3-5, 7, 9-15, Genealogical Technical Report Appendix I;
>
> Little Shell Band of Chippewa (2000) PF Summary 16-19, 175-179, (rejecting draft researcher guidelines that called for counting of members); and,
>
> Eastern Pequot (2000) PF, 90; Paucatuck Eastern Pequot (2000) PF, 91; and,
>
> United Houma Nation (1994) PF 10-14, Genealogical Technical Report 22-24, *Federal Register* Notice.

The following cases discuss 83.7(b)(2)(ii) and it appears that the method of counting is marriages, but it is not entirely clear from the summary and technical reports.

> Huron Potawatomi (1995) PF Summary 10-11, Anthropological Technical Report 19-20, 51, Genealogical Technical Report 35-36, Historical Technical Report 91, *Federal Register* Notice of Proposed Finding; and,
>
> Ramapough Mountain Indians (1996) FD Summary 24-25, Technical Report 65-67, 79, 82-83.

evidence that the final determination intended to deviate from precedent. Finally, there is a material mathematical error in the calculations for 1841-1850, which when corrected lowers the calculation to less than 50%, whether or not the proper interpretation of the regulations is to calculate "marriages" or "members." The analysis under 83.7(b)(2)(ii) in the Summary and the carryover under 83.7(c)(3), therefore, should not be affirmed on these grounds absent explanation or new evidence.

The OFA provides no additional technical assistance here concerning the other grounds raised by interested parties in their requests for reconsideration.

Dated December 2, 2004

Respectfully submitted,

*Barbara N. Coen*
Barbara N. Coen, Esq.
Division of Indian Affairs, MS 6456
Office of the Solicitor
1849 C Street N.W.
Washington, D.C. 20240

---

The following case counted marriage and members in different technical reports, but does not reference 83.7(b)(2)(ii).
    Match-E-Be-Nash-She-Wish (1999) PF Summary 7, Genealogical Technical Report 49,
        51, Anthropological Technical Report 46-47.
The following case counted members, but does not reference 83.7(b)(2)(ii).
    Cowlitz (1997) PF Genealogical Technical Report 85-89.

Marriage rates were considered as evidence of community in some decisions under the 1978 regulations, but specific language concerning marriage rates does not appear in those regulations. The term "endogamy" is a general term used in acknowledgment findings to refer to marriage within a group, which can be measured in different ways.

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS

IN RE FEDERAL ACKNOWLEDGMENT :
   OF THE SCHAGHTICOKE    :
   TRIBAL NATION           :
                           :
                           :
_____:

Certificate of Service
Docket Nos.   IBIA 04-83-A,
IBIA 04-94-A, IBIA 04-95-A,
IBIA 04-96-A, IBIA 04-97-A

Date: December 2, 2004

     I certify that on December 2, 2004, I mailed a copy of the "Supplemental Transmittal under 25 C.F.R. § 83.11(e)(8)" to:

Philip G. Smith, Esq.
Smith and McGuire
for the Coggswell Group
413 Georgia Street
P.O. Box 486
Louisiana, MO  63353

Eric Weichman, Esq.
McCarter English
Cummings and Lockwood
for Petitioner, Schaghticoke Tribal Nation
City Place I
185 Asylum Street
Hartford, CT  06103-3495

Susan Quinn Cobb, Esq.
Mark Kohler
State of Connecticut
Office of the Attorney General
55 Elm Street
Hartford, CT  06141

Alice Hutchinson, First Selectman
Town of Bethel
Bethel Municipal Center
1 School Street
Bethel, CT  06801

Perley H. Grimes, Jr., Esq.
Cramer and Anderson
for Town of Cornwall
46 West Street
Litchfield, CT  06759-0278

Mark D. Boughton, Mayor
City of Danbury
155 Deer Hill Avenue
Danbury, CT  06810

William Kupinse, Jr.
Town of Easton
225 Center Road
P.O. Box 61
Easton, CT  06612

Aamina Almad, Esq.
for Town of Greenwich
101 Field Point Road
P.O. Box 2540
Greenwich, CT  06836

Jonathan Chew, Executive Director
Housatonic Valley Council of Elected
     Officials
Old Town Hall, Routes 25 & 133
Brookfield, CT  06804

Jeffrey Sienkiewicz, Esq.
Sienkiewicz & McKenna, P.C.
For the Town of Kent
9 South Main Street, P.O. Box 786
New Milford, CT 06776

David J. Elliott, Esq.
Day, Berry & Howard
For Kent School
City Place I
Hartford, CT 06103-3499

Peggy Katkocin, First Selectman
Town of New Fairfield
Town Hall
4 Brush Hill Road
New Fairfield, CT 06812

1

Christopher J. Jarboe, Esq.
Lovejoy and Rimer, P.C.
For Town of New Canaan
65 East Avenue
P.O. Box 390
Norwalk, CT 06852-0390

D. Randall DiBella, Esq.
Cramer & Anderson
For the Town of Sherman
51 Main Street
New Milford, CT. 06776

Alex Knopp
City of Norwalk
125 East Avenue, P.O. Box 798
Norwalk, CT 06851

James R. Fogarty, Esq.
Leland C. Selby
Fogarty, Cohen, Selby & Nemiroff, LLC
for Preston Mountain Club
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06386-2508

Michael J. Burns, Esq.
for Mr. Alan Russell, et. al.
Schaghticoke Indian Tribe group
57 Pratt Street, Suite 604
Hartford, CT 06103

Patricia C. Sullivan
Associate Town Counsel
Town of Weston and the Town of Wilson
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06604

Mr. Robert A. Slavitt
Slavitt, Connery and Vardamis
for Loretta Bonos
618 West Avenue
Norwalk, CT 06850

Assistant Secretary- Indian Affairs
Attn: Office of Federal Acknowledgment
MS 4660-MIB
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

December 2, 2004

D. Randall DiBella, Esq.
Cramer & Anderson
for the Town of New Milford
51 Main Street
New Milford, CT. 06776

Herbert C. Rosenthal, First Selectman
Town of Newtown
Town Hall
45 Main Street
Newtown, CT 06470

Rudy Marconi, First Selectman
Town of Ridgefield
Town Hall, 400 Main Street
Ridgefield, CT 06877

Benjamin Barnes
Town of Stamford
888 Washington Boulevard
P.O. Box 10152
Stamford, CT 06904-2152

Diane Ferrell
Office of the Town Attorney
Town of Westport
Town Hall
110 Myrtle Avenue
Westport, CT 06880

Thomas Gugliotti, Esq.
Updike, Kelly & Spellacy
for Sam Kwak
One State Street
(P.O. Box 231277)
Hartford, CT 06123

Richard L. Street, Esq.
Carmody and Torrance
For Connecticut L & P
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Bruce R. Greene
Alice E. Walker
Greene, Meyer & McElroy, P.C.
1007 Pearl Street, Suite 220
Boulder, Colorado 80302

Barbara N. Coen

2