# EXHIBIT D

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS

|  |  |  |
|---|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT OF THE SCHAGHTICOKE TRIBAL NATION | Docket Nos. | IBIA 04-83-A<br>IBIA 04-94-A<br>IBIA 04-95-A<br>IBIA 04-96-A<br>IBIA 04-97-A |

## SCHAGHTICOKE TRIBAL NATION
## MOTION FOR CLARIFICATION OF SUPPLEMENTAL
## TECHNICAL ASSISTANCE TRANSMITTAL

Eric Watt Wiechmann
McCarter & English, LLP
City Place I
185 Asylum Street
Hartford, CT 06103-3495
(860) 275-6700

Judith A. Shapiro
6856 Eastern Avenue, Suite 206
Washington, DC 20012
(202) 723-6400

Attorneys for the Schaghticoke Tribal Nation

Jerry C. Straus
F. Michael Willis
Hobbs, Straus, Dean & Walker, LLP
2120 L St., NW, Suite 700
Washington, DC 20037

Of Counsel

February 3, 2005

## MOTION FOR CLARIFICATION OF SUPPLEMENTAL
## TECHNICAL ASSISTANCE TRANSMITTAL

By this motion, the Schaghticoke Tribal Nation (STN) respectfully requests that the Interior Board of Indian Appeals ("the Board"), pursuant to its authority under 25 C.F.R. § 83.7(e)(2), call upon the Office of Federal Acknowledgment (OFA) to provide Technical Assistance to the Board, the STN and Interested Parties to explain its analysis of Schaghticoke marriage patterns in the 19th Century and to clarify its interpretation and application of 25 C.F.R. § 83.7(b)(2)(ii) and the carry over provision 25 C.F.R. § 83.7(c)(3).

A.    OFA's Supplemental Technical Assistance Creates More Problems than it Illuminates

On December 2, 2004, OFA, through its counsel, the Office of the Solicitor, filed an unprecedented technical assistance memorandum to the Board that appears to undermine a portion of the analysis that the Assistant Secretary – Indian Affairs (AS-IA) relied upon for the positive Final Determination for federal acknowledgment of the STN. The Transmittal, filed three days after the close of the period permitted for the STN's answer brief before the Board, explains that OFA may have unintentionally departed from prior precedent in its calculation of Schaghticoke endogamous marriage rates for part of the 19th Century. See Office of the Solicitor, Supplemental Transmittal of December 2, 2004, at 2-3 [hereinafter Supplemental Transmittal]. In light of this apparent mistake, the Transmittal concludes that the "analysis under 83.7(b)(2)(ii) in the

Summary [under the Criteria for the Final Determination] ... should not be affirmed on these grounds absent explanation or new evidence." Id. at 3.

Despite this unprecedented admission of apparent error, the Supplemental Transmittal does not explain how the STN endogamous marriage rates were calculated for the Final Determination, how following any different precedent would have caused the rates to be calculated differently, or what effect this change would have on the outcome of the determination. As the record now stands, neither the Board, nor any party can divine what OFA did, is doing, or proposes to do with respect to the analysis of Schaghticoke endogamy in the 19th Century.

The Supplemental Transmittal does not suggest that the AS-IA's Final Determination is rescinded. Rather, it recommends that the 83.7(b)(2)(ii) marriage rate analysis "should not be affirmed ... absent explanation or new evidence." Id. at 3 (emphasis added). While the Supplemental Transmittal calls for explanation, it does not provide any. The STN views such explanation as a pre-requisite for a fair and informed review of the requests for reconsideration now before the Board. If relied upon, but without further clarification, the technical assistance contained in the Supplemental Transmittal clouds the record on this issue and impermissibly compromises the Board's ability to conduct a meaningful review of the Final Determination.

The Supplemental Transmittal identifies an error in OFA's analysis that it believes to be material, yet OFA neglects its duty to "designate and transmit" the "critical documents central" to the issue. 25 C.F.R. § 83.11(e)(8). For instance, the Transmittal omits any indication as to what portions of the record were employed in the marriage rate analyses; nor does its designate where in the record the Board can identify what

assumptions OFA made in determining which marriages to include or exclude in its counts; it is silent as to what assumptions governed OFA's understanding of the duration of marriages; it does not point to any formulas that may have been developed for calculating rates; nor does it specify how the Board can ascertain precisely how and to what extent any ultimate endogamy rate analysis might be affected by the approach described in the Supplemental Transmittal. Moreover, OFA offers no explanation as to how its assumptions, formulas and calculations relied upon in the Final Determination differ from those employed by STN in its marriage rate submission nor how those calculations and assumptions would change if an alternative methodology were employed.[1] For these reasons, the Board lacks the technical information required to evaluate the Schaghticoke endogamy analysis at issue in the requests for reconsideration.

The Supplemental Transmittal also fails to clarify the agency's interpretation of 83.7(b)(2)(ii), which is not possible to determine from the decisions cited. This may in large part reflect that there are a number of different valid approaches to calculating endogamy, which OFA itself acknowledges in the Supplemental Transmittal. See Supplemental Transmittal at 3, note 3 ("endogamy is a general term used in acknowledgment findings to refer to marriage within a group, which can be measured in different ways"). The conclusions in the Supplemental Transmittal, however, suggest that OFA has applied a new and more rigid interpretation of 25 C.F.R § 83.7(b)(2)(ii) to STN. Yet OFA has not indicated how the application of this interpretation to 19th Century Schaghticoke endogamy affects the outcome of the analysis.

---

[1] In light of these shortcomings, the STN requested technical assistance from OFA on January 3, 2005. OFA rejected the STN request on the grounds that jurisdiction over the STN Final Determination now rests with the Board. See Letter from Lee Fleming to Chief Richard Velky of January 13, 2005.

Even if the Supplemental Transmittal clearly laid out OFA's methodology for analyzing the Schaghticoke's 19th Century marriage patterns and even if the Transmittal pointed to a consistent interpretation and precedent regarding 83.7(b)(2)(ii), by filing the Supplemental Transmittal three days after completion of the briefing schedule in this request for reconsideration, the agency has deprived STN and all of the Interested Parties the opportunity to comment. Not only does due process require such an opportunity, the federal acknowledgment regulations have been structured to assure that petitioners have a final right of reply at each stage of the proceedings. See, e.g., 25 C.F.R. §§ 83.10(b)(2) and (b)(3); 83.10 (c), (c)(1), (c)(2) and (c)(3); 83.10(f)(2); 83.10(k); 83.11(e)(6); and 83.11(f)(4). [2]

**B.**    The Board may and should request formal Technical Assistance to ensure the validity of its review of the Final Determination

Even though the federal acknowledgment regulations do not contain a specific provision providing a petitioner or an Interested Party before the Board with a right to request technical assistance from OFA, the exceptional circumstances presented here, in which the OFA has changed its position on an issue after the briefing closed, clearly warrant that the Board, pursuant to its broad general authority under § 83.11(e)(2), "establish such procedures as it deems appropriate to provide a full and fair evaluation"

---

[2] Technical comments provided to the Board by OFA under § 83.11(e)(3) represents an exception to this pattern as a petitioner's comment opportunity is not expressly incorporated into the regulations. The Preamble to the 1994 amendments to the federal acknowledgment regulations explains this exception by pointing out that such a provision is unnecessary because the Board can allow for such comment pursuant to § 83.11(e)(2). See 59 Fed. Reg. 9280, 9292 (1994) ("[i]t is not necessary to provide for such a comment opportunity... the Board has authority under § 83.11(e)(2) to allow the active participants to respond to such technical comments if it deems this necessary and appropriate").

of the record.  25 C.F.R. § 83.11(e)(2); see also 59 Fed. Reg. at 9292 (preamble to revision to recognition regulations declining to include a regulatory provision establishing a petitioner's right to comment on the OFA's technical assistance to the Board because the "Board has authority under § 83.11(e)(2) to allow the active participants to respond to such technical comments if it deems this necessary and appropriate").

If the Board intends to accept and rely upon the OFA's Supplemental Transmittal in any way, it is essential that the Board, STN and the Interested Parties be provided an opportunity to understand how the OFA conducted the marriage rate analysis referred to in the Supplemental Transmittal, both in the Final Determination, and in any reassessment in light of a changed method of calculation.[3]  Additionally, since the OFA/BAR decisions cited in the Supplemental Transmittal do not provide a consistent interpretation of 83.7(b)(2)(ii) and because inconsistencies arise even in the Supplemental Transmittal as to the purported precedent, the OFA must clarify for the Board, STN and the Interested Parties how OFA reconciles and distinguishes these varying interpretations and approaches and how any new approach might change the outcome of the STN 83.7(b)(2)(ii) marriage rate analysis.  Such explanation and clarification must be provided

---

[3] In its November 29, 2004 submission to the Board, STN stated that it only "assumes that the OFA's [endogamy] analysis is accurate, without concluding or agreeing that it is, in fact, so." STN Answer Brief, Exhibit C, Response to the Connecticut Attorney General's Endogamy Analysis, at 2, note 2 (emphasis in original).  While the OFA analysis presented in the Final Determination appeared to reach the same general conclusions regarding high levels of endogamy as presented in STN's analysis, the OFA's percentages demonstrated that its assumptions clearly differed from those of STN.  The evidence and analysis submitted for the record by the STN demonstrates that a majority of STN marriages were endogamous for most decades of the 19th Century regardless of the method of counting.  See Steven Austin, "Evidence of Community and Political Authority:  Schaghticoke Marriage Patterns in the Nineteenth Century, Submitted August 8, 2003, at 14-15 (showing that the Schaghticoke married each other at rates of 67% or higher from 1800-1829 and from 1840-1869).

before the STN can provide informed comments and before the Board can fully or fairly evaluate the requests for reconsideration of the Schaghticoke Final Determination under 25 C.F.R. § 83.11.

The STN believes that the uncertainty and unfairness generated by the OFA's Supplemental Transmittal may possibly be cured; provided that the Board exercises its authority to establish procedures that permit a full and fair evaluation of the issues presented in that Transmittal. Before the IBIA addresses other issues before it, the STN moves the Board to convene a conference, modeled on a formal Technical Assistance meeting conducted pursuant to 25 C.F.R. § 83.10(j)(2) in which OFA explains its methodology and assumptions in analyzing STN marriage rates, clarifies its prior and current interpretations of 25 C.F.R. § 83.7(b)(2)(ii), and explains how applying its current interpretation would affect the outcome of its analysis of 19th Century STN endogamy.

Respectfully submitted,

Eric Watt Wiechmann
McCarter & English, LLP
City Place I, 185 Asylum Street
Hartford, CT 06103-3495
(860) 275-6700

Judith A. Shapiro
6856 Eastern Avenue, Suite 206
Washington, DC 20012
(202) 723-6400

Attorneys for the Schaghticoke Tribal Nation

Jerry C. Straus
F. Michael Willis
Hobbs, Straus, Dean and Walker, LLP
2120 L Street, NW, Suite 700
Washington, DC 20037

Of Counsel

February 3, 2005

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS

|  |  |  |
|---|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT OF THE SCHAGHTICOKE TRIBAL NATION | : : : : : : : : : : : | Docket Nos.  IBIA 04-83-A<br>IBIA 04-94-A<br>IBIA 04-95-A<br>IBIA 04-96-A<br>IBIA 04-97-A |

[Proposed]

**ORDER GRANTING MOTION
FOR TECHNICAL ASSISTANCE
TO CLARIFY OFA'S SUPPLEMENTAL TRANSMITTAL**

On February 3, 2005, the Board received a motion, filed on behalf of the Schaghticoke Tribal Nation, for the Board to establish procedures to explain OFA's methods and assumptions in conducting its analysis of Schaghticoke marriage rates in the 19th Century under 25 C.F.R. § 83.7(b)(2)(ii) and the carry over provision 83.7(c)(3). The motion also requested clarification of the agency's interpretation of these two regulatory provisions, which were discussed in the Supplemental Technical Assistance Transmittal from OFA to the Board on December 2, 2004.

Upon consideration of the motion, the Board grants the motion for Technical Assistance to clarify the matters raised by OFA's Supplemental Transmittal. Pursuant to the discretion conferred upon the Board by 25 C.F.R. § 83.11(e)(2), the Board will schedule a technical assistance conference modeled on the procedures of 25 C.F.R. 83.10(j)(2). The conference shall be held within 60 days, at _____ (time) on _____ (date) in hearing room _____.

Matters for technical assistance will be limited to the following:

- OFA's explanation to the Board, the STN, and Interested Parties wishing to participate what documents, assumptions and formulas were relied upon as part of its methodology and analysis of Schaghticoke marriage rates in the 19th Century and clarification questions related thereto; and
- OFA's presentation of its interpretation and application of the marriage rates as "sufficient evidence" under 25 C.F.R. § 83.7(b)(2)(ii) and the carry over provision 83.7(c)(3) and how OFA reconciles and

distinguishes the various methods for calculating rates of endogamy utilized in acknowledgment decisions in order to establish guiding precedent.

- OFA's presentation of what it considers guiding precedent and how it would be applied in analyzing Schaghticoke endogamous marriage rates in the 19th Century.

At the conclusion of the Technical Assistance conference, the Board, by motion of any party within 30 days of the conference and upon good cause shown, will consider whether additional explanations and/or new evidence may be required.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Schaghticoke Tribal Nation's Motion for Clarification of Supplemental Technical Assistance Transmittal, has been mailed, postage prepaid this 3rd day of February, 2005 to:

Richard Blumenthal
Attorney General
Mark F. Kohler
Assistant Attorney General
State of Connecticut
55 Elm Street
P.O. Box 120
Hartford, CT 06106

John B. Hughes
U.S. Attorney's Office
157 Church Street
New Haven, CT 06510

Thomas A. Gulgiliotti
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123
(Barbara Bush)

Philip G. Smith
Smith and McGuire
413 Georgia Street
P.O. Box 486
Louisiana, MO 63353
(Coggswell Group)

Assistant Secretary - Indian Affairs
Bureau of Indian Affairs
U.S. Department of Interior
1849 C. Street, N.W.
Washington, D.C. 20240
Attn: Office of Federal Acknowledgment

James R. Fogarty
Fogarty, Cohen, Selby & Nemiroff, LLC
88 Field Point Road
Greenwich, CT 06836-2508
(Preston Mountain Club)

Scott Keep
Barbara N. Coen
Office of Solicitor
U.S. Department of Interior
1849 C Street, N.W.
Washington, D.C. 20240

Perley H. Grimes, Jr.
Cramer and Anderson
46 West Street
Litchfield, CT 06759
(Town of Cornwall)

Michael J. Burns
Law Offices of Michael J. Burns
57 Pratt Street
Hartford, CT 06103
(Schaghticoke Indian Tribe)

William Kupinse, Jr.
225 Center Road
P.O. Box 61
Easton, CT 06612
(Town of Easton)

Robert A. Slavitt
Slavitt, Connery & Vardamis
618 West Avenue
Norwalk, CT 06850
(Loretta Bonos)

Christopher J. Jarboe
Lovejoy and Rimer, P.C.
65 East Avenue
P.O. Box 390
Norwalk, CT 06852
(Town of New Canaan)

D. Randall DiBella
Cramer and Anderson
51 Main Street
New Milford, CT 06776
(Town of New Milford)

Alex Knopp
City of Norwalk
125 East Avenue
P.O. Box 798
Norwalk, CT 06851
(City of Norwalk)

Jeffrey Sienkiewicz
Sienkiewicz & McKenna, P.C.
9 South Main Street
P.O. Box 786
New Milford, CT 06776
(Towns of Kent and Sherman)

David J. Elliott
Eric L. Sussman
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103
(Kent School Corporation)

Donald C. Baur
Jeffrey Dobbin
Perkins Coie LLP
607 Fourteenth Street, NW
Washington, D.C. 20005
(Kent School Corporation)

Aamina Ahmad
Assistant Town Attorney
101 Field Point Road
P.O. Box 2540
Greenwich,. CT 06836
(Town of Greenwich)

Frank n. Eppinger
O'Brien, Shafner, Stuart, Kelly & Morris, P.C.
475 Bridge Street
P.O. Drawer 929
Groton, CT 06340
(Amici Towns)

Richard L. Street
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721
(Conn. Light & Power Co.)

Eric L. Gottschalk
Deputy Corporation Counsel
155 Deer Hill Road
Danbury, CT 06810
(City of Danbury, Towns of Bethel, New
Fairfield, Ridgefield, Newtown, and the
Housatonic Valley Council of Elected Officials)

Thomas Cassone
Director of Office of Legal Affairs
888 Washington Boulevard
P.O. Box 10152
Stamford, CT 06904
(City of Stamford)

Ira W. Bloom
Wake, See, Dimes & Brynoiczka
27 Imperial Avenue
P.O. Box 777
Westport, CT 06881
(Town of Westport)

Patricia C. Sullivan
Cohen and Wolf, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06604
(Towns of Wilton and Weston)

Bruce R. Greene
Greene, Meyer & McElroy, P.C.
1007 Pearl Street
Suite 220
Boulder, CO 80302
(Eastern Pequot Tribal Nation)

Eric Watt Wiechmann

# EXHIBIT E



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

Connecticut Financial Center
157 Church Street
P.O. Box 1824
New Haven, Connecticut  06510

(203) 821-3700
Fax (203) 773-5376
www.usdoj.gov/usao/ct

June 1, 2005

Eric Wiechmann, Esq.
McCarter & English, LLP
City Place I
185 Asylum Street
Hartford, CT  06103-3495

Re:     *In Re Federal Acknowledgment of Schaghticoke Tribal Nation,* 41 IBIA 36
        *United States v. 43.47 Acres of Land* (Civ. No. H-85-1078 (PCD))
        *Schagticoke Tribal Nation v. Kent School Corp.* (Civ. No. 3:98 CV01113 (PCD))
        *Schagticoke Tribal Nation v. United States* (Civ. No. 3:00CV 00820 (PCD))

Dear Mr. Wiechmann:

By letter dated May 25, 2005, on behalf of the Schaghticoke Tribal Nation (STN), you requested
confirmation of your interpretation of the letter to your client, STN, from the Acting Principal Deputy
Assistant Secretary - Indian Affairs that was dated May 23, 2005. In brief, your questions concern the
procedures the Department of the Interior (Department) intends to follow in response to the recent
decision of the Interior Board of Indian Appeals (IBIA) that vacated the final determination on the STN
and remanded it to the Assistant Secretary - Indian Affairs for further work and reconsideration.

The IBIA decision vacated the final determination (FD) on the STN in accord with its decision in
*Historical Eastern Pequot Tribe,* 41 IBIA 1 (2005), where the IBIA concluded "that the State of
Connecticut's 'implicit' recognition of the Eastern Pequot as a distinct political body . . . is not reliable
or probative evidence for demonstrating the actual existence of community or political influence or
authority within that group." *In re Federal Acknowledgment of Schaghticoke Tribal Nation,* 41 IBIA at
34. The IBIA then noted that because it already was vacating and remanding the STN FD and because
the Office of Federal Acknowledgment (OFA) "acknowledged problems in the FD's endogamy rate
calculation - at a minimum, inadequate explanation [for changing precedent]," it left this matter to the
Assistant Secretary on reconsideration. *Id.* at 36. The IBIA then referred other allegations to the
Assistant Secretary for consideration.[1]

---

[1] These allegations included, for instance, whether the base membership list must consist
solely of currently enrolled members, whether the Schaghticoke Tribe was an amalgamation or
continuation of two pre-existing tribes, and whether there was a proper delegation of authority
from Congress to support the acknowledgment process. In addition, three issues raised by the

By letter dated May 23, 2005, the Acting Principal Deputy provided, in part, that during the reconsideration period "no technical assistance or consultation will be available to the petitioners and interested parties. Unsolicited arguments, evidence, comments, and briefings from the petitioners and interested parties will not be accepted."

Your first question inquires whether technical assistance will be available and further posits that the agency has "changed" its "analysis." Technical assistance is not being provided during the reconsideration period. Although technical assistance is provided for in the regulations during other points in the acknowledgment process, the regulations do not expressly provide for technical assistance during reconsideration. The reconsidered final determination will articulate its bases and provide an explanation for its conclusions, and include any supporting analyses and explanation of its methodology. In light of the number of issues referred to the Assistant Secretary, we cannot prejudge the impact this issue may have on the reconsidered FD. To the extent an analysis of marriages within the petitioning group is conducted as part of the reconsidered decision, that analysis will be articulated in the reconsidered decision.

Your second and third questions seek confirmation that there is "no opportunity for STN to respond" to "implicit amendments" to the FD, or provide "supplementary evidence to support a Positive Final Determination," whereas you could have provided argument and evidence "had a negative result been included in the original Final Determination." As your March 18, 2005, reply brief at 5, filed before the IBIA correctly points out, the endogamy matter "has the effect of *possibly* changing the outcome of the Final Determination. Or possibly not." (emphasis in original).[2] Neither the Supplemental Transmittal of December 2, 2004, nor any other filing has "implicitly amended" the FD - the reconsidered decision may provide an explanation for changing precedent, or, may recalculate the marriage rates, which may or may not impact the result, or, potentially, may find it unnecessary to address the issue.

In further response, we note that the IBIA decision delineated that the request for reconsideration filed by the State argued that the FD misapplied the regulations by counting the group's members who were married rather than the number of marriages and that the FD incorrectly analyzed specific individuals. 41 IBIA at 35. You had the opportunity to respond to those issues and filed an extensive responsive brief to the requests for reconsideration. STN also included what it characterized as "new, direct evidence" at that time. *Id.* at 34, n.7. Therefore, although the May 23, 2005, letter indicates that no unsolicited comments and arguments will be accepted, that does not mean that STN did not have the opportunity before the agency to respond to arguments and submit new evidence. The record before the IBIA will be considered during the reconsideration. Finally, the letter does not foreclose solicited comments, arguments, or evidence

---

Schaghticoke Indian Tribe, three issues raised by the Coggswell group, and the correspondence from Elton Jenkins were referred. *Id.* at 36-42.

[2] You argued further that it would not be "logical" to consider the prior decisions as having the status of binding precedent because you view them as conflicting and internally inconsistent. Reply brief at 7.

as may become necessary as the reconsideration proceeds.

The fourth question in your letter concerns the due date for the reconsidered decision and that it will be "final" for the Department under the acknowledgment regulations. The May 23, 2005, letter provided, "[u]nder 25 CFR § 83.11(h)(3), the reconsidered determination shall be final and effective upon publication of the notice of the reconsidered determination in the *Federal Register.*" You are correct that no further appeals within the Department are provided for in the acknowledgment regulations and that the reconsidered decision is "final and effective" upon publication.

Finally, you indicate that you intend to evaluate whether "the remand process complies with the principles of fairness and disclosure" on which the Scheduling Order in the litigation rests. As you recall, the availability or not of the reconsideration process provided for in the acknowledgment regulations was the subject of extensive negotiations among the parties. As provided on page 2 of the "Report and Joint Motion on Consent to Amend Scheduling Order" filed February 27, 2004, in the U.S. District Court for the District of Connecticut, the result of the negotiations under ¶ (j) of the Scheduling Order was that the review procedures of 25 C.F.R. § 83.11 would be available and that any additional review in District Court will be filed only at the conclusion of the administrative proceedings when there is a final effective agency decision. Since the agency is complying with § 83.11 of the acknowledgment regulations, it is complying with the principles of fairness and disclosure negotiated among the parties.

Sincerely,

John B. Hughes
Assistant U.S. Attorney


cc: Distribution list/Counsel of Record

## Distribution List/ Counsel of Record

Philip G. Smith, Esq.
Smith and McGuire
for the Coggswell Group
413 Georgia Street
P.O. Box 486
Louisiana, MO  63353

Eric Weichman, Esq.
McCarter English
Cummings and Lockwood
for Petitioner, Schaghticoke Tribal Nation
City Place I
185 Asylum Street
Hartford, CT  06103-3495

Susan Quinn Cobb, Esq.
Mark Kohler
State of Connecticut
Office of the Attorney General
55 Elm Street
Hartford, CT  06141

Alice Hutchinson, First Selectman
Town of Bethel
Bethel Municipal Center
1 School Street
Bethel, CT  06801

Perley H. Grimes, Jr., Esq.
Cramer and Anderson
for Town of Cornwall
46 West Street
Litchfield, CT  06759-0278

Mark D. Boughton, Mayor
City of Danbury
155 Deer Hill Avenue
Danbury, CT  06810

William Kupinse, Jr.
Town of Easton
225 Center Road
P.O. Box 61
Easton, CT  06612

Aamina Almad, Esq.
for Town of Greenwich
101 Field Point Road
P.O. Box 2540
Greenwich, CT  06836

Jonathan Chew, Executive Director
Housatonic Valley Council of Elected
            Officials
Old Town Hall, Routes 25 & 133
Brookfield, CT  06804

Jeffrey Sienkiewicz, Esq.
Sienkiewicz & McKenna, P.C.
For the Town of Kent
9 South Main Street, P.O. Box 786
New Milford, CT 06776

David J. Elliott, Esq.
Day, Berry & Howard
For Kent School
City Place I
Hartford, CT 06103-3499

Peggy Katkocin, First Selectman
Town of New Fairfield
Town Hall
4 Brush Hill Road
New Fairfield, CT 06812

Christopher J. Jarboe, Esq.
Lovejoy and Rimer, P.C.
For Town of New Canaan
65 East Avenue
P.O. Box 390
Norwalk, CT 06852-0390

D. Randall DiBella, Esq.
Cramer & Anderson
For the Town of Sherman
51 Main Street
New Milford, CT. 06776

Alex Knopp
City of Norwalk
125 East Avenue, P.O. Box 798
Norwalk, CT 06851

James R. Fogarty, Esq.
Leland C. Selby
Fogarty, Cohen, Selby & Nemiroff, LLC
for Preston Mountain Club
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06386-2508

Michael J. Burns, Esq.
for Mr. Alan Russell, et. al.
Schaghticoke Indian Tribe group
57 Pratt Street, Suite 604
Hartford, CT 06103

Patricia C. Sullivan
Associate Town Counsel
Town of Weston and the Town of Wilson
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06604

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, DC 20240

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

D. Randall DiBella, Esq.
Cramer & Anderson
for the Town of New Milford
51 Main Street
New Milford, CT. 06776

Herbert C. Rosenthal, First Selectman
Town of Newtown
Town Hall
45 Main Street
Newtown, CT 06470

Rudy Marconi, First Selectman
Town of Ridgefield
Town Hall, 400 Main Street
Ridgefield, CT 06877

Benjamin Barnes
Town of Stamford
888 Washington Boulevard
P.O. Box 10152
Stamford, CT 06904-2152

Diane Farrell
First Councilwoman
Town of Westport
Town Hall
110 Myrtle Avenue
Westport, CT 06880

Thomas Gugliotti, Esq.
Updike, Kelly & Spellacy
for Sam Kwak
One State Street
(P.O. Box 231277)
Hartford, CT 06123

Caroline Blanco, Esq.
General Litigation Section
Environment & Natural Resources Division
Department of Justice
Post Office Box 663
Washington, D.C. 20004-0663

Richard L Street, Esq.
Carmody and Torrance
For Connecticut L & P
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

# EXHIBIT F



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240



### MAY 23 2005

Mr. Richard L. Velky
Schaghticoke Road
P.O. Box 893
Kent, Connecticut 06757

Dear Mr. Velky:

On May 12, 2005, the Interior Board of Indian Appeals (IBIA) issued its decision in, *In re Federal Acknowledgment of the Schaghticoke Tribal Nation* [STN]. In this case, the IBIA vacated the final determination of the Principal Deputy Assistant Secretary – Indian Affairs to acknowledge the petitioner as an Indian tribe and remanded it to the Assistant Secretary – Indian Affairs "for further work and reconsideration," pursuant to 25 CFR §83.11(e)(10). The IBIA also described alleged grounds for reconsideration that are outside its jurisdiction, which were referred for consideration as appropriate. Inquiries have been received from representatives of STN and the Town of Kent concerning how the Department will handle the reconsidered final determination.

Under 25 CFR §83.11(g)(1), the Office of the Assistant Secretary shall issue a reconsidered final determination within 120 days of receipt of the IBIA's decision. The Assistant Secretary's office received this remand on May 13, 2005. On May 13, 2005, that office also received the IBIA remand in, *In re Federal Acknowledgment of the Historical Eastern Pequot Tribe* [HEP]. The due date to issue these two reconsidered final determinations is Monday, September 12, 2005 (120 days from May 13, 2005, lands on Saturday, September 10, 2005, and, thus, the deadline is moved to the next business day).

During this 120-day period, no technical assistance or consultation will be available to the petitioners and interested parties. Unsolicited arguments, evidence, comments, and briefings from the petitioners and interested parties will not be accepted. The petitioners, third parties, and their representatives should not contact the Associate Deputy Secretary or any other Department official who may have been delegated authority to decide matters concerning these acknowledgment petitions during this 120-day reconsideration period; nor contact the researchers in the Office of Federal Acknowledgment who are assigned to the reconsidered final determination. Persons may contact the Director of the Office of Federal Acknowledgment regarding the status of the reconsideration.

Under 25 CFR §83.11(h)(3), the reconsidered determination shall be final and effective upon publication of the notice of the reconsidered determination in the <u>Federal Register</u>.

'A one-page fax was received from the STN that does not indicate whether it was served on all parties in compliance with the Court-approved negotiated settlement order. A copy of this fax is enclosed. Should you have any questions regarding the status, please direct them in writing to Mr. R. Lee Fleming, Director, Office of Federal Acknowledgment, 1951 Constitution Avenue, N.W., MS 34B-SIB, Washington, D.C. 20240.

Sincerely,

**Acting** Principal Deputy Assistant Secretary -- Indian Affairs

cc:    STN interested parties, w/enclosure

## STN Questions about Reconsideration Procedures

1.    Can STN meet with OFA? If so, how soon? Do we need to make a written request?

2.    Who will be the OFA team for STN reconsideration?

3.    Can STN send its Tribal representative or legal counsel to all meetings concerning STN?

4.    Will new evidence be accepted that clarifies specific issues raised and discussed by the Vacate and Remand for Reconsideration issued on May 12, 2005?

5.    On November 29, 2004 and March 18, 2005 briefs with documentation were submitted to IBIA/OFA, were those documents reviewed and/or considered?

6.    What methodology was used by the BIA to calculate STN's endogamy rate to a drop of 50%?

7.    Please give the specific dates that cover the 120 day, time-period. Will Reconsideration for STN & HEP take place at the same time, or will they be staggered?

8.    On December 2, 2004 we received a letter from the Solicitor and in the final paragraph it states for the IBIA not to affirm STN without further clarification.   What do we need to do?

9.    The Interested Parties referenced in the IBIA Vacate and Remand, does STN have to address them?

10.    Did IBIA request that OFA provide technical assistance in deciding the appeal of the STN FD?