## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     Plaintiff,<br><br>  v.<br><br>43.47 ACRES OF LAND, MORE OR LESS,<br>SITUATED IN THE COUNTY OF<br>LITCHFIELD, TOWN OF KENT, ET AL.,<br>     Defendants. | CIVIL ACTION NO.<br>H-85-1078 (PCD) |
| SCHAGHTICOKE TRIBAL NATION,<br>     Plaintiff,<br><br>  v.<br><br>KENT SCHOOL CORPORATION, ET AL.,<br>     Defendants. | CIVIL ACTION NO.<br>3-98-CV-01113 (PCD) |
| SCHAGHTICOKE TRIBAL NATION,<br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA AND THE<br>CONNECTICUT LIGHT AND POWER<br>COMPANY,<br>     Defendants. | CIVIL ACTION NO.<br>3-00-CV-00820 (PCD)<br><br><br>June 29, 2005 |

## MEMORANDUM OF LAW OF AMICUS STATE OF CONNECTICUT AND DEFENDANTS TOWN OF KENT, KENT SCHOOL CORPORATION, AND THE CONNECTICUT LIGHT AND POWER COMPANY IN OPPOSITION TO SCHAGHTICOKE TRIBAL NATION'S MOTION TO AMEND SCHEDULING ORDER

ORAL ARGUMENT REQUESTED

I.    **INTRODUCTION**

The amicus State of Connecticut and defendants Town of Kent, Kent School

Corporation, and The Connecticut Light and Power Company (collectively, State Parties)

respectfully submit this joint memorandum of law in opposition to the Schahgticoke Tribal

Nation's (STN) motion to amend scheduling order and for expedited hearing and status

conference.[1]  The STN's extraordinary request for the Court's intervention in the ongoing

administrative process before the Bureau of Indian Affairs (BIA) is entirely without

justification.  Indeed, the request is nothing more than a backdoor effort to effect an

interlocutory appeal over which the court lacks jurisdiction under the federal Administrative

Procedures Act.  The motion should be denied, and the BIA should be permitted to complete

the process without Court intervention.

II.    **BACKGROUND**

The Court has before it three actions relating to land claims asserted by the STN.

These actions have been stayed pending the resolution of the administrative proceedings on

the STN's petition for federal acknowledgement as an Indian tribe.  Certain aspects of those

administrative proceedings have been the subject of a scheduling order negotiated by the

parties and the amici, originally entered by the Court on May 8, 2001 (Original Scheduling

Order), and subsequently amended twice (Amended Scheduling Order).  As required by the

Original Scheduling Order, the parties and the amici negotiated and agreed that, following

the BIA's issuance of a final determination on the STN's petition, the right to independent

review before the Interior Board of Indian Appeals (IBIA) and the procedures under the

---

[1] By order dated June 17, 2005, the Court granted the request for expedited hearing and
required the parties to file opposition briefs by June 30, 2005.

acknowledgment regulations for such review would be available.  Any subsequent appeal

under the Administrative Procedures Act would be filed with this Court.  On February 27,

2004, the Scheduling Order was amended by the Court to reflect this agreement.

In compliance with the Amended Scheduling Order's deadlines, the BIA issued a

final determination (Final Determination) granting the STN's acknowledgment petition on

February 5, 2004.  Pursuant to 25 C.F.R. § 83.11 and the parties agreement under the

Amended Scheduling Order, the State Parties and others filed requests for reconsideration

with the IBIA, raising claims, among others, that the Final Determination was based on

unreliable and nonprobative evidence, that the Final Determination was contrary to prior BIA

and judicial precedent, and that critical factual and legal errors were made.  In particular, the

State Parties maintained that the Final Determination improperly relied on state recognition

to compensate for otherwise insufficient evidence and that the Final Determination

incorrectly calculated marriage rates to satisfy key acknowledgment criteria in violation of

the regulations and prior precedent.  The STN filed an extensive answering brief in response

to the requests for reconsideration.

Following the parties' extensive submissions to the IBIA, the Office of Federal

Acknowledgment (OFA)  filed with the IBIA a document entitled "Supplemental

Transmission." In the Supplemental Transmission, OFA conceded that the analysis of

marriage rates in the Final Determination – which was used to establish the key

acknowledgement criteria of continuing community and political authority for much of the

nineteenth century[2] – was "not consistent with prior precedent," that this inconsistency was not explained, and that there was no evidence that the Final Determination had intended to deviate from prior precedent.  Supplemental Transmission, at 2-3 (Ex. 1).  Further, OFA stated that there were material mathematical errors that lowered marriage rates below the required threshold, regardless of how the analysis was done.  Id. at 3.  Therefore, OFA concluded that the Final Determination could not be affirmed on the basis of the marriage rate analysis.  Id.

On May 12, 2005, the IBIA issued an order vacating the Final Determination and remanding it to the BIA for reconsideration.  41 IBIA 30 (Ex. 2).  The IBIA's principal basis for vacating the Final Determination was, as the State Parties had argued, that the Final Determination improperly relied on state recognition to fill the significant and material gaps in the STN's evidence that it had continuously existed as a community and had continuously exercised political authority or influence within the group.  Id. at 34.  Because the Final Determination was vacated and remanded for reconsideration based on the improper use of state recognition, the IBIA declined to resolve the State Parties' other claims, including specifically the marriage rate analysis and the issues raised by OFA in the Supplemental Transmission.  Instead, pursuant to 25 C.F.R. § 83.11(f)(1), the IBIA directed the BIA to evaluate those claims as part of its reconsideration as well.  Id. at 35-37, 42.

On remand, consistent with the regulations governing reconsideration, the BIA indicated in a letter from the Acting Principal Deputy Secretary – Indian Affairs dated May

---

[2] The acknowledgment regulations provide that the two key criteria of showing continual existence as a distinct community and continual exercise of political influence or authority can be satisfied by demonstrating that "[a]t least 50 percent of the marriages in the group are between members of the group."  25 C.F.R. § 83.7(b)(2)(ii); see 25 C.F.R. § 83.7(c)(3).

25, 2005, that no technical assistance or consultation would be provided and no unsolicited

comments, briefs or evidence would be accepted during the reconsideration period.  Ex. 3.

This letter was at least in part prompted by the STN's inquiry to the BIA about procedures to

be followed on remand.  The STN neither provided prior notice about, nor served on the

other parties,  this communication to a BIA official in violation of the Amended Scheduling

Order's prohibition on such contacts.  Id.; see Amended Scheduling Order, ¶¶ (l), (p).

The procedures outlined in the BIA's May 25, 2005 letter were subsequently

confirmed and explained in a letter from Assistant U.S. Attorney John B. Hughes dated June

1, 2005.  Ex. 4.  In particular, Attorney Hughes stated that (1) contrary to the STN's

assertion, the Final Determination had not been implicitly amended by the Supplemental

Transmission or otherwise; (2) the reconsidered decision "may provide an explanation for

changing precedent, or, may recalculate the marriage rates, which may or may not impact the

result, or, potentially, may find it unnecessary to address the issue"; (3) the STN had the

opportunity to respond to the State Parties' claims before the IBIA that the marriage rate

analysis in the Final Determination was erroneous, and the record before the IBIA will be

part of the reconsideration; and (4) the BIA reconsideration procedures did not foreclose

solicited comments, arguments or evidence.  Id. at 2.  In conclusion, Attorney Hughes stated

that the BIA's procedures complied with "the principles of fairness and disclosure negotiated

among the parties."  Id. at 3.

The STN now move the Court, under the guise of an amendment to the Amended

Scheduling Order, to review the BIA's procedural rulings for its reconsideration.  The Court

does not have jurisdiction to conduct such judicial review, and the STN fails to demonstrate a basis justifying the Court's intervention.

## III. THE COURT LACKS JURISDICTION TO ORDER THE RELIEF THAT THE STN SEEK.

The Court does not have jurisdiction to alter the procedures that the BIA has outlined for its reconsideration of the STN Final Determination in accordance with the acknowledgement regulations. The relief sought by the STN – requiring the BIA to conduct a technical assistance meeting to explain the Supplemental Transmittal and ordering the BIA to accept additional comments, information, documents, analysis and argument – is not within the authority of this Court to impose. The claims the STN assert as grounds for this extraordinary intervention into the ongoing administrative process – the alleged unfairness of the BIA's denial of a request for technical assistance and additional submission of comments and evidence despite the clear lack of a basis for such a request in the acknowledgment regulations – can and should be raised in an appeal pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 701 et seq., after the BIA issues a reconsidered final determination. These claims simply do not create grounds for the Court to review at this juncture the interlocutory orders and procedural decisions of the BIA.

Under the APA, a court may review agency action that is "final." 5 U.S.C. § 704. Because the authority to review agency action under the APA constitutes a waiver of federal sovereign immunity, it goes to the subject matter jurisdiction of the court. Up State Fed. Credit Union v. Walker, 198 F.3d 372, 374-75 (2d Cir. 1999). An agency action is final within the meaning of the APA, and therefore reviewable by a court, if it "mark[s] the 'consummation' of the agency's decisionmaking process," Bennett v. Spear, 520 U.S. 154, 177 (1997) (quoting Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)), and is not a preliminary, procedural or interlocutory action or ruling. Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003). The "core question" for

determining finality of an agency action is "whether the agency has completed its decisionmaking process. . . ."  Dalton v. Specter, 511 U.S. 462, 470 (1994).

The actions that the STN seeks the Court to review – specifically, the denial of its request for technical assistance on the meaning of the Supplemental Transmission and the refusal to accept further unsolicited submissions during the reconsideration period – are quintessentially procedural and interlocutory.  Obviously, they do not represent the completion of the BIA's decisionmaking process; rather, they are merely procedural rulings outlining how that decisionmaking process will proceed.  Thus, these are matters that are clearly outside the Court's jurisdiction.

Despite the APA's plain bar against judicial review of such procedural actions, the STN nonetheless asserts that the Court's intervention is necessary to ensure the fairness of the acknowledgment process.  STN Motion, at 11, 22.  The mere allegation of procedural unfairness does not establish the basis for judicial review.  The courts do not have a generalized supervisory power over administrative agencies.  Indeed, it is particularly telling that nowhere in the STN's motion does it allege a jurisdictional basis for the relief it seeks, and no case law is cited that would even suggest that the challenged actions constitute reviewable administrative actions under the APA.

Nor does the Amended Scheduling Order itself create some ongoing supervisory jurisdiction in the Court pursuant to which it may grant the relief the STN seek.  See Sosna v. Iowa, 419 U.S. 393, 398 (1975) (parties cannot confer subject matter jurisdiction on court by stipulation); Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002).  The Original Scheduling Order had its genesis when the Court lifted the stay in the land claims actions.  The Court had granted the STN's motion to terminate the stay on the basis of agency delay.  Ruling on Pending Motions dated Sept. 7, 2000.  The parties and amici subsequently engaged in lengthy negotiations to devise a schedule for the BIA's proceedings.

The Original Scheduling Order was the outcome of those negotiations, and the stay was reimposed on the land claims actions.[3]

The STN does not, and cannot, claim that there is presently an unreasonable delay in the agency's proceedings. Indeed, the BIA has indicated that it will issue a reconsidered final determination by the 120-day deadline established under the regulations. Ex. 3. The STN can then appeal the reconsidered final determination to this Court. Amended Scheduling Order, ¶ (k). Moreover, the mere fact that the parties agreed to certain procedures in addition to time deadlines in the Original Scheduling Order does not create ongoing authority in the Court to scrutinize subsequent procedures. Under the Amended Scheduling Order, the parties expressly agreed that IBIA review would be available as it ordinarily would be under the acknowledgement regulations. Id. Thus, going forward, the BIA is to operate, as it is, in conformance with the provisions of 25 C.F.R. § 83.11.

The STN acknowledge that the alleged procedural claims can be raised in a proper appeal under the APA from a reconsidered final determination. See 5 U.S.C. § 704; STN Motion, at 11. However, the STN can offer no cognizable justification for excusing it from what is ordinarily required of parties aggrieved by an agency's action – that is, to await the conclusion of the decisionmaking process to assert whatever claims of legal error might be alleged. The only grounds for avoiding the normal appellate process offered by the STN is that an APA appeal will take additional time. STN Motion, at 12 n.9. However, the rule against interlocutory appeals inevitably results in a continuation of the review process, and the resulting continuation certainly is not an exception to the requirement of finality.

Moreover, excusing the STN from following the ordinary rules of judicial review would be utterly at odds with the purpose of permitting review only of final agency actions.

---

[3] A court has jurisdiction under the APA to compel agency action that has been unreasonably delayed. 5 U.S.C. § 706(1).

As the Supreme Court has indicated, judicial review of procedural or interlocutory rulings "leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 242 (1980). Raising these procedural claims prior to the issuance of a reconsidered final determination is at best premature. Because we obviously do not know what the outcome of the remand to the BIA will be, it is entirely speculative at this juncture whether the challenged procedures will result in prejudice to the STN. The STN's claims can be raised in an APA appeal if it is aggrieved by the reconsidered final determination, and the claims thus will not evade judicial review. There simply is no justification for the Court's intervention in the administrative proceedings, and the Court lacks jurisdiction to do so.

## IV.  THE STN HAD A FULL AND FAIR OPPORTUNITY TO ADDRESS THE MARRIAGE RATE ISSUES.

Contrary to the STN's repeated complaint that it has not yet been permitted to address the marriage rate issue, see STN Motion, at 11-14, the STN had a full and fair opportunity to present evidence, analysis and arguments on the use of marriage rates to satisfy the acknowledgment criteria both before the issuance of the Final Determination and in its submissions to the IBIA. This issue did not come out of the blue, as the STN would have the Court believe. It was a central component of the request for reconsideration filed by the State Parties with the IBIA. See 41 IBIA at 35 (Ex. 2). The STN's claim that it has been denied a meaningful opportunity to be heard is completely specious.

First, the BIA's Proposed Finding on the STN petition issued on December 5, 2002, expressly suggested that the STN should consider presenting evidence and analysis of marriage rates to satisfy the acknowledgement criteria for the nineteenth century. STN Proposed Finding, at 90 (Ex. 5). The STN in fact submitted an extensive marriage rate analysis in its comments on the Proposed Finding. See STN Final Determination, at 23-28

(Ex. 6). The STN thus had a full opportunity to submit its evidence and analysis on marriage rates even before the Final Determination.

Moreover, the very conclusions presented in the Supplemental Transmission about which the STN complain – that the marriage rate calculations in the Final Determination were incorrect and were contrary to prior BIA precedent, see Supplemental Transmission, at 2-3 (Ex. 1) – was a key contention in the State Parties' request for reconsideration to the IBIA and was extensively briefed. See 41 IBIA at 35 (Ex. 2). In fact, the State Parties devoted a full 50 pages of their brief to the marriage rate issues, arguing among other things that (a) the acknowledgment regulations require the use of marriage rates (that is, the percentage of marriages that are between group members) instead of endogamy rates (the percentage of group members that are married to other members);[4] (b) the calculation of endogamy rates in the Final Determination conflicted with prior BIA precedent; (c) the STN failed to meet a 50 percent marriage rate even using the incorrect methodology the OFA employed; and (d) that the OFA made extensive errors in expanding the appropriate group of people for calculating endogamy rates . The State went even further by undertaking all the necessary recalculations to transform the incorrect endogamy rates into marriage rates. *See id.* at 35.

The STN filed an opposition to the State Parties' request for reconsideration and in its opposition addressed the contentions made by the State Parties regarding the marriage rate

---

[4] The regulations provide that a petitioner can satisfy the community and political authority criteria when evidence is submitted to demonstrate that "[a]t least 50 percent of the ***marriages*** in the group are between members of the group . . . ." 25 C.F.R. § 83.7(b)(2)(ii) (emphasis added); § 83.7(c)(3). The difference between marriage rates and endogamy rates is significant. For example, if there are five marriages in the group, two of which are between group members, the marriage rate (2 of 5) is 40 percent. However, of the seven members of the group in this example, four are married to other members, so that the endogamy rate, as applied in the Final Determination, would be 58 percent. In effect, the endogamy rate double-counts in-group marriages.

issue.  See STN Answer Brf., at 18-21 & Austin Report (Ex. 7).  The STN's response to the

State Parties' claims specifically addressed the question of the BIA's prior precedent on

marriage rates and presented analysis, including a separate report, that the Final

Determination's marriage analysis fully satisfied the acknowledgment criteria.  Id.

The STN cannot now claim that it was somehow blindsided by the BIA's concession

in the Supplemental Transmission that, as the State Parties had correctly argued, the marriage

rate analysis was faulty.  The STN had the opportunity to and did in fact address the detailed

contentions made by the State Parties – the very same issues raised in the Supplemental

Transmission.  The BIA has indicated that it will consider those arguments on

reconsideration.

Moreover, there is nothing unusual in the way in which the matter unfolded.  The

State Parties raised serious questions about the validity of the marriage rate analysis in the

Final Determination.  The STN had a full opportunity to respond.  The BIA, in light of the

positions taken before the IBIA, rightly concluded that it was obligated to inform the IBIA

that the marriage rate analysis was fatally flawed and could not be a basis for affirming the

Final Determination.  The IBIA vacated the Final Determination (principally because of the

improper reliance on state recognition, as discussed below) and ordered reconsideration.

Following the acknowledgment regulations, which do not provide for the requested technical

assistance or further submissions on remand, the BIA is proceeding with its reconsideration.

This is precisely the process that the acknowledgment regulations contemplate.  See

discussion in section V below.

Apparently in an effort to bolster its claimed procedural violations, the STN attempt

to portray the marriage rate issue as the reason that the IBIA vacated the Final Determination

and remanded it to the BIA for reconsideration in light of the IBIA's ruling.  See STN

Motion, at 8 ("[T]he IBIA based its ruling in large part on the uncertainty created by OFA's

Supplemental Transmission.").  This is an interpretation of the IBIA's decision that simply does not withstand even cursory scrutiny.  The predominant reason that the IBIA gave for vacating the Final Determination was the BIA's improper reliance on state recognition as a substitute for evidence of community and political authority in satisfying the acknowledgment criteria.  41 IBIA 30, 34 (Ex. 2).  Following its decision issued the same day in Historical Eastern Pequot Tribe,[5] the IBIA concluded that

> the State of Connecticut's "implicit" recognition of the Eastern Pequot as a distinct political body – even if a correct characterization of the relationship – is not reliable or probative evidence for demonstrating the actual existence of community or political influence or authority within the group.  The [Final Determination] for STN used state recognition in the same way we found impermissible in Historical Eastern Pequot Tribe.  In addition, we agree with the State that the STN [Final Determination] gives even greater probative value and evidentiary weight to such "implicit" state recognition, and therefore it constituted a substantial portion of the evidence relied on. . . .  Therefore, in light of our decision in Historical Eastern Pequot Tribe, the [IBIA] vacates the [Final Determination] and remands it for reconsideration in accordance with that decision.

41 IBIA at 34 (Ex. 2).  By contrast, turning to the marriage rate question, the IBIA merely concluded that, because it was already vacating and remanding the Final Determination because of the improper reliance on state recognition, it was best that it not address the issue but rather left it to the BIA to address the issue on reconsideration.  Id. at 35-36.  Plainly, the central reason given for vacating the Final Determination was the improper reliance on state recognition, not the faulty marriage rate analysis.

    In any event, even assuming that the Court had jurisdiction over the STN's claimed procedural violations, which it does not, the STN had a full and fair opportunity to present its evidence and arguments on the marriage rate analysis.  This evidence and these arguments

---

[5] A copy of the IBIA's decision in Historical Eastern Pequot Tribe, on which the IBIA relied in vacating the STN Final Determination, is provided as Ex. 8.

will be available to the BIA in its reconsideration. The BIA should be permitted to proceed under the regulations without further interference.

## V.    THE BIA REMAND PROCEDURES ARE COMPLETELY CONSISTENT WITH THE FEDERAL TRIBAL ACKNOWLEDGEMENT REGULATIONS.

As the STN notes, the parties agreed that, after the issuance of the Final Determination, the IBIA review procedures provided for under the acknowledgment regulations, 25 C.F.R. § 83.11, would be available and that any APA appeal would be filed only upon completion of the administrative process. See STN Motion at 4-5. This was incorporated into the Amended Scheduling Order pursuant to the parties negotiations in 2004. Amended Scheduling Order, ¶ (k). Thus, going forward, the acknowledgment regulations govern the administrative process as they would for any other petition. There is no basis, and the Court does not have jurisdiction, to impose requirements on the administrative process other than those found in the regulations.[6]

The actions taken by the BIA on remand are entirely consistent with the governing regulations. For *other parts* of the acknowledgment process, the regulations provide that technical assistance may be offered to the petitioner or interested parties. See 25 C.F.R. § 83.10(b) (technical assistance offered upon preliminary review of documented petition); § 83.10(j)(1) (informal technical assistance offered after issuance of proposed finding); § 83.10(j)(2) (formal technical assistance offered after issuance of proposed finding); § 83.11(e)(3) (IBIA discretion to request technical assistance from BIA for request for reconsideration). Similarly, for *other parts* of the acknowledgment process, petitioners and interested parties may submit comments and evidence. See 25 C.F.R. § 83.10(f)(2)

---

[6] See Mohegan Tribe v. Connecticut, No. H-77-434 (PCD) (D. Conn. Jul. 10, 1990) (endorsement order reflected on docket sheet; in response to State's motion to conduct discovery of Mohegan petitioner with regard to submissions made before the BIA, this Court concluded that "[t]he process by which the [BIA] will receive & consider submissions by interested parties is a matter that is internal to the [BIA]") (Ex. 10).

(comments submitted prior to proposed finding); § 83.10(i) (submission of arguments or evidence after proposed finding); § 83.10(k) (petitioner's reply comments after proposed finding).

By contrast, for the reconsideration process, ***no provision*** is made in the regulations for either technical assistance or further submissions.  Section 83.11(g) only provides a 120 day deadline for the BIA's reconsideration on remand and requires that the BIA consider all grounds deemed valid for reconsideration by the IBIA as well as other grounds found not to be within the IBIA's jurisdiction.  Thus, the BIA's reconsideration is to be made on the basis of the ***existing record.***  <u>See</u> <u>also</u> 28 C.F.R. § 83.10(<u>l</u>)(1) (unsolicited comments submitted after close of comment period not considered for final determination).  The regulations do not contemplate additional technical assistance or a further round of evidentiary submissions or briefs.  Instead, reconsideration on remand from the IBIA is to be exactly that – a reconsideration of the record in light of the IBIA's decision.  Thus, even assuming the Court has jurisdiction to entertain the STN's procedural claims at this point, which it does not, the STN has failed to demonstrate that the BIA's actions violate their rights under the acknowledgment regulations.

The STN also appears to suggest that the Court should address the underlying substantive claim regarding the use of marriage rates.  Specifically, the STN argues that the marriage rate calculations used in the Final Determination were consistent with BIA Guidelines.  STN Motion, at 17-18.  Plainly, that is not a matter that is within the Court's jurisdiction to resolve at this point.  In no fashion can the marriage rate issue be considered part of a final agency action so as to be presently subject to judicial review.  <u>See</u> <u>Bennett</u>, 520

U.S. at 177. The STN's assertions relating to the BIA Guidelines are wholly irrelevant to its motion to amend the scheduling order.[7]

Finally, the STN claims that the Court must intervene in the reconsideration process because of the "political maelstrom" surrounding the matter. STN Motion, at 23. The STN also suggests that state officials and others have violated the spirit of the Amended Scheduling Order by raising their concerns about the acknowledgment process publicly and before Congress, rather than bringing their concerns to this Court.[8] Id. at 24-25. This is utterly baseless. Nothing in the Amended Scheduling Order prohibits state officials or any other party from raising matters of such serious public concern before Congress or discussing these concerns publicly. Moreover, the concerns about the failings of the federal acknowledgment process – issues that go beyond just the STN's petition – and demands for legislative reformation of the process are plainly not within the scope of this Court's jurisdiction. Thus, there would be no cause to raise these concerns before this Court, as the STN suggest should have been done.

In any event, the STN's unsupported claims about the effect of the broader political debate regarding federal tribal acknowledgment are of no avail. Aside from being entirely speculative, such allegations do not create jurisdiction in the Court where it otherwise does

---

[7] It is noteworthy that the STN quotes language from the BIA's Draft Guidelines that states that marriage rates should be based on the percentage of members in the group not the percentage of marriages between members of the group. See STN Motion, at 17. The BIA's Final Guidelines did not retain that language. Id. Moreover, the regulations explicitly provide that the marriage rate should be based on the "percent of *marriages* in the group that are between members of the group." 25 C.F.R. § 83.7(b)(2)(ii) (emphasis added). *See Little Shell Chippewa Indians of Montana*, Proposed Finding – Technical Report, at 178-179 (BIA Jul. 14, 2000) (calculations based on draft guidelines had not been adopted in previous acknowledgment decisions and were contrary to acknowledgment regulations) (Ex. 9).

[8] Ironically, STN Chief Richard Velky also testified at the congressional hearing about which the STN complains that the Governor testified. See STN Motion, at 24. Questions regarding the STN's own political and lobbying efforts have been addressed in the State's Response to STN's Motion for Permission to Conduct Limited Discovery dated March 9, 2005.

not have it.  As demonstrated above, the Court plainly lacks jurisdiction to review the procedural actions of the BIA.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the STN's motion to amend the scheduling order should be

denied.

Respectfully Submitted,

AMICUS CURIAE,
STATE OF CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By:    _____
       Richard Blumenthal (ct05924)
       Attorney General
       Mark F. Kohler (ct02272)
       Susan Q. Cobb (ct03850)
       Assistant Attorneys General
       55 Elm Street
       P.O. Box 120
       Hartford, CT 06141-0120
       (860)808-5020
       (860)808-5389(fax)
       mark.kohler@po.state.ct.us
       susan.cobb@po.state.ct.us

DEFENDANT,
KENT SCHOOL CORPORATION


By: _____
     David J. Elliott (ct04301)
     Day, Berry & Howard LLP
     CityPlace I
     185 Asylum Street
     Hartford, CT  06103-3499
     (860) 275-0196
     djelliott@dbh.com



DEFENDANT,
THE CONNECTICUT LIGHT AND POWER
COMPANY


By: _____
     Richard L. Street (ct13658)
     Carmody & Torrance
     50 Leavenworth Street
     P.O. Box 1110
     Waterbury, CT 06721-1110
     (203)573-1200
     rstreet@carmodylaw.com

DEFENDANT,

TOWN OF KENT

<u>CERTIFICATION</u>

This certifies that the foregoing was served by first-class mail on all counsel and pro se parties of record this _____ day of June, 2005, as follows:

Eric W. Weichmann
Salvatore N. Fornaciari
McCarter & English LLC
CityPlace I
185 Asylum Street
Hartford, CT 06103

Judith Shapiro
6856 Eastern Aveneue, NW
Washington, D.C. 20012

Jerry C. Strauss
Hobbs, Straus, Dean & Walker
2120 L Street, NW
Washington, D.C. 20037

Michael J. Burns
57 Pratt Street
Hartford, CT 06103

David J. Elliott
Day, Berry & Howard
CityPlace I
185 Asylum Avenue
Hartford, CT

Jeffrey B. Sienkiewicz
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT 06676-0786

James Fogarty
Fogarty, Cohen, Selby & Nemiroff
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06386-2508

Richard L. Street
Carmody & Torrance
50 Leavenworth Street
P.O. Box 110
Waterbury, CT 06721

Robert A. Slavitt
Slavitt, Connery & Vardamis
618 West Avenue
Norwalk, CT 06850

Loretta E. Bonos
594 Bend View Drive
Charleston, West Virginia 25314

Thomas Gugliotti
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123

John B. Hughes
Unites States Attorney's Office
157 Church Street
P.O. Box 1824
New Haven, CT 06510

Barbara N. Coen
Division of Indian Affairs
Office of the Solicitor
U.S. Department of Interior
1849 C Street, NW
Washington, D.C. 20240

Renita Ford
General Litigation Section
Environmental & Natural Resources
Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20004-0663

_____
Mark F. Kohler