**EXHIBIT 2**



**United States Department of the Interior**

OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS
801 NORTH QUINCY STREET
SUITE 300
ARLINGTON, VA 22203

| | |
|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT OF THE SCHAGHTICOKE TRIBAL NATION | : Order Vacating and Remanding : Final Determination : : Docket Nos. IBIA 04-83-A :                 IBIA 04-94-A :                 IBIA 04-95-A :                 IBIA 04-96-A :                 IBIA 04-97-A : : May 12, 2005 |

     This consolidated case involves five requests for reconsideration of the Final Determination to acknowledge the Schaghticoke Tribal Nation (STN) as an Indian tribe within the meaning of Federal law. 1/ The Final Determination (FD) was issued by the Principal Deputy Assistant Secretary - Indian Affairs on January 29, 2004, and notice of the Final Determination was published in the Federal Register on February 5, 2004. 69 Fed. Reg. 5570. As discussed below, the Board vacates the FD and remands it to the Assistant Secretary - Indian Affairs, for further work and reconsideration, in light of In re Federal Acknowledgment of the Historical Eastern Pequot Tribe, 41 IBIA 1 (2005), which is also being decided today. In addition, the Board describes for the Assistant Secretary other alleged grounds for reconsideration that are not within the Board's jurisdiction.

---

1/ Timely requests for reconsideration were filed by (1) the "Coggswell Group," IBIA 04-83-A, a group of individuals described as "descendants of the historical tribe known today as the Schaghticoke Tribal Nation;" (2) the Town of Cornwall, Connecticut, IBIA 04-94-A; (3) the State of Connecticut; the Towns of Kent, Bethel, New Fairfield, Newtown, Ridgefield, Greenwich, Sherman, Westport, Wilton, and Weston; the Cities of Danbury and Stamford; the Kent School Corporation; the Connecticut Light and Power Company; and the Housatonic Valley Council of Elected Officials, IBIA 04-95-A; (4) the Preston Mountain Club, Inc. (PMC) IBIA 04-96-A, a landowner; and (5) the Schaghticoke Indian Tribe, IBIA 04-97-A, a group which has separately petitioned for Federal acknowledgment (petitioner #239).

## Background

The "Schaghticoke Indian Tribe," filed a letter of intent with the Department of the Interior in 1981 to petition for Federal acknowledgment. The group was designated as petitioner #79. According to the Assistant Secretary, petitioner #79 later changed its name to the Schaghticoke Tribal Nation of Kent. Proposed Finding Against Federal Acknowledgment of the Schaghticoke Tribal Nation, 67 Fed. Reg. 76,184, 76,185 col. 1 (Dec. 11, 2002). 2/ The Schaghticoke have a state-established reservation located in the Town of Kent, Litchfield County, Connecticut.

The Assistant Secretary initially proposed not to acknowledge STN as an Indian tribe, concluding that there was insufficient evidence, sometimes for substantial periods of time, to find that STN satisfied the criteria for demonstrating the existence of community and political influence or authority within the group, as required by 25 C.F.R. §§ 83.7(b) (criterion (b)) and 83.7(c) (criterion (c)), respectively. See 67 Fed. Reg. 76,184; see also Historical Eastern Pequot Tribe, 41 IBIA at 2-4 (discussing the regulatory requirements for a group petitioning for Federal acknowledgment to demonstrate community and political influence or authority). Although the Proposed Finding (PF) found that the Schaghticoke — like the Eastern Pequot — had been a "[State of Connecticut]-recognized tribe, with a state reservation, from colonial times until the present," it found that the State's relationship with the Schaghticoke was of a "narrower quality" than its relationship with the Eastern Pequot. 67 Fed. Reg. at 76,185 col. 1-2. As a result — unlike the Eastern Pequot determination — the PF for STN concluded that the evidence of state recognition did not provide additional evidence which, when combined with direct evidence, was sufficient to reach a favorable determination. See id. at 76,185 col. 1-2, 76,186 col. 2. The PF found that STN had not shown that it satisfied criterion (c) from 1800 to 1875, 1885 to 1967, and in the present-day group. Id. at 76,188 col. 3.

After receiving comments and additional evidence, the Principal Deputy Assistant Secretary issued the FD, finding that the evidentiary deficiencies in the petition had been satisfactorily addressed, in part based on additional evidence and in part based on a reevaluation

---

2/ As noted in n.1, supra, a separate petitioner (#239) for Federal acknowledgment, which has requested reconsideration of the FD, now goes by the name "Schaghticoke Indian Tribe." As discussed later in this decision, SIT claims that it is the legitimate present-day continuation of the historical Schaghticoke tribe.

of the evidentiary value of the State's relationship with the Schaghticoke. 3/ The FD concluded that STN met all of the regulatory requirements for being acknowledged as an Indian tribe.

For the time period between 1801 and 1875, the FD found that there remained "little direct evidence concerning political influence or authority among the Schaghticoke." 69 Fed. Reg. at 5572 col. 3. For 1801 to 1820, and 1841 to 1870, the FD found that the endogamy rate of marriages within the group was at least 50 percent. Id. at 5573 col. 1; SCE FD at 84. 4/ Under the regulations, if a petitioner can demonstrate that "[a]t least 50 percent of the marriages in the group are between members of the group" at a given point in time, that showing satisfies both criteria (b) and (c) for that time period. See 25 C.F.R. § 83.7(b)(2)(ii), (c)(3). Based on the FD's endogamy rate calculations, STN therefore satisfied criterion (c) for 1801 to 1820 and 1841 to 1870. 69 Fed. Reg. at 5573 col. 1; SCE FD at 84.

In addition, the FD reevaluated what it characterized as "the evidentiary weight given to continuous state recognition with a reservation," 69 Fed. Reg. at 5571 col. 2. It concluded that the State's relationship with the Schaghticoke, which the FD found shared the same general characteristics as the State's relationship with the Eastern Pequot, 5/ "provides sufficient evidence for continuity of political influence within the community, even though direct evidence of political influence is almost absent for two historical time periods," 1820 to 1840 and 1892 to 1936. Id. at 5572 col. 2; see SCE FD at 118-122. The FD also used state recognition as "additional evidence" for finding that STN demonstrated community for 1920 to 1967. See SCE FD at 59-60.

As a result, relying on a combination of new endogamy rate calculations for the group, and the reevaluated significance of the State's relationship with the Schaghticoke, the FD concluded that STN had been able to satisfy criterion (c) for 1801 to 1870, and 1892 to 1936.

---

3/ The FD is contained in a document titled "Summary Under the Criteria and Evidence for Final Determination for Federal Acknowledgment of the Schaghticoke Tribal Nation" (SCE FD), signed Jan. 29, 2004.

4/ According to the Office of Federal Acknowledgment, the term "endogamy" is a general term referring to marriage within a group, which can be measured in different ways. OFA Supp. Transmittal at 3 n.3.

5/ The FD describes the characteristics of the relationship as "the historically continuous existence of a community recognized throughout its history as a political community by the State and occupying a distinct territory set aside by the State (the reservation)." 69 Fed. Reg. at 5572 col. 2.

69 Fed. Reg. 5573 col. 1-2. The FD also found, on the basis of additional evidence, that STN satisfied criterion (c) for the other time periods for which the PF had found the evidence insufficient.

## Discussion

The Board's jurisdiction over requests for reconsideration of final acknowledgment determinations is limited to reviewing four alleged grounds for reconsideration:

(1) That there is new evidence that could affect the determination; or

(2) That a substantial portion of the evidence relied upon in the Assistant Secretary's determination was unreliable or was of little probative value; or

(3) That petitioner's or the [Bureau of Indian Affairs'] research appears inadequate or incomplete in some material respect; or

(4) That there are reasonable alternative interpretations, not previously considered, of the evidence used for the final determination, that would substantially affect the determination that the petitioner meets or does not meet one or more of the criteria in § 83.7(a) through (g).

25 C.F.R. § 83.11(d)(1)–(4).

The party requesting reconsideration bears the burden to establish, by a preponderance of the evidence, that one or more of the grounds for reconsideration over which the Board has jurisdiction exist. 25 C.F.R. § 83.11(e)(9), (10).

If a request for reconsideration alleges additional grounds for reconsideration that do not fall within the Board's jurisdiction, the Board is required to describe those grounds and refer them to the Secretary, if the Board affirms the final determination, or to the Assistant Secretary - Indian Affairs, if the Board vacates and remands it for further work and reconsideration. See 25 C.F.R. § 83.11(e)(10), (f)(1), (f)(2).

State's Request for Reconsideration 6/

The State challenges the FD's use of "state recognition" on the same grounds raised in Historical Eastern Pequot Tribe, see 41 IBIA at 12. In addition, the State contends that even if the determination to acknowledge the Eastern Pequot tribe were upheld, the FD for STN impermissibly expands the use of the State's relationship as evidence of political influence or authority.

Today, in Historical Eastern Pequot Tribe, 41 IBIA at 16-23, the Board concludes that the State of Connecticut's "implicit" recognition of the Eastern Pequot as a distinct political body — even if a correct characterization of the relationship — is not reliable or probative evidence for demonstrating the actual existence of community or political influence or authority within that group. The FD for STN used state recognition in the same way that we found to be impermissible in Historical Eastern Pequot Tribe. In addition, we agree with the State that the STN FD gives even greater probative value and evidentiary weight to such "implicit" state recognition, and therefore it constituted a substantial portion of the evidence relied upon. See id. at 21-22. Therefore, in light of our decision in Historical Eastern Pequot Tribe, the Board vacates the FD and remands it for reconsideration in accordance with that decision. 7/

---

6/ The Town of Cornwall and PMC did not submit separate arguments, but adopted the arguments of the State, Towns, et al. For convenience, the Board will refer collectively to these requesters as "the State."
    In its May 21, 2004, Determination of "Interested Party" Status and Board Jurisdiction, at 2-3, the Board found that because the State clearly is an "interested party," as defined in 25 C.F.R. § 83.1, it was unnecessary for the Board to determine whether the co-requesters with the State are also interested parties. Subsequently, the Town of Kent, the Kent School Corp., and the Connecticut Light and Power Co. filed a motion for the Board to confirm their status as interested parties. Particularly in light of the Board's remand of this case to the Assistant Secretary, who apparently treated these entities as interested parties, the Board continues to find it unnecessary to make a separate determination for them in these proceedings, and therefore denies the motion.

7/ The Board notes that as part of STN's answer to the State's request for reconsideration, STN offers what it describes as "new, direct evidence," along with STN's analysis, to establish that STN exercised political influence and authority over its members between 1892 and 1936. STN Answer Br. Ex. E at 1. STN contends that this new evidence and interpretations "minimize[] the need for inference based upon the Tribe-State relationship." Id. at 40. As STN correctly notes, id. at 1, the Board does not have authority to evaluate new evidence for
(continued...)

The State also contends that the FD must be vacated because it misapplied the regulations by using "endogamy rates" instead of "marriage rates" to conclude that STN satisfied the requirements of 25 C.F.R. § 83.7(b)(2)(ii) during certain time periods, which under the carryover provision of 25 C.F.R. § 83.7(c)(3), is also deemed to satisfy the requirement to demonstrate political influence or authority for that time period. The State argues that the FD improperly calculated an "endogamy rate" by counting the number of the group's *members* who were in an endogamous marriage, as opposed to counting the number of *marriages* that were endogamous. It further contends that if marriage rates are calculated in the manner required by the regulations, the percentages for certain time periods fall below 50 percent, and therefore cannot be used to demonstrate political influence or authority. In addition, the State proffers what it alleges is new evidence to show that one individual who was included in the endogamy rate calculations was not Indian, and also argues that the FD incorrectly analyzed other specific individuals. State Request for Recon. at 116-129.

After briefing had concluded in these proceedings, the Office of Federal Acknowledgment (OFA) filed a submission with the Board, offered as "technical assistance," taking the position that the FD "is not consistent with prior [acknowledgment case] precedent in calculating the rates of marriages under [25 C.F.R. §] 83.7(b)(2)(ii)[,] provides no explanation for the inconsistency[, and] there is no evidence that the [FD] intended to deviate from precedent." OFA Supp. Transmittal at 2-3. OFA also stated that "there is a material mathematical error in the calculations for 1841-1850, which when corrected lowers the calculation to less that 50%, whether or not the proper interpretation of the regulations is to calculate "marriages" or "members." Id. at 3. Based on these problems with the FD, OFA stated that "[t]he analysis under 83.7(b)(2)(ii) in the [FD] and the carryover under 83.7(c)(3) * * * should not be affirmed on these grounds absent explanation or new evidence." Id.

In response to OFA's submission, STN filed a motion requesting that if the Board intended to accept and rely on OFA's submission, it should first convene the parties and have OFA "explain[] its methodology and assumptions in analyzing STN marriage rates, clarif[y] its prior and current interpretations of 25 C.F.R. § 83.7(b)(2)(ii), and explain[] how applying its current interpretation would affect the outcome of its analysis of 19th Century STN endogamy." STN Motion for Clarification at 6. OFA, in reply, asserts that STN's request for technical assistance goes beyond what would be appropriate for the proceedings before the Board, but appears more appropriate in the context of a reconsidered final determination, if the Board remands the case or if, following a referral by the Board, the Secretary requests reconsideration. OFA Response to STN Motion for Clarification at 2.

---

7/(...continued)
the purpose it is offered here. On reconsideration, the Assistant Secretary can determine the appropriateness of considering STN's new evidence.

Because we are already vacating and remanding the FD to the Assistant Secretary for reconsideration based on <u>Historical Eastern Pequot Tribe</u>, and because OFA has acknowledged problems in the FD's endogamy rate calculations — at a minimum, inadequate explanation — we conclude that this matter is best left to the Assistant Secretary on reconsideration. We do not decide whether the State's challenges to the endogamy rate calculations would otherwise fall within the Board's jurisdiction under 25 C.F.R. § 83.11(d). On reconsideration, the Assistant Secretary will have to address this issue, taking into account the submissions of the parties in this proceeding, and may consider STN's request for technical assistance, as appropriate.

The State also argues that the remaining direct evidence used in the FD to support its findings of community and political influence and authority for STN in the nineteenth and twentieth centuries is insufficient to sustain such a finding and is unreliable, and that the FD relied on such evidence in an arbitrary and highly selective fashion. <u>See, e.g.</u>, State Request for Recon. at 3, 8, 68-74, 136-143.

The Board concludes that these allegations are best left for the Assistant Secretary to consider and address on remand, as appropriate. First, with few if any exceptions, the time periods relevant to the evidence discussed by the State are ones for which the FD relied upon state recognition or endogamy rates. Reconsideration of the FD based on those two issues may affect the analysis of either the sufficiency or probative value of other evidence for those time periods, particularly if additional or other evidence is taken into account. Second, to the extent the State alleges that the direct evidence is insufficient to sustain the FD's finding of community and political authority for STN, the Board does not have jurisdiction to review the sufficiency of otherwise reliable and probative evidence. Third, even if the Board were to attempt to analyze the reliability and probative value of the evidence discussed by the State, it would be speculative in this context to determine whether the evidence constituted a "substantial portion" of the evidence relied upon. <u>See</u> 25 C.F.R. § 83.11(d)(2); <u>Historical Eastern Pequot Tribe</u>, 41 IBIA at 21-22.

Next, the State contends that the FD impermissibly departed from precedent and the regulations in considering, as part of STN's base membership roll, individuals who had not specifically assented to or been accepted as members. State Request for Recon. at 13, 156-167. This argument is related to arguments raised by SIT and the Coggswell Group, which are discussed below.

For the FD, STN submitted two "membership" lists. One, a certified membership list, included 271 members. 69 Fed. Reg. 5574 col. 1. 8/ A second list included the names of 42 individuals, who were described as "unenrolled tribal community members." Id. The FD accepted both lists as jointly comprising STN's base membership.

Whether the regulations require that the base membership role of a petitioner must consist solely of individuals who are currently enrolled in the group is not an issue that is within the scope of the Board's jurisdiction. Therefore, we refer this allegation to the Assistant Secretary.

The State also alleges that the FD improperly determined that the Schaghticoke Tribe was an amalgamation or continuation of two pre-existing tribes, the Weantinock and Potatuck. State Request for Recon. at 167; see 69 Fed. Reg. at 5572 col. 3. The State discusses what it characterizes as "new evidence," contends that the FD ignored evidence in the record, and argues that the evidence either is insufficient to sustain the FD or conflicts with the FD. State Request for Recon. at 168, 175.

Although the State's arguments concerning this issue invoke the language of the Board's jurisdiction — e.g., unreliable evidence, new evidence, inadequate research — in substance the State challenges the FD's analysis of the evidence, failure to address conflicting evidence in the record, and the sufficiency of the evidence relied upon. The Board concludes that it lacks jurisdiction over these allegations, and refers them to the Assistant Secretary. 9/

Finally, the State contends that there is no proper delegation of authority from Congress for BIA to recognize a group as an Indian tribe. As we conclude in Historical Eastern Pequot, 41 IBIA at 27, that issue is not within the Board's jurisdiction. Therefore, we refer it to the Assistant Secretary.

---

8/ As originally issued, the SCE FD and Federal Register notice describe STN's certified membership list as having "273 members," but an errata sheet added to the SCE FD in the record states that the correct number is 271.

9/ Even assuming the Board could assert jurisdiction over some of the State's allegations regarding this issue, we would still be inclined to abstain and refer them to the Assistant Secretary, in light of the remand on other grounds and in the interest of administrative efficiency. Although we express no opinion whether existing or additional evidence may be sufficient to support a favorable reconsidered final determination for the time periods affected by the remand to reconsider state recognition and endogamy rate calculations, if that is not the case, it may be unnecessary for the Department to consider additional issues raised in the requests for reconsideration.