UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. H-85-1078(PCD) |
| v. | ) | |
| | ) | |
| 43.47 ACRES OF LAND, MORE OR LESS, | ) | |
| SITUATED IN THE COUNTY OF | ) | |
| LITCHFIELD, TOWN OF KENT, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-98-CV 01113 (PCD) |
| v. | ) | |
| | ) | |
| KENT SCHOOL CORPORATION, INC., et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-00-CV 0820 (PCD) |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA AND | ) | |
| THE CONNECTICUT LIGHT AND | ) | |
| POWER COMPANY, et al | ) | |
| Defendants. | ) | August 26, 2005 |

**SCHAGHTICOKE TRIBAL NATION'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER OF FRANCELIA JOHNSON, THE MOTION FOR PROTECTIVE ORDER OF TOWN OF KENT, THE MOTION FOR PROTECTIVE ORDER OF CONNECTICUT LIGHT AND POWER COMPANY AND KENT SCHOOL CORPORATION, INC., AND THE MEMORANDUM OF UNITED STATES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

**I. Introduction.**

**ORAL ARGUMENT REQUESTED**

-2-

The Schaghticoke Tribal Nation ("STN" or "Tribe") submits this memorandum of law in opposition to the Motion of Francelia Johnson ("Johnson") to Quash Subpoena and for Protective Order, dated August 4, 2005. The Tribe also submits this memorandum in opposition to the Motion for Protective Order of the Town of Kent,[1] the Motion for Protective Order of the Connecticut Light and Power Company ("CL&P") and Kent School Corporation, Inc. ("Kent School"), and the Memorandum of the United States in Support of Motion for Protective Order,[2] all of which were dated August 5, 2005. For the purposes of this Memorandum, these motions will be collectively referred to as the "Motions to Quash."

The current dispute centers on STN's efforts to depose Johnson and get her to produce genealogical and historical records in her possession. STN did not become aware that these records exist until June 29, 2005. On that date, the Hartford Courant published an article in which Johnson admitted that she possesses these records, and stated that she was not interested in providing them to STN because they "piss me off." Specifically, the Hartford Courant article stated:

> In the chilly living room at the Swift House, home to the Kent Historical Society, where aging Schaghticoke baskets sit in a cabinet beside the arrowheads and fading pictures in small frames, [Johnson] takes out some of her Indian notebooks. The ones whose contents never quite made it into her book.
>
> There are pages of Kilsons, Harrises and Coggswells, birth certificates and sketches of cemeteries, newspaper obituaries, notes copied out of centuries-old ledgers.
>
> \*   \*   \*
>
> She's been watching the genealogists and anthropologists who show up at town hall and the historical society to look for the clues they hope will prove a tribe's survival.

---

[1] The Town of Kent's Motion states that it supports and endorses the motions filed by Johnson and CL&P and Kent School.

[2] The United States' Memorandum states that it joins with the reasons set forth in the motion filed by CL&P and Kent School.

> But these Schaghticokes who come from outside are trying to seize a part of her Kent and they won't get there through her research.
>
> "I haven't made too much an effort to be too nice to them," she says. <u>If she does have any genealogical information on Schaghticokes, "which I know I do, I'm not about to give it up. Because they piss me off. They came in with an attitude and I don't like it.</u> So far they haven't done much for the town other than agitate them, spend my money."

(See Exhibit 1, Rick Green, "The Battle of Kent: Part Four," <u>Hartford Courant</u>, June 29, 2005) (emphasis added) The records discussed in the article are highly relevant to the Tribe's history – which is crucial to the federal recognition process. Given Johnson's admission, her deposition and the disclosure of these records are required to protect the interests of justice and promote a fair resolution of these consolidated cases.

Accordingly, for the reasons set forth below, STN requests that the Court deny the Motions to Quash. To the extent Johnson's Subpoena is not contemplated under the Court's last Order to lift the stay to permit limited discovery, STN respectfully requests that the Stay be lifted to allow STN to review these important documents in Johnson's possession prior to the October 12, 2005 decision date by the Secretary of the Interior.

## II. Background.

### A. The Amended Scheduling Order.

The Amended Scheduling Order issued by the Court in these consolidated cases governs the STN's petition for tribal acknowledgment pending before the Bureau of Indian Affairs ("BIA"). <u>United States v. 43.47 Acres of Land</u>, Scheduling Order (D.Conn. May 8, 2001), as subsequently amended [hereinafter, "Amended Scheduling Order"]. Through this Order, the Court has monitored and exercised control over the BIA's consideration of the STN's recognition petition in connection with its land claims in the three pending cases. The recognition process is a daunting one, requiring burdensome and exhaustive research and

analysis. The BIA and the Office of Federal Acknowledgment ("OFA"), with their research expertise in this field, are charged, through their rules and procedures (such as the technical assistance meeting), with guiding Indian tribes through the difficult recognition process. See e.g., 25 C.F.R. § 83.10(b), (c)(1) and (j)(1).

### B. Relevant Administrative Proceedings.

On February 5, 2004, in accordance with Paragraph (h) of the Amended Scheduling Order, the Department of Interior published its Final Determination. That Final Determination announced the Department's intent that STN be acknowledged as an Indian Tribe under federal law, which would entitle the Tribe and its members to the full status and benefits of all other federally-recognized tribes and their members.

Thereafter, as required by Paragraph (j) of the Amended Scheduling Order, the parties and amici engaged in further negotiations regarding whether to implement administrative review through reconsideration before the Interior Board of Indian Appeals ("IBIA") (25 C.F.R. § 83.11) or whether subsequent review would be accomplished instead before the District Court under the Administrative Procedure Act ("APA") (5 U.S.C. §§ 551 et seq.). The parties and amici agreed that the IBIA review procedures would be followed first and that any additional review under the APA would be filed in the District Court after the IBIA decision is final and effective.[3] Five timely requests for reconsideration were subsequently filed with the IBIA by the

---

[3] Upon the joint request of the parties and amici, the Court amended Paragraph (k) of the Scheduling Order to read as follows:
> (k) Any request for judicial review of the final decision under the [APA] by any party or amici to these cases shall be filed within 90 days of its effective date and shall be filed in this court as a case related to the above-captioned cases.

(Amended Scheduling Order, February 27, 2004)

deadline of May 5, 2004. The Tribe's response, opposing all of the requests for reconsideration of the positive determination, was timely filed on November 29, 2004.

Three days <u>after</u> the Tribe's response was due, OFA filed an unprecedented "Supplemental Transmittal" memorandum calling into question its own Final Determination. (<u>See</u> Exhibit 2, Supplemental Transmittal) Specifically, it questioned the endogamy analysis that it used in the Final Determination to support its finding that the Tribe had met the burden of proof for the community and political authority criteria of the recognition regulations. OFA provided no explanation for its change in position and no clear statement of how this position would affect the ultimate disposition of the matter.

The Supplemental Transmittal explains that OFA may have unintentionally deviated from "prior precedent in calculating the rates of marriages under 83.7(b)(2)(ii) . . ." for the Schaghticoke's endogamous marriage rates for part of the 19th Century. (<u>See</u> Exhibit 2 at pp. 2-3). In light of this alleged mistake, the Supplemental Transmittal concludes that the "analysis under 83.7(b)(2)(ii) in the Summary [under the Criteria for the Final Determination] . . . should not be affirmed on these grounds absent explanation or new evidence." <u>Id.</u> at 3.

On May 12, 2005, the IBIA issued a decision to vacate and remand the original positive Final Determination to the Assistant Secretary for Indian Affairs. Following this decision, STN renewed its request for technical assistance and an opportunity to confront and respond to the OFA's new analysis. By letter dated May 23, 2005, the Acting Principal Deputy Assistant Secretary-Indian Affairs ("AS-IA") set forth a restrictive set of procedures that would govern the Reconsideration on remand from the IBIA.

STN moved to modify these restrictive procedures. In response, the BIA suggested revisions to provide for more input by the parties. On July 23, 2005, the Court entered an Order that amended the Scheduling Order to allow for these revised remand procedures.

These procedures included:

- The OFA shall provide a technical assistance letter to the parties on or before July 14, 2005;

- On or before July 25, 2005, the parties may submit to OFA "historical documents or historical evidence concerning marriages of Schaghticoke members or other historical documents or historical evidence supporting criterion (c) [political authority] during the nineteenth century, as well as any specific document(s) requested in the technical assistance letter."

- Parties may submit briefs on or before August 12, 2005, not to exceed 25 pages providing argument and analysis. No new evidence may be submitted with the briefs.

- The Assistant Secretary shall extend the time frame for issuing the reconsidered decision on or before October 12, 2005.

As noted above, on June 29, 2005, immediately before the deadlines for the submission of evidence and briefing, STN learned from the article in the Hartford Courant that Johnson had information and documents that are directly relevant to the Tribe's history – which is the specific issue in the remand proceedings.

Given Johnson's bold admission that she knew she had genealogical information on Schaghticokes and the impending deadlines in the remand proceedings, STN needed to quickly determine the specific information and documents in Johnson's possession. On July 16, 2005, in the separate state action of Eastlander Group v. Schaghticoke Tribal Nation, STN served a

deposition notice on Johnson. Johnson opposed the Notice of Deposition. Through her attorney,[4] she appeared to propose to produce a "preliminary compilation" of the documents under certain conditions. Eastlander and STN then attempted to resolve the matter with Johnson's counsel, Attorney Sienkiewicz,[5] but those attempts were futile. An agreement could not be reached by the deadline for the submission of evidence – July 25, 2005.

Nonetheless, the deadline for filing relevant agency briefs had not yet expired – August 12, 2005. On July 29, 2005, STN issued the Subpoena at issue here to Johnson. (See Exhibit 4). Johnson again resisted. Counsel for STN, Attorney Wiechmann, attempted to resolve the issues with Attorney Sienkiewicz. Attorney Wiechmann indicated to Attorney Sienkiewicz that if Mrs. Johnson had documents relevant to STN's history, which is a central issue in the remand proceedings, it was crucial to have those documents before the remand proceedings moved forward. To alleviate Johnson's concerns about being overly burdened with the document review, Attorney Wiechmann proposed to limit the scope of the request and have one of STN's experts review the documents while an attorney was present. Johnson did not accept this practical proposal.

Instead, on August 4, 2005, Johnson filed her Motion to Quash. Attorney Sienkiewicz, who is also the attorney for the Town of Kent, was well aware that the August 12, 2005 deadline for briefing would pass before the Motion could be resolved. The following day, on August 5, 2005, the Town of Kent, CL&P and Kent School, and the United States filed their own Motions for Protective Order all of which contain the same or similar arguments as those in Johnson's Motion.

---

[4] Johnson's attorney also happens to be the attorney for the Town of Kent, and was supplied and paid for by the Town of Kent.

[5] Indeed, STN offered to incur the costs for the expedited copying of some of the documents so that all parties could meet the July 25, 2005 deadline. (See Exhibit 3, Attorney Fornaciari's letter to Attorney Sienkiewicz, dated July 22, 2005)

## III. Argument.

### A. The Subpoena Is Reasonably Calculated To Lead To Admissible Evidence Concerning STN's History That Is A Crucial Issue Under The BIA's Remand Procedure.

The deponent argues, among other things, that the Subpoena seeks information that is not relevant to these land claim cases. Rather, she posits that they are only relevant to STN's "ancillary petition for federal acknowledgment now pending before the [BIA]." (See Johnson's Brief, at 9) This attempt to disconnect the two proceedings not only demonstrates a misunderstanding of the cases, but is also disingenuous. Johnson's attorney has been representing the Town of Kent as a party to this litigation for many years. Her attorney is thus well aware that the threshold issue in these land claim cases is STN's status as a federally recognized tribe. Because the BIA has expertise in this area, the Court has deferred to it for a determination on that issue. Accordingly, any of Johnson's documents concerning the STN's history is relevant to STN's status as a federally recognizable tribe and therefore also relevant to these land claims.

In general, discovery is allowed "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The term "relevance" is broadly construed, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.; Hildebrand v. Wal-Mart Stores, Inc., 194 F.R.D. 432, 434 (D. Conn. 2000) ("Reasonably calculated in Rule 26 means any possibility that the information sought may be relevant to the subject matter of the action.") See also, Yancey v. Hoote, 180 F.R.D. 203, 207 (D. Conn. 1998) (noting that "[A] valid discovery request need only encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.") Further, "a

court may issue a protective order only after the moving party demonstrates good cause. To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." LaPlante v. Estano, 228 F.R.D. 115, 116 (D. Conn. 2005) (citations omitted).

Applying these principles to the instant case, STN's discovery requests are clearly relevant and have reasonable limits. All of the requests are limited to documents concerning Schaghticoke Indians or their ancestors. The document requests ask for the following:

> 1. Any and all documents, including, but not limited to, records, books, notebooks, loose-leaf notebooks, notes, ledgers, birth certificates, cemetery sketches, obituaries, genealogical trees, marriage licenses or other references to marriages and any and all other writings or documents or historical, genealogical or other information in your possession or custody or under your control concerning any Schaghticoke indian or any person of any Schaghticoke ancestry, whether alive or dead, including without limitation notebooks containing genealogical information relative to Kilson, Harris and Coggswell families and any other Schaghticoke indians or persons of any Schaghticoke ancestry.
>
> 2. Any and all documents or material concerning marriages involving any Schaghticoke indian or any person of any Schaghticoke ancestry during the first half of the 19th century.
>
> 3. Any and all documents or material concerning marriages, births, burial locations, death, children, divorces, church affiliations for any indian residing in Kent, Connecticut or neighboring towns, including those names listed in attachment 1.
>
> 4. Any and all documents or material referencing names of Schaghticoke tribal leaders or spokesmen for the first half of the 19th century.
>
> 5. All documents and material comprising the Preliminary Compilation, as defined herein and in attachment 2.

It is undisputed that Johnson possesses genealogical information about the Tribe that has not been published and which she has refused to disclose voluntarily. The Tribe needs this information since it is directly relevant to the reconstruction process presently before the BIA. In

particular, this information may affect the OFA's conclusion regarding Schaghticoke endogamous marriage rates for the first half of the 19th Century.

Further, even if the OFA chooses not to accept this information as the record is now closed and briefs have already been submitted in the remand procedure, any evidence Johnson may have might be pertinent during a possible APA review by this Court. STN has a fundamental right to meaningful participation in the BIA process evaluating the Tribe's Petition for Federal Acknowledgment, including any APA review. The document requests are relevant and reasonably limited to STN's history which is central to the resolution of these cases. To hold otherwise would undermine the purpose of the agency's recognition process.

### B. The Subpoena Does Not Impose An Undue Burden Upon Johnson.

Every subpoena and deposition imposes some burden on the responding party. A party moving to quash or modify the subpoena on the grounds that it is too burdensome must prove that a search for information would be <u>unduly</u> burdensome. Croom v. Western Connecticut University, 218 F.R.D. 15 (D.Conn. 2002) (quoting Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C.Cir.1984)). Additionally, Rule 45(c), which delineates the circumstances that justify quashing a subpoena, was "not intended to diminish rights conferred by Rules 26-37." See Fed. R. Civ. P. 45 (1991 amendment) advisory committee's note; see also In re PE Corp. Securities Litigation, 2005 WL 806719 at *7 (D. Conn. 2005) (attached)[6]; Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1023 (Fed.Cir.1986) (noting that Rule 45 must be read in light of Rule 26(b)); 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2452 (1995).

---

[6] A copy of all unpublished cases cited in this Memorandum are attached in alphabetical order at Exhibit 5.

Additionally, a deponent may not, as the deponent attempts to do in the case at bar, rely upon the mere assertion that complying with discovery will be burdensome.

> ...one must do more than simply intone the familiar litany that the interrogatories are burdensome, aggressive or overly broad. Instead, the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.

In re PE Corp., 2005 WL 806719 at *7 (D. Conn. 2005) (citations omitted).

Here, Johnson has offered no evidence showing the efforts that would be required to comply with these requests. Indeed, Johnson holds herself out as an "amateur" historian and one would expect that she is intimately familiar with her records. (See Johnson's Brief, at 5) Yet, no mention is made concerning how many boxes, feet or inches of documents are involved. Further, STN's Subpoena is both limited in time and scope looking for records for one small portion of the Town of Kent's population. It is also limited to information already in Johnson's possession, custody or control which has already been obtained and apparently is kept in notebooks or other easy to locate formats. Johnson has been aware of this request for information since the date of STN's Notice of Deposition on July 16, 2005. (See Exhibit 6).

It should also be noted that STN has and continues to be amenable to discussing ways to ease Johnson's burdens. Before Johnson filed her Motion to Quash, STN offered several compromises, including having one of its experts review the documents with an attorney present. STN remains open to this or other similar options.

### C. **Johnson Has Failed To Demonstrate That The Information Should Be Protected As Confidential Information.**

Johnson makes the bald assertion that the information sought is confidential. Johnson, however, has failed to demonstrate that the subpoena seeks confidential information. Accordingly, the Motions to Quash should be denied under Fed. R. Civ. P. 45.

Johnson argues that to the extent her documents are based on her research, investigations, collection and compilations, those documents are confidential. Merely because a party would like to keep information confidential does not mean that a court, which must weigh the rights of all the litigants will honor that request. LaPlante, 228 F.R.D. at 117. Rather, the party opposing disclosure must demonstrate that the need for confidentiality outweighs the requesting party's need for the material. "[B]ald assertions of confidentiality…are insufficient for a court to enter a protective order." Ahern v. Trans Union LLC Zale Corp., 2002 WL 32114492 at *4 (D. Conn. 2002) (attached).

Here, STN's need for the material clearly outweighs Johnson's need for confidentiality. There is no doubt that the information in Johnson's possession – genealogical and historical records regarding Schaghticokes – is directly relevant to the Tribe's efforts to become federally recognized. Johnson's confidentiality claim seems like it is calculated more to protect the Town of Kent and the other parties to this litigation than it is to protect any personal interest in confidentiality. This is not surprising considering that she is represented by the same attorney as the Town of Kent. Moreover, even if the information sought contains private information, the Court can fashion a confidentiality order that protects such information. If necessary, such an order could contain an "attorneys' eyes only" provision as to particularly sensitive material.

## D. The Documents Requested Fall Within The Scope Of The Court's Order Lifting the Stay.

As set forth above, Johnson's records, by her own admission, appear to be highly relevant to the issue presently being considered by OFA and the Assistant Secretary of the Department of Interior. Her records most likely include some information that would be directly responsive to the supplementation of the BIA record allowed by the Court in its July 23, 2005 Order. Information establishing the continued existence of a Schaghticoke Tribe in Kent during the first half of the nineteenth century.

The defendants concede that there is no time limit on discovery directed to third parties such as Johnson. They argue that such a limitation should be implied from the Court's ruling allowing submission of new evidence by July 25, 2005 and submission of final briefs by August 12, 2005.[7] However, they ignore the fact that the information in Johnson's possession can still be used in this process. First, the decision made by the Department of Interior is subject to an Administrative Procedures Act review by this Court. Such information might be of great assistance at that time. Second, there is nothing in this Court's most recent order or the BIA's regulations that prevents the BIA from requesting and considering additional information. As the information requested and the issue being considered are both very focused, there is no reason to believe such information if considered by the BIA would delay the BIA process.

---

[7] It must be noted that if Johnson had replied to the deposition notice and subpoena on August 8, 2005 at least the parties would have had the information to clarify and interpret the information contained in the record relating to the tribal marriage rates in the early 1800's. The defendants focus a significant portion of their August 12, 2005 briefs to the OFA on speculating why certain individuals in overseer and other records should not be considered Schaghticoke Indians and why various marriages should not be considered endogamous. Clearly, Johnson's records could have helped in this regard, but the defendants did not want this information used. Why? It is just another example of their game playing instead of a search for the truth or a fair decision.

-13-

### E. If the Subpoena Of Johnson Is Found To Be Beyond The Scope Of Discovery Allowed By The Court's Last Order Lifting The Stay, The Court Should Lift The Stay To The Extent Necessary To Allow The Subpoena.

Even if the Court finds that the Subpoena of Johnson is not contemplated under its last Order lifting the stay to permit discovery, STN respectfully requests that the Stay is lifted to allow the Subpoena. The information sought is limited, and it would not prejudice any party to this action. Indeed, if relevant information is found, it may be needed during any potential APA review by this Court. Therefore, the interests of justice and fairness dictate that Johnson's deposition proceed as soon as possible.

### Conclusion

Based on the foregoing, STN requests that the Court deny the Motions to Quash. Further, to the extent necessary, STN requests that the Court lift the stay to allow the Subpoena of Johnson.

THE PLAINTIFF/DEFENDANT
SCHAGHTICOKE TRIBAL NATION
BY MCCARTER & ENGLISH, LLC
ITS ATTORNEYS

By_____
Eric Watt Wiechmann (CT 04331)
Robert J. Gallo (CT 19982)
CityPlace I
Hartford, CT 06103
Telephone: (860) 275-6700
Facsimile: (860) 724-3397

<u>Of Counsel</u>:
Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

and

Jerry C. Straus, Esq.
F. Michael Willis, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC  20037

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed, postage prepaid this 26th day of August, 2005 to:

John B. Hughes, Esq.
Chief of Civil Division
United States Attorneys Office
157 Church Street, Floor 23
New Haven, CT 06510

Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

David J. Elliot, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT 06776-0786

Michael J. Burns, Esq.
Law Offices of
Attorney Michael J. Burns
57 Pratt Street
Hartford, CT 06103

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

Perry Zinn Rowthorn, Esq.
Assistant Attorney General
55 Elm Street
P. O. Box 120
Hartford, CT 06141-0120

Richard L. Street, Esq.
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

James R. Fogarty, Esq.
Fogarty Cohen Selby & Nemiroff
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.
Asst. Attorney General
55 Elm Street
Hartford, CT 06141

Thomas A. Gugliotti, Esq.
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, D.C. 20240

Francis J. Collins, Esq.
Tom Beecher, Esq.
Collins Hannafin Garamella, et al.
148 Deer Hill Avenue
P. O. Box 440
Danbury, CT 06810-0440

Ryan E. Bull, Esq.
Baker Botts, LLP
The Warner Building
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004

_____
Eric Watt Wiechmann (CT04331)