# EXHIBIT 5



Not Reported in F.Supp.2d                                                                                       Page 1

Not Reported in F.Supp.2d, 2002 WL 32114492
**(Cite as: Not Reported in F.Supp.2d)**

C
Not Reported in F.Supp.2d, 2002 WL 32114492
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Carleen AHERN
v.
TRANS UNION LLC ZALE CORPORATION
No. 301CV02313 (DJS).

Filed Dec. 11, 2001.
Oct. 23, 2002.

Joanne S. Faulkner , Law Offices of Joanne Faulkner, New Haven, CT, for Carleen Ahern, plaintiff.
Ira W. Bloom , Wake, See, Dimes & Bryniczka , Westport, CT, Bruce Luckman , Satzberg, Trichon, Kogan & Wertheimer, Philadelphia, PA, for Transunion LLC, defendant.
Miles David Newman Esty , Tara M. Barbara , Esty & Buckmir, New Haven, CT, for Zale Corp, defendant.

SQUATRITO, J.
*1 Defendant has not met its burden of showing that the Magistrate Judge's order was clearly erroneous or contrary to law. *See* 28 U .S.C. § 636(b)(1)(A). The specific aspects of the order to which defendant objects are well within the discretion afforded the Magistrate Judge.

Motion to set aside Magistrate's Discovery Ruling Denied.

*RULING ON CROSS-MOTIONS TO COMPEL AND MOTION FOR PROTECTIVE ORDER*

SMITH , Magistrate J.
The plaintiff, Carleen Ahern, has brought this action against the defendant, Transunion, LLC (hereafter " Transunion"), alleging that Transunion violated the Fair Credit Reporting Act ("FCRA"), 15 U.S .C. § 1681 *et. seq.;* the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42-110a *et. seq.;* the Consumer Credit Reports Act ( "CCRA"), Conn. Gen.Stat. § 36a-695; and common law. The parties' cross-motions to compel are pending before the court. In addition, Transunion has moved the court to enter a protective order in this matter. For the reasons set forth below, the plaintiff's motion to compel (Dkt.# 33) is GRANTED in part and DENIED in part and Transunion's motion to compel (Dkt.# 28) and motion for protective order (Dkt.# 37) are DENIED.

*I. THE SCOPE OF PERMISSIBLE DISCOVERY*

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. *See Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991) ; *Morse/Diesel, Inc. v. Fidelity & Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988). A party may not object to a discovery request on the grounds that the information sought will be inadmissible at trial so long as the material requested could lead to other information that may be relevant to the subject matter of the action. *See id.*

A party may object to a request if it is "overly broad " or "unduly burdensome." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2174, at 297 (2d ed.1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.,* 105

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 2
Not Reported in F.Supp.2d, 2002 WL 32114492
**(Cite as: Not Reported in F.Supp.2d)**

F.R.D. 16, 42 (S.D.N.Y.1984). Instead, the objecting party must "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations and quotation marks omitted).

*2 The objecting party may not leave it to the court to "sift each interrogatory to determine the usefulness of the answer sought." *Id.* To the contrary, the claims in the complaint defines the liberal guidelines for determining the relevance of the discovery requests, and the burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections. *Id.*

*II. PLAINTIFF'S MOTION TO COMPEL* FN1

FN1. Plaintiff has not identified Interrogatory Nos. 11 & 13 in her Memorandum of Law in Support of her Motion to Compel pursuant to D. Conn. L. Civ. R. 9(d)(3). Accordingly, the Court denies plaintiff's motion as to these interrogatories.

A. Discovery Requests Not Objected to:
Interrogatory No. 10

Plaintiff asserts that Transunion has failed to respond to Interrogatory No. 10. Transunion did not object to this interrogatory. In addition, Transunion has not sought an extension of time to produce its response. No objection having been made, *see Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir.1992) ; *Smith v. United States,* 193 F.2d 201, 207 n. 19 (D.Del.2000) (failure to object results in waiver of objection), and no argument having been offered in opposition to plaintiff's motion, see Rule 9(a) 1 Local Rules of Civil Procedure ("[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion ...."),

the motion to compel is granted as to this item.

B. Disputed Requests For Production

*1. Requests for Production Nos. 14, 15, & 22*

Although Transunion objected to these requests in its initial response, the production requests are not opposed in Transunion's opposition papers. Absent objection, the court orders Transunion to comply with these production request.

*2. Requests for Production Nos. 6 & 12*

In Request for Production No. 6 the plaintiff seeks copies of all judgments, court opinions, complaints, and consent orders concerning Transunion's practices under the FCRA in or after the year 1997. Contrary to Transunion's objection, this request is not overbroad, vague, ambiguous or unduly burdensome; nor is the requested information not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff's request is reasonably limited as to scope and time. The material sought is clearly relevant to the state of mind with which Transunion acted. It is also relevant to whether Transunion alleged statutory violations occurred after it had actual notice that its practices were actionable. While it may be burdensome to require Transunion to compile and permit discovery of the various legal complaints and judgments against it from 1997 to the present, surely these documents are not so voluminous that it is an unreasonable or unfair burden for defendant to shoulder.

In Request No. 12, the plaintiff requests formal and informal complaints, demands, or settlements concerning Transunion's furnishing or reporting information about an individual on someone else' credit file, involving identity theft. While the court concludes that it is permissible to permit discovery into formal complaints filed against Transunion regarding identity theft, it would be improper for the court to allow the production of informal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2002 WL 32114492
**(Cite as: Not Reported in F.Supp.2d)**

documents containing sensitive information of third parties. Accordingly, Transunion is ordered to produce all judgments, court opinion and orders, complaints, consent orders, and non-confidential settlement agreements involving itself and identity theft matters that are of *public record.*

*3. Request for Production No. 16*

**\*3** Plaintiff also seeks financial material from Transunion including, all documents in and since January 2001 showing Transunion's net worth. Transunion has agreed to provide this information under seal with the Court to be held pending the disposition of a motion for summary judgment and/or directed verdict. Transunion's objection as to this request is not unreasonable and, therefore, is sustained. The court orders that Transunion shall produce this material under seal to be held pending a motion for summary judgment and/or directed verdict. Transunion shall provide this information to the plaintiff within one week after the court rules on any and all dispositive motions. Thereafter, the plaintiff is free to use such information at trial.

*4. Requests for Production Nos. 11, 17, 18, & 19*

Transunion contends that the court should strike these requests because the plaintiff has failed to make such a claim in this action. Transunion states that it should not be required to produce these documents because the plaintiff's information was properly sent to one of the entities in question. The plaintiff contends that these requests relate to Transunion's furnishing information to entities which had no permissible purpose. In addition, the plaintiff states that questions remain as to other entities which allegedly had no permissible purpose. The court orders that Transunion produce these documents. Moreover, Transunion has completely failed to substantiate its original objection to producing these documents and is not free to raise in its brief-almost as an afterthought-entirely new objections which it did not assert earlier. *Davis v. Fender,* 650 F.2d 1154, 1160 (9th Cir.1981) ; *Eureka Financial Corp. v. Hartford Act. and Index. Co.,* 136 F.R.D. 179 (E.D.Cal.1991).

*III. TRANSUNION'S MOTION FOR PROTECTIVE ORDER*

The plaintiff seeks a response to Interrogatories Nos. 14, 15, 16, & 18 as well as the production of documents corresponding to Request for Production No. 3. Transunion contends that its resistance to answering these interrogatories and producing the requested documents is based upon issues of confidentiality and "serious and substantial business concerns to avoid unfair competitive advantage in the industry." Accordingly, Transunion moves the court to enter a protective as to the discovery material in question.

A court need not grant a protective order unless it is satisfied that the order is being sought for an actual trade secret or confidential business information and that there is good cause for the protective order. Rule 26(c) of the Federal Rules of Civil Procedure, which authorizes the issuance of protective orders, provides that such an order may be issued in connection with discovery necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). As a prerequisite to the issuance of such a protective order, Rule 26(c) requires a showing of "good cause." Once good cause has been demonstrated, the burden then shifts to the party resisting the issuance of the order to show why the court should allow free dissemination of the disputed discovery materials. *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 300-01 (N .D. Ill.1993) (citation omitted).

**\*4** In addition, blanket protective orders, without a showing of specific harm from disclosure, are rarely justified. *See e.g., Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir.1992) ("Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test.") In addition, **bald assertions** of confidentiality, such as a statement by a movant that disclosure could harm the movant's competitive position, are insufficient for a court to enter a **protective order**.

In the present case, Transunion has not substantiated its assertion that the material it seeks

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 4
Not Reported in F.Supp.2d, 2002 WL 32114492
**(Cite as: Not Reported in F.Supp.2d)**

to protect is either confidential or a trade secret. Nor has Transunion cited specific examples, or articulated reasoning, indicating it will suffer harm if the court does not enter a protective order in this case. Even assuming that the material contains confidential information, Transunion not demonstrated that it has met the good cause standard required by Rule 26(c).

It is apparent that Transunion failed to seek a protective order when the plaintiff originally sought the discovery material at issue. Transunion now attempts to circumvent the plaintiff's motion to compel and its discovery obligations as mandated by the Federal and Local Rules of Civil Procedure by seeking a protective order. The court finds that the requested information is relevant in this case. That Transunion considers documents proprietary and confidential falls short of establishing grounds for a protective order or any recognized immunity from discovery. More than a mere assertion is required to perfect an exemption or immunity from discovery. *See e.g., Baxter International, Inc. v. Abbott Laboratories,* 297 F.3d 544, 547 (7th Cir2002). Accordingly, the Transunion's motion for a protective order (Dkt.# 37) is DENIED and plaintiff's motion to compel as to Interrogatories Nos. 14, 15, 16, & 18 as well as the production of documents corresponding to Request for Production No. 3 is GRANTED.

*IV. TRANSUNION'S MOTION TO COMPEL*

Transunion has not provided the court with a " specific verbatim listing of each of the items of discovery sought" as required by D. Conn. L. Civ. R. 9(d)(3). In addition, Transunion's memorandum also fails to follow each specification with the reasons why the item should be allowed. D. Conn. L. Civ. R. 9(d)(3). While it appears that Transunion offers some reasons for the requested material, the memorandum as a whole fails to comply with Rule 9 . Accordingly, Transunion's motion to compel (Dkt.# 28) is DENIED.

*V. CONCLUSION*

For the aforementioned reasons, the plaintiff's motion to compel (Dkt.# 33) is GRANTED in part and DENIED in part and Transunion's motion to compel (Dkt.# 28) and motion for protective order (Dkt.# 37) are DENIED. The defendant is ORDERED to produce the aforesaid information and material to plaintiff within twenty (20) days hereof. At the conclusion of this case, or upon application, the plaintiff is free to seek an award of attorney's fees in connection with successful prosecution of her motion to compel. *See* Fed.R.Civ.P. 37.

**\*5** This is not a recommended ruling. This is a discovery ruling and order which can be reviewed pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A) ; Fed. R. Civ.P. 6(a) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court unless reversed or modified by the district judge upon motion timely made.

IT IS SO ORDERED.

D.Conn.,2002.
Ahern v. Trans Union LLC Zale Corp.
Not Reported in F.Supp.2d, 2002 WL 32114492

Briefs and Other Related Documents (Back to top)

• 3:01CV02313 (Docket) (Dec. 11, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2005 WL 806719 (D.Conn.)
**(Cite as: 2005 WL 806719 (D.Conn.))**

Page 1

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
In re PE CORPORATION SECURITIES LITIGATION.
No. 3:00 CV 705 CFD TPS.

April 8, 2005.

Brian C. Fournier, Hurwitz Sagarin & Slossberg, Milford, CT, Carlos F. Ramirez, Milberg Weiss Bershad & Schulman-Ny, New York, NY, David A. Slossberg, Hurwitz Sagarin & Slossberg, Milford, CT, Elias A. Alexiades, New Haven, CT, J. Daniel Sagarin, Hurwitz Sagarin & Slossberg, Milford, CT, Lee A. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY, Margaret E. Haering, Hurwitz & Sagarin, Milford, CT, Sanford P. Dumain, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY, Marvin L. Frank, Murray Frank & Sailer, New York, NY, Jeffrey S. Nobel, Schatz & Nobel-Htfd, Hartford, CT, for Plaintiffs.

Kevin D. Lewis, Michael J. Chepiga, Simpson, Thacher & Bartlett, New York, NY, Michael P. Shea, Day, Berry & Howard-Htfd-Ct Cityplace I, Hartford, CT, Robert A. Bourque, Simpson, Thacher & Bartlett, New York, NY, Stanley A. Twardy, Jr., Terence J. Gallagher, III, Thomas D. Goldberg, Day, Berry & Howard, Stamford, CT, William M. Regan, Simpson, Thacher & Bartlett, New York, NY, for Defendants.

John B. Hughes, New Haven, CT, for USA.

***RULING ON PLAINTIFFS' MOTION TO COMPEL***

THOMAS P. SMITH, Magistrate Judge.

*1 The lead plaintiffs, David Berlin and Vinh Voung, on behalf of a class consisting of all persons other than the defendants who purchased the common stock of PE Corporation-Celera Genomics Group ("Celera") in a February 29, 2000 secondary public offering conducted by PE Corporation ("PE"), commenced this shareholder action against the defendants, PE and certain officers and directors, alleging that the registration statement and prospectus prepared in connection with the secondary public offering were false and misleading because Celera did not disclose failed negotiations between it and the federally-funded Human Genome Project ("HGP") in violation of sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Pending before the court is the plaintiffs' Motion to Compel the Testimony of Dr. Francis Collins, and to extend the discovery deadline solely for the purpose of conducting this deposition. **(Dkt.# 112)**. The plaintiffs' motion is **GRANTED** and the discovery deadline is hereby extended forty-five days from the date of this ruling for the purpose of conducting this deposition.

**BACKGROUND**
Celera, a subsidiary of PE, began sequencing the human genome in 1999. (Am.Compl.¶¶ 7, 17). Its strategy was to sequence the genome and then "use the genomic information derived from its genomic sequencing program as a platform upon which to develop an integrated information and discovery system." (*Id.* ¶ 20). To implement this strategy, Celera required exclusive patent protection for a period of five years. (*See id.* ¶ 25). By January 2000, it announced that it had sequenced 90% of the human genome. (*Id.* ¶ 17).

At the same time, other companies were pursuing the same ends; most significantly, the HGP, "a worldwide coordinated effort ... sponsored by governments and nonprofit organizations in the United States, England, Japan, and France, among other nations." (*Id.* ¶ 18). The HGP intended to make its findings publically available. As such, a "race" to map the human genome ensued. (*Id.* ¶ 19). Because Celera's competitive position was dependant upon its ability to obtain patent protection, it entered into discussions with the HGP regarding a possible collaboration on the project. (*Id.* ¶ 21, 24). However, such coaction never materialized. (*Id.*). The plaintiffs argue that because the governments that supported the HGP opposed broad patent protection, such as Celera required, Celera's "ability to obtain protection from the immediate release of the human genome code, in the face of such opposition, was very attenuated and subject to increased and substantial risk." (*Id.* ¶ 26).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

On or about February 29, 2000, PE filed with the Securities and Exchange Commission ("SEC") for a secondary offering. (*Id.* ¶ 32). The prospectus became effective and PE sold over 4 million shares for gross proceeds of approximately $944 million. (*Id.* ¶ 34). While most of the common stock was purchased for $225.00 per share, it has since significantly decreased in value, now selling for approximately eleven dollars. (*Id.*).

*2 Generally, the plaintiffs argue that the registration statement and several sections of the prospectus issued in connection with the secondary offering were materially false and misleading in light of the fact that Celera would unlikely be able to obtain the requisite patent protection due, in large part, to their competition with and inability to collaborate with the HGP. (*Id.* ¶ ¶ 32-48). Specifically, they point to a single undisclosed meeting between senior members of Celera's management and four representatives of the HGP that was held on December 29, 1999 at a hotel near Dulles Airport. (Pl.s' Mem. Supp. Mot. at 1-2). The pending motion seeks to compel the deposition testimony of Dr. Collins, Director of the Human Genome Research Institute, National Institutes of Health ("NIH"), Department of Health and Human Services ("DHHS"), and the lead negotiator for the HGP at this meeting.

On July 2, 2004, the plaintiffs served Dr. Collins with a subpoena to take his deposition under Rule 45 of the Federal Rules of Civil Procedure. (*Id.* at 2). On July 9, 2004, the plaintiffs received a letter from Attorney Paul J. Robertson of the DHHS, which oversees the NIH, advising them of the DHHS's "obligations and responsibilities in proceedings in which the United States is not a party" under 45 C.F.R. Part 2, and referring the plaintiffs to Dr. Elias Zerhouni, Director of the NIH. (Fournier Aff., 10/12/04, Ex. A at 1).

On July 15, 2004, plaintiffs' counsel wrote a letter to Dr. Zerhouni requesting permission to take the deposition of Dr. Collins. (Fournier Aff., 10/12/04, Ex. B). The plaintiffs received a letter dated August 6, 2004 from Dr. Raynard S. Kingston, Deputy Director of the DHHS, denying their request due to their purported failure "to demonstrate how Dr. Collins' testimony will promote the objectives of the [DHHS]" and to "sufficiently explain why the testimony sought from Dr. Collins is not available through other means." (Fournier Aff., 10/12/04, Ex. C at 1).

In a letter dated August 20, 2004, plaintiffs' counsel requested that the DHHS reconsider its denial of their request, claiming that the testimony sought from Dr. Collins could not in fact be obtained from any other source. (Fournier Aff., 10/12/04, Ex. D). The plaintiffs supported their claim with the deposition testimony of Dr. Robert Waterston, another HGP participant in the negotiations with Celera, who testified, among other things, that Dr. Collins was one of the individuals primarily in contact with Celera during the days leading up to the December 29 meeting and was the most knowledgeable person on the HGP side of the talks. (*Id.*).

On September 27, 2004, after a telephone conversation with Attorney Robertson wherein he indicated that the DHHS was not inclined to produce Dr. Collins for a deposition, plaintiffs' counsel sent a letter to Attorney Robertson offering to limit the scope and duration of Dr. Collins's deposition. (Fournier Aff., 10/12/04, Ex. E).

*3 In a second letter dated September 27, 2004, Dr. Kingston denied the plaintiffs' request for reconsideration. (Fournier Aff., 10/12/04, Ex. F). On October 12, 2004, the plaintiffs filed this Motion to Compel the Testimony of Dr. Francis Collins, and to extend the discovery deadline solely for the purpose of conducting this deposition.

## DISCUSSION

The DHHS, like many other federal agencies, has enacted what are known as Touhy regulations, [FN1] which are derived from the federal "housekeeping" statute, which provides, in relevant part, that: "The head of an Executive department ... may prescribe regulations for the ... conduct of its employees ... and the custody, use, and preservation of its records, papers and property." 5 U.S.C. § 301. The regulation at issue in this case, which applies to any legal proceeding to which the United States is not a party, states that:

> FN1. The regulations earned their name from the Supreme Court case which validated the federal government's power to create "housekeeping" rules that allow it to prevent its employees from providing evidence in private actions. *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951). In *Touhy,* a state prisoner who had instituted a federal habeas corpus proceeding caused a subpoena *duces tecum* to be served on an agent of the Federal Bureau of Investigation ("FBI"). Touhy sought to have produced certain records that he claimed would serve

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:85-cv-01078-PCD    Document 273-4    Filed 08/26/2005    Page 8 of 17

Slip Copy                                                                                                Page 3
Slip Copy, 2005 WL 806719 (D.Conn.)
(Cite as: 2005 WL 806719 (D.Conn.))

as evidence that his conviction was brought about by fraud. Relying on a regulation adopted by the Department of Justice pursuant to a predecessor "housekeeping" statute, the agent declined to produce the records. The regulation required subordinates in the Department served with a subpoena *duces tecum* to disobey the subpoena except in the discretion of the Attorney General. For his disobedience, the FBI agent was found guilty of contempt in the district court. The order of contempt was reversed by the Court of Appeals for the Seventh Circuit. In affirming the Seventh Circuit, the Supreme Court concluded that the Attorney General's regulation was appropriate, reasoning that: "When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious." *Id.* at 468.

No employee or former employee of the DHHS may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head pursuant to this part based on a determination by the Agency head, after consultation with the Office of the General Counsel, that compliance with the request would promote the objectives of the Department.
45 C.F.R. § 2.3. The regulation also specifies the manner by which a party to a litigation may obtain the testimony of a DHHS employee:
All requests for testimony by an employee or former employee of the DHHS in his or her official capacity ... must be addressed to the Agency head in writing and must state the nature of the requested testimony, why the information sought is unavailable by any other means, and the reasons why the testimony would be in the interest of the DHHS or the federal government.
45 C.F.R. § 2.4(a). The purpose behind such regulations is to "conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir.1989) (citing *Reynolds Metals Co. v. Crowther*, 572 F.Supp. 288, 290 (D.Mass.1982)). The plaintiffs claim to have fulfilled their obligations under the DHHS's Touhy regulations. (Pl.s' Mem. Supp. Mot. at 7-9). The DHHS disagrees, and asserts that even if the plaintiffs did fulfill their Touhy obligations, it remains within its discretion to deny their request to depose Dr. Collins in accordance with the "arbitrary and capricious" standard of review established by the Administrative Procedure Act of 1946 ("APA"). (Mem. Opp'n Mot. to Compel at 5, 11). Furthermore, the defendants oppose the plaintiffs' motion on the grounds that it is untimely and seeks unnecessary and duplicative discovery. (Defs.' Resp. & Partial Opp'n at 2). The court is persuaded that the plaintiffs have complied with their obligations under 45 C.F.R. § 2.4(a) and declines to apply the standard of review furnished by the APA. The court also finds the testimony sought from Dr. Collins to be neither unnecessary nor duplicative.

A.

*4 The plaintiffs' July 15, 2004 request to Dr. Zerhouni clearly described the nature of the requested testimony, which relates to the negotiations between Celera and the HGP spanning a three to four month period and the resulting meeting that took place on December 29, 1999. (Fournier Aff., 10/12/04, Ex. B at 1-2). The plaintiffs also claimed that the discovery sought from Dr. Collins could not be obtained by any other means because

> he played a lead role in the negotiations between Celera and the HGP, including at the December 29, 1999 meeting, which lie at the core of plaintiffs' allegations. Also, as director of the National Human Genome Research Institute, which oversees the HGP, Collins was involved at the very highest levels of the negotiations and would certainly have more knowledge of the talks than anyone else on the government side.

(*Id.* at 2). Dr. Kingston replied in his initial rejection of August 6, 2004 that the plaintiffs "failed to sufficiently explain why the testimony sought from Dr. Collins is not available through other means" since "there were several individuals that were party to the discussion(s) at issue. Those individuals could be called to testify as to what occurred during these meetings." (Fournier Aff., 10/12/04, Ex. C at 1). The plaintiffs countered in their August 20, 2004 request for reconsideration with deposition testimony from Dr. Waterston, who often deferred to others, particularly Dr. Collins, regarding questions on the specifics of the meeting in question and could recall, for example, neither Celera's position regarding reach-through patent rights nor details of a discussion concerning whether a public announcement should be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

made that the meeting took place, both relevant issues to the plaintiffs' shareholder action. (Fournier Aff., 10/12/04, Ex. D; Ex. G, Waterston Dep., at 82, 84).

Moreover, Dr. Waterston testified at his deposition-the transcript of which was offered to Dr. Kingston in the plaintiffs' request for reconsideration-- that Dr. Collins was one of only a handful of people involved from the very outset of negotiations to collaborate with Celera (Fournier Aff., 10/12/04, Ex. G, Waterston Dep., at 37); Dr. Collins appears to be the only participant in a telephone conversation with Dr. Craig Venter, President of Celera, one day before the December 29 meeting, during which Dr. Venter expressed dissatisfaction with a "Shared Principles" document drafted by the HGP and forwarded to Celera in anticipation of the meeting (*Id.* at 69-73); and Dr. Collins was privy to discussions with other NIH officials concerning events surrounding the falling out between Celera and the HGP, to which Dr. Waterston was not. (*Id.* at 160-61). The plaintiffs' characterization of Dr. Collins as the leader of the government effort to collaborate with Celera is further supported by testimony from Dr. Harold Varmus, then Director of the NIH, who testified at his deposition that Dr. Collins was "the leader of our team of four" and "took the lead in the [meeting.]" (Fournier Aff., 10/12/04, Ex. H, Varmus Dep., at 98, 104).

*5 Despite this new information, Dr. Kingston maintained in his second denial of September 27, 2004 that the plaintiffs "have not sufficiently explained why Dr. Collins' memory would be any better than the individual(s) who has or will testify or any contemporaneous documents produced." [FN2] (Fournier Aff., 10/12/04, Ex. F at 1). How the plaintiffs could establish whether Dr. Collins has a better memory of the relevant events than other participants in the discussions without deposing him one is left to wonder. Regardless, this is not the standard by which the court evaluates the plaintiffs' motion. Instead, the court looks to whether the plaintiffs have satisfied the requirements of 45 C.F.R. § 2.4(a), particularly, whether the testimony sought from Dr. Collins is available through other means. Given the undisputed leading role Dr. Collins played in the discussions between the HGP and Celera, the deference shown to him by Drs. Waterston and Varmus when asked about key aspects of the December 29 meeting (*See, e.g.,* Fournier Aff., 10/12/04, Ex. G, Waterston Dep., at 84-92), and his participation in relevant discussions to which others were not privy, the plaintiffs have adequately demonstrated that Dr. Collins's deposition testimony is not in fact available through other means.

> FN2. Dr. Kingston further noted in this second denial of September 27, 2004 that
> [i]t appears that what [plaintiffs] really desire is to examine all the Federal officials that were present at these meetings or involved in these matters. If NIH were to allow this to happen in every case in which NIH was not a party, and in which every plaintiff or defendant believed NIH could be helpful, it would become increasingly difficult for us to effectively and efficiently conduct NIH official business.
> (*Id.*). Numerous individuals affiliated with the HGP were involved at various levels in formulating its negotiating position with Celera. For example, an email from Dr. Collins thanking participants in "[a] conference call about possible next steps in exploring a collaborative next step with Celera" six days prior to the December 29 meeting was addressed to ten other people. (Fournier Aff., 11/19/04, Ex. F). To date, the plaintiffs have not deposed a single current DHHS employee, and the only person besides Dr. Collins for whom the plaintiffs sought permission from the DHHS to depose, Dr. Varmus, has not been employed by the DHHS for five years. (Pl.s' Reply Mem. Supp. Mot. at 8). Likewise, the DHHS's characterization of the testimony sought from Dr. Collins--the undisputed principal negotiator for the HGP at the meeting in question who devoted a significant amount of both his and the government's time engaging in talks with Celera--as merely "helpful" is an understatement. While potential disruption is certainly a legitimate concern for the DHHS, such exaggerations and unsupported assertions cause the court to doubt the validity of that concern here.

Finally, the plaintiffs are required under 45 C.F.R. § 2.4(a) to state why the testimony sought would be in the interest of the DHHS or the federal government. The initial July 15, 2004 request to Dr. Zerhouni described the federal government's interest in the defendants' alleged issuance of false and misleading offering materials in violation of federal securities laws and the resulting sharp drop in the value of Celera stock. (Fournier Aff., 10/12/04, Ex. B at 2). Nevertheless, Dr. Kingston denied the plaintiffs'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:85-cv-01078-PCD   Document 273-4   Filed 08/26/2005   Page 10 of 17

Slip Copy
Slip Copy, 2005 WL 806719 (D.Conn.)
(Cite as: 2005 WL 806719 (D.Conn.))

Page 5

request on August 6, 2004 for "fail[ure] to demonstrate how Dr. Collins' testimony will promote the objectives of the [DHHS.]" (Fournier Aff., 10/12/04, Ex. C at 1). Dr. Kingston restated this conclusory rationale in his denial of the plaintiffs' request for reconsideration. (Fournier Aff., 10/12/04, Ex. F at 1). The DHHS's own Touhy regulations, however, stipulate that the party seeking testimony must give "reasons why the testimony would be in the interest of the DHHS *or the federal government.*" 45 C.F.R. § 2 .4(a) (emphasis added). Thus, the plaintiffs can satisfy the last element of the Touhy regulations by showing that the testimony sought will further the interest of the federal government, if not the DHHS directly.

The DHHS's refusal to produce Dr. Collins is based in part on its view of this case as merely a "private matter between the parties" in which the federal government has, at most, a nominal interest. (Fournier Aff., 10/12/04, Ex. C at 1; Ex. F at 1). The court, however, takes a more weighty view of the government interest served by shareholder class actions. "While it is certainly true that these actions involve claims by shareholders [ ], all private citizens, for large losses they have incurred, it is also true that the interests they seek to vindicate are those that Congress has regarded as very much in the federal public interest." *In re United States Bioscience Sec. Litig.,* 150 F.R.D. 80, 82 (E.D.Pa.1993). [FN3] Faced with an almost identical situation in *Bioscience,* the district court compelled the depositions of three Food and Drug Administration employees who possessed evidence relevant to securities laws violations and who were "the only independent sources for discovery and evidence" on issues crucial to the litigation. *Id.* The *Bioscience* court explained its reasoning as follows:

> FN3. "Moreover, [the Supreme Court] repeatedly ha[s] emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action.' " *Bioscience,* 150 F.R.D. at 82 (*citing Bateman Eichler, Hill, Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985)).

*6 The Bioscience representatives who were part of communications with these three FDA employees have told, or will tell, their story in depositions and at trial. In order to confirm the completeness and truthfulness of those accounts, the only possible test available to plaintiffs is to depose the FDA participants in those interchanges.
*Id.* Likewise, here Dr. Collins is being called as a fact witness because he was the lead representative of the HGP who was involved in all phases of the negotiations with the defendants, including the December 29 meeting, and therefore the best witness to test the accounts of the defendants' witnesses. Thus, while the federal government's interest lie in its agencies operating efficiently with as few disruptions as possible, as the DHHS points out, "[that interest] also includes the Congressionally-mandated assurance of the integrity of the public securities markets that are so crucial to the nation's economic well-being. This issue is most assuredly involved here." *Id.*

**B.**

The DHHS further argues that the APA, 5 U.S.C. § 706(2)(A), provides the appropriate standard of review to be applied on this motion, which it contends is "whether the [DHHS's] action in not authorizing the testimony of Dr. Collins was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' " (Mem. Opp'n Mot. to Compel at 5), relying on the Second Circuit's opinion in *United States Envtl. Prot. Agency v. General Electric Co.,* 212 F.3d 689 (2d Cir.2000) ("GE II"). In *GE II,* however, the Second Circuit expressly declined to decide whether the APA's standard of review should govern the district court's evaluation of the Environmental Protection Agency's refusal to comply with the third-party subpoena at issue, specifically noting that "a plausible argument can be made in support of the idea that Section 706 of the APA is not necessarily the appropriate standard of review." *Id.* at 690. More recently, the Second Circuit held that "the question of whether APA § 706 governs courts' review of agency non-compliance with discovery requests--[is] a question which is, in any event, *far from settled." Semon v. Stewart,* 374 F.3d 184, 192 (2d Cir.2004) (emphasis added). The court observed that "some of our sister circuits have affirmatively held that APA § 706 does not apply to motions to compel agency compliance with subpoenas." *Id.* at 191 (*citing Exxon Shipping Co. v. United States Dep't of Interior,* 34 F.3d 774, 778-79 (9th Cir.1994); *Linder v. Calero-Portocarrero,* 251 F.3d 178, 180-81 (D.C.Cir.2001)). In *Exxon,* the Ninth Circuit stated:
> We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. However, we are confident that district courts can, and will, balance the

Case 2:85-cv-01078-PCD  Document 273-4  Filed 08/26/2005  Page 11 of 17

Slip Copy
Slip Copy, 2005 WL 806719 (D.Conn.)
(Cite as: 2005 WL 806719 (D.Conn.))

Page 6

government's concerns under the general rules of discovery. The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden."

*7 Id. at 779. Accordingly, on this motion, the court need only balance the plaintiffs' right to obtain relevant evidence pursuant to the applicable federal discovery rules against the government's concerns regarding the potential disruption of Dr. Collins's official duties.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that
> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.
> Fed.R.Civ.P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir.1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y.1988).

A party may object to a request if it is "overly broad" or "unduly burdensome." Charles A. Wright, et al., 8A Federal Practice & Procedure § 2174, at 297 (2d ed.1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad. Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y.1984). Instead, the objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted). See also Hickman v. Taylor, 329 U.S. 495, 507 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment").

If a party resists or objects to discovery, Rule 37(a) of the Federal Rules of Civil Procedure provides that the other party, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery...." Fed.R.Civ.P. 37(a). The defendant, as the objecting party, bears the burden of showing why discovery should be denied. Blakenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975). Moreover, the court is afforded broad discretion in deciding discovery issues. See Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir.2004).

For all of the aforementioned reasons, the relevance of Dr. Collins's testimony in this shareholder action weighs in favor of allowing his deposition. The DHHS's pro forma denials and subsequent arguments on this motion have not satisfied its burden of showing how allowing Dr. Collins to testify would be an "undue burden" on him or the government. See Fed.R.Civ.P. 26(c) & 45(c)(3)(A)(iv).

C.
*8 The defendants oppose the plaintiffs' motion as untimely, arguing that they "could have taken steps to secure the testimony of Dr. Collins prior to October 12, 2004, eight days before the current fact discovery cut-off." (Defs.' Resp. & Partial Opp'n at 6). However, Dr. Collins was first served with a subpoena on July 2, 2004, over three months prior to the discovery deadline. From the time the subpoena was served, the plaintiffs worked to comply with the DHHS's Touhy regulations and sought to resolve this issue without the court's intervention. Furthermore, the plaintiffs filed this motion prior to the discovery cut-off and moved the court to extend the deadline solely for the purpose of deposing Dr. Collins. The plaintiffs' motion is therefore timely and the defendants' argument is without merit. See Fed.R.Civ.P. 26(b)(2)(ii).

The defendants' also oppose the plaintiffs' motion on the ground that it seeks unnecessary and duplicative testimony, pointing out that the plaintiffs have already deposed six of the eight attendees at the meeting in question, including Drs. Waterston and Varmus from the HGP side, and obtained extensive document production from the HGP participants, including substantial communications and notes prepared by Dr. Collins. (Id. at 8). The court is unpersuaded by this argument as well, having already mentioned the deference shown to Dr. Collins regarding questions on the specifics of the meeting in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

question, and how Dr. Collins, as the principal negotiator for the HGP, coordinated virtually every aspect of the negotiations with Celera and was the most knowledgeable person on the HGP side of the talks. Requiring Dr. Collins to be deposed is therefore not "unreasonably cumulative or duplicative." *See* Fed.R.Civ.P. 26(b)(2)(i).

Under Rule 30 of the Federal Rules of Civil Procedure, "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." Fed.R.Civ.P. 30(d)(2). To minimize the disruption to the DHHS, the plaintiffs offered to limit the scope and duration of Dr. Collins's deposition. (Fournier Aff., 10/12/04, Ex. E at 1-2). The defendants, however, request that the court reject any temporal and subject matter limitations in the event the plaintiffs' motion is granted so that they may have a full and fair opportunity to cross-examine Dr. Collins. (Defs.' Resp. & Partial Opp'n at 10). If the defendants are not given such an opportunity, Dr. Collins's testimony will be deemed inadmissible hearsay at trial. Fed.R.Civ.P. 804(b)(1); *Cury v. Philip Morris USA,* 1995 U.S. Dist. LEXIS 14798, at *3 (S .D.N.Y. Oct 6, 1995). The court therefore orders the DHHS to produce Dr. Collins for a full deposition pursuant to Rule 30 within forty-five days of the date of this ruling.

For the foregoing reasons, the plaintiffs' motion to compel is **GRANTED.** This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court unless modified by the district judge upon motion timely made. *See* 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same).

*9 IT IS SO ORDERED.

Slip Copy, 2005 WL 806719 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:00cv00705 (Docket) (Apr. 19, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6

| | |
|---|---|
| DOCKET NO. CV 03-0829544-S | : SUPERIOR COURT |
| | : |
| EASTLANDER GROUP, LLC | : JUDICIAL DISTRICT OF |
| |   HARTFORD |
| | : AT HARTFORD |
| | : |
| V. | : |
| | : |
| SCHAGHTICOKE TRIBAL NATION | : JULY 16, 2005 |

## NOTICE OF DEPOSITION

**PLEASE TAKE NOTICE** that on the 21st day of July, 2005 at noon at the offices of the Institute for American Indian Studies, 38 Curtis Road, Washington, Connecticut, the defendant in the above-entitled action will take the deposition of **FRANCELIA JOHNSON**, 4 Birch Hill Court, Kent, Connecticut, upon oral examination pursuant to the applicable rules of this Court before an officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

Pursuant to Practice Book §13-27, the deponent is requested to bring copies of the following documents:

Any and all books, records, notebooks, loose-leaf notebooks, notes, ledgers, birth certificates, cemetery sketches, obituaries, genealogical trees, marriage licenses or other references to marriages whether endogamous or exogamous, and any and all other writings or documents or historical, genealogical or other information in your possession or custody or under your control (whether originals or copies) relative to any Schaghticoke indian or any person of any Schaghticoke ancestry alive or dead.

Including without limitation notebooks containing genealogical information relative to the Kilson, Harris and Coggswell families and any other Schaghticoke indians or persons of any Schaghticoke ancestry.

THE DEFENDANT,
SCHAGHTICOKE TRIBAL
NATION


By: *Benjamin Engel* (signature)
Benjamin Engel
Its Attorney
ROGIN, NASSAU, CAPLAN,
  LASSMAN & HIRTLE LLC
CityPlace I, 22nd Floor
185 Asylum Street
Hartford, CT  06103-3460
T: (860) 278-7480
F: (860) 278-2179
Juris No. 50793

## CERTIFICATION

This is to certify that a true copy of the foregoing will be hand delivered on the 18th day of July, 2005:

Pepe & Hazard, LLC
Goodwin Square
225 Asylum Street
Hartford, CT 06103

_____
Benjamin Engel

STATE OF CONNECTICUT
                       SS: KENT                     July 16, 2005
COUNTY OF LITCHFIELD


THEN AND THEREBY VIRTUE HEREOF I LEFT A TRUE AND ATTESTED COPY OF THE WITHIN AND FOREGOING NOTICE OF DEPOSITION AND CERTIFICATION, WITH MY ENDORSEMENTS THEREON. THEN I MADE DUE SERVICE OF THE WITHIN SUBPOENA BY READING THE SAME IN THE PRESENCE AND HEARING OF AND LEAVING A TRUE AND ATTESTED COPY HEREOF WITH THE FOLLOWING PERSON AT THE ADDRESS INDICATED:


**FRANCELIA JOHNSON**, AT 4 BIRCH HILL COURT, KENT, CONNECTICUT, ON THE 16TH DAY OF JULY 2005, AND PAID TO EACH THE FEES ALLOWED BY LAW.


THE WITHIN AND FOREGOING IS THE ORIGINAL WITH MY DOINGS HEREON ENDORSED.

FEES:
SERVICE……………$30.00
COPIES………………..3.00
ENDORSEMENTS…   .80
MILEAGE…………  36.45
WITNESS FEE…….   3.00
                          $73.25

ATTEST:

*[signature]*

EDMUND J. RICE
STATE MARSHAL
LITCHFIELD COUNTY